377-07/MEU/LJK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

CENTRAMET TRADING S.A.,

                                              **07 CIV 6379 (RMB)**

                    Plaintiff,

        -against-                             **DECLARATION OF
                                              ENG. KAMAL BESHAY**

EGYPTIAN AMERICAN STEEL ROLLING
COMPANY,

                    Defendant.

----------------------------------------------------x

        Eng. Kamal Beshay, pursuant to Section 1746 of Title 28 of the United States

Code, hereby declares and says the following under penalty of perjury:

        1.      I, Eng. Kamal Beshay, am the Chairman of Egyptian American Steel

Rolling Company ("EASROC"), the Defendant in this action.  I submit this Declaration

in support of EASROC's motion to vacate the Rule B Attachment of EASROC's funds

or, in the alternative, to reduce the quantum of security permitted to be held by Plaintiff

Centramet Trading S.A. ("CENTRAMET").

        2.      Insofar as the contents of this Declaration are within my own knowledge,

they are true.  Insofar as the contents of this Declaration are not within my own direct

knowledge, they are true to the best of my information and belief.

        3.      In June, 2006, EASROC entered into a contract to purchase 20,000 metric

tons (plus or minus 10% in seller's option) of steel scrap from non-party seller GST

Commodities Trading Company ("GST").

4.      There are at least three different versions of the sale and purchase contract between seller GST and buyer EASROC, each unilaterally signed. Copies of the three versions of the contract are annexed hereto as Exhibits 1-3, respectively.

5.      Notwithstanding their differences (which involve the arbitration provision which is not relevant to the matter presently before the Court), the contracts each contain provisions regarding the quantity, quality, size, thickness and price for the scrap steel. Each version of the contract also provides for multiple shipments, the date for the first shipment, identifies the originating country of the scrap steel as Russia and destination as Egypt, and provides that payment for the cargo would be made against a Letter of Credit ("L/C"). Likewise, each version of the contract provides for the rate at which the cargo was to be discharged from the ship which would carry it to Egypt.

6.      Attached hereto as Exhibit 4 is a copy of the L/C which EASROC opened at Arab African International Bank ("AAIB") in favor of GST. The name Beshay Steel appears on Exhibit 4. Beshay Steel is a trade name by which EASROC sometimes is known as the family which owns EASROC is the Beshay family. Any reference to Beshay Steel is indeed a reference to EASROC.

7.      Attached hereto as Exhibits 5-7 are GST's comments in respect of the L/C wording, EASROC's agreement to GST's requested amendments, and AAIB's acknowledgement of those changes, respectively.

8.      As the sales contract was under CIF FO terms (cost, insurance and freight, free out), GST was obligated to arrange to transport the scrap steel from Russia to Egypt. GST apparently arranged for a closely related company, CENTRAMET, to transport the

cargo. CENTRAMET, in turn, apparently arranged to voyage charter a vessel to perform the carriage.

9.     On July 13, 2006, GST wrote to Alpha Egypt, the agents representing both CENTRAMET and GST in Egypt, to advise that the vessel OCEAN BEAUTY, which had been previously agreed as the vessel to carry the first shipment under the sales contract at a demurrage rate of $1,500 per day pro rata Fridays, Saturdays and holidays excluded even if used ("FSHEX EIU"), was no longer available. GST offered as an alternative the M/V MERVE A and proposed a discharge rate of 1,000 metric tons per weather working day with a demurrage rate of $5,000 per day pro rata. EASROC, under the trade name Beshay Steel, responded with a counter-offer of a demurrage rate of $1,500 per day pro rata FSHEX EIU and a discharge rate of 750 MT per weather working day. (See Exhibit 8).     Neither GST nor CENTRAMET communicated further with EASROC on the subject of demurrage or discharge rate thereafter.

10.     The scrap steel was subsequently loaded aboard the MERVE A at Novorossisk, Russia and the master of the vessel issued three bills of lading dated July 29, 2006 confirming a total of 9,274 metric tons of scrap cargo had been loaded "clean on board". Copies of the bills of lading are attached hereto as Exhibits 9-11 .

11.     The MERVE A arrived at the Port of Alexandria, Egypt on August 7, 2006. Cargo discharge operations commenced at 0430 hours on August 8, 2006 and continued until August 9, 2006 at 1815 hours when the Master ordered discharging stopped allegedly due to the failure of EASROC to present the original bills of lading. (See Statement of Facts prepared by Matina Shipping Agencies, the vessel's agent at Alexandria, Egypt, attached as Exhibit 12.)

12.     The Master's refusal to continue discharge was wrongful in that prior to the vessel's arrival at Egypt, GST and EASROC had agreed the cargo could be discharged without presentation of the original bills of lading. Attached as Exhibit 13 is a telefax dated August 2, 2006 in which GST wrote to the agent of the vessel in Istanbul, Active Marine, advising that the cargo could be delivered even in the absence of original bills of lading against a Letter of Guarantee issued by the L/C issuing bank (AAIB) in case of delay of the original documents. Attached as Exhibit 14 is a copy of the AAIB Guarantee which had been provided to GST via the agent of vessel at Alexandria on August 3, 2006.

13.     After the initial portion of the cargo was discharged, a survey was conducted and the scrap steel was found to be substantially off-specification in violation of the terms of the sales and purchase agreement. In particular, the cargo was found to contain non-compliant dimensions and to be mixed with substantial quantities of slag and impurities (rocks, concrete, rubber, bales, etc.) among other defects. EASROC wrote to GST on August 8, 2006 (copy attached as Exhibit 15) to complain about the non-compliant nature of the steel scrap and advised that EASROC would not accept any further shipments under the sales contract until the quality problem was resolved. EASROC invited a representative of GST to come to Egypt to inspect the goods and find a solution to the problem.

14.     Mr. Peter Terebov, the Director of GST (and also the Director of CENTRAMET) came to Egypt shortly thereafter, and jointly with Mr. Issa of Alpha Egypt, inspected the scrap steel, and agreed it was non-compliant with the sales contract terms.

15.    On August 16, 2006, GST wrote to EASROC (Exhibit 16 attached) proposing a substantial discount on the sales price of the scrap steel and to cancel the rest of the contract and L/C as a "final settlement and solution". This settlement included the release of any obligation under the sales contract on the part of EASROC.

16.    As requested by GST, EASROC thereafter instructed AAIB to send a message to GST's bank to accept the discrepancies and discount in the sales price. The exchange of documents through the banks was affected and AAIB confirmed on August 30, 2006 that all was in order and payment was to be made to GST's bank.

17.    Acknowledging that the delay in discharging the scrap steel stemmed from the non-compliance with the sales contract terms, on August 16, 2006 GST confirmed in writing that GST agreed all time lost due to clarification of the quality claim would be for its account. In response to its agent's request that GST confirm agreement to a further 9 days of free time to discharge the scrap after the documents were provided to the bank, GST again confirmed in an August 22, 2006 return e-mail to Alpha Egypt that all time lost was for GST's account, thereby reconfirming the settlement was full and final, including any claim for demurrage. (See Exhibits16 and 17 attached.)

18.    I understand that GST claims it thereafter assigned its rights to recover demurrage allegedly due under the sales contract to CENTRAMET. I further understand that CENTRAMET has claimed that it is entitled to recover $276,228.75 for demurrage allegedly due as a result of the delays in discharge at Alexandria.

19.    At no time from the completion of discharge on September 30, 2006 until today has either GST or CENTRAMET presented a laytime calculation or made a



demand to EASROC to pay demurrage. Certainly if either company had made such a demand, we would have responded thereby avoiding the legal proceedings in New York.

20.     As of this date EASROC has not received any demand for arbitration by either GST or Centramet respecting the claim for demurrage.

21. I am aware that Centramet have provided through their lawyers in London and New York certain communications related to this transaction which do not exist in our company files, and we know for a fact to have been forged. These are the e-mail alleged to be dated 12 July 2006 from Mr. Petr Terebov of GST/Centramet to Alpha Egypt, which falsely states that the vessel MERVE A was offered by GST at a demurrage rate of $7500. (Exhibit 18 hereto.) GST/Centramet also forged the hand written comments in response thereto on the same document, which purports that we counter offered the rate to be $7000. The e-mail and the hand written comments of our company are both forged and appears to have been copied from another document. Also the forged contract amendment allegedly dated 1 September 2006 (Exhibit 19) carries a stamp and initial of our company copied and pasted from another document. Last but not least is the sales contract which GST falsely allege was contemporaneously signed by both parties, which in fact was never signed by GST at the time of the negotiations but was returned to us in revised terms as per Exhibits 1 -3. The version of the contract attached as Exhibit 3 was also never countersigned from our side.

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing is true and correct.

Dated: 31 August 2007 Egypt
      31 August 2007

                             Eng. Kamal Beshay

# EXHIBIT 1

كي/٧/١٤

G ك ب .

١٤/٦/٢٠٠٦
14/06/2006    ك/٨

## CONTRACT NO : GB001

GST Commodities Trading Co. hereinafter referred to as sellers, agree having sold and EGYPTIAN AMERICAN STEEL ROLLING CO. hereinafter referred to as Buyers, agree having bought material mentioned here below subject to following terms and conditions:

QUANTITY : 20'000 MT +/- 10% in seller's option. Partial shipment by gearless ships allowed.

QUALITY : Steel scrap

SIZE : 1500 mm x 600 mm x 600 mm. Maximum 2% of oversize is allowed. If the quantity of over size is over 2% - this tonnage (over 2% only) to be penalized by $10 pmt

THICKNESS : Minimum 4 mm. Maximum 5% of thickness less then 4 mm allowed. If this quantity of is over 5% - this tonnage (over 5% only) to be penalized by $10 pmt

PRICE : US $ 303,- per mt. CIFR Alexandria/ Egypt

SHIPMENT : Latest by 15th of August 2006

ORIGIN : Russia

DISCHARGE RATE : Discharge rate will be as follows:
~~Up to 3.500 mtons vessels: 1000 mton pwwd fshex eiu.~~
~~Between 3.501-5.000 mtons vessels: 1200 mton pwwd fshex siu~~
~~Over 5.001 mtons vessels: will be negotiated during nomination of the vessel.~~
NOR to be tendered during office hours.
Demurrage to be as per Charter Party covering the respective voyage and free dispatch respectively. Demurrage rate to be indicated at time of vessel's nomination.

PAYMENT : 100% of the invoice value for each shipment is payable by irrevocable, sight Letter of Credit issued by first class bank, against the following documents;
- 2 Original plus 2 copies of Commercial Invoice
- 3/3 Original bill of lading issued to the order of issuing bank
- Draft survey report issued in loading port by Inspectorate.
All claims, if any, to be solved outside of LC.

FINAL WEIGHT : Final weight is to be considered as average between draft survey in loading port and draft survey in discharging port issued by Inspectorate.

FINAL QUALITY : As per load port quality certificate issued by Inspectorate.

Egyptian American
Steel Rolling Co.

ARBITRATION : All disputes arising in connection with the present contract shall be finally settled under the rules of Conciliation and Arbitration of the International Chamber of Commerce, by one or more, appointed in accordance with said rules. The adjustment of the arbitration court shall be final with no possibility of appeal.

This contract shall be governed by and in accordance with the laws of England. The seat of Arbitration will be London, England.

Buyer

Egyptian American
Steel Rolling Co.

Seller

# EXHIBIT 2

14/06/2006

CONTRACT NO : GB001

GST Commodities Trading Co. hereinafter referred to as sellers, agree having sold and EGYPTIAN AMERICAN STEEL ROLLING CO. hereinafter referred to as Buyers, agree having bought material mentioned here below subject to following terms and conditions:

QUANTITY : 20'000 MT +/- 10% in seller's option. Partial shipment by gearless ships allowed.

QUALITY : Steel scrap

SIZE : 1500 mm x 600 mm x 600 mm. Maximum 2% of oversize is allowed. If the quantity of over size is over 2% - this tonnage (over 2% only) to be penalized by $10 pmt

THICKNESS : Minimum 4 mm. Maximum 5% of thickness less then 4 mm allowed. If this quantity of is over 5% - this tonnage (over 5% only) to be penalized by $10 pmt

PRICE : US $ 303,- per mt. CIFR  Alexandria/ Egypt

SHIPMENT : Latest by 15th of August 2006

ORIGIN : Russia

DISCHARGE RATE : Discharge rate will be as follows:
1000 mton pwwd fshex eiu.
NOR to be tendered during office hours.
Demurrage to be as per Charter Party covering the respective voyage and free dispatch respectively. Demurrage rate to be indicated at time of vessel's nomination.

PAYMENT : 100% of the invoice value for each shipment is payable by irrevocable, sight Letter of Credit issued by first class bank, against the following documents;
- 2 Original plus 2 copies of Commercial Invoice
- 3/3 Original bill of lading issued to the order of issuing bank
- Draft survey report issued in loading port by Inspectorate.
All claims, if any, to be solved outside of LC.

FINAL WEIGHT : Final weight is to be considered as average between draft survey in loading port and draft survey in discharging port issued by Inspectorate.

FINAL QUALITY : As per load port quality certificate issued by Inspectorate.

ARBITRATION : All disputes arising in connection with the present contract shall be finally settled under the rules of Conciliation and Arbitration of the International

Chamber of Commerce, by one or more arbiter, appointed in accordance with said rules. The judgment of the arbitration court shall be final.

This contract shall be governed by and in accordance with the laws of United Kingdom.

BUYER

--------------------------------------

SELLER

--------------------------------------

Commodities Trading Co.
London, United Kingdom

**EXHIBIT 3**

15 06 06 19:55

*NEVER SEEN BEFORE*
CTP.1

*RECEIVED VIA ENGLISH LAWYERS*

(3)

14/06/2006

**CONTRACT NO : GB001**

GST Commodities Trading Co. hereinafter referred to as sellers, agree having sold and EGYPTIAN AMERICAN STEEL ROLLING CO, hereinafter referred to as Buyers, agree having bought material mentioned here below subject to following terms and conditions:

**QUANTITY**     : 20'000 MT +/- 10% in seller's option. Partial shipment by geMless ships allowed.

**QUALITY**      : Steel scrap

**SIZE**         : 1500 mm x 600 mm x 400 mm. Maximum 2% of oversize is allowed. If this quantity of over size is over 2% - this tonnage (over 2% only) to be penalised by $10 pmt.

**THICKNESS**    : Minimum 4 mm. Maximum 5% of thickness less than 4 mm allowed. If this quantity of is over 5% - this tonnage (over 5% only) to be penalised by $10 pmt.

**PRICE**        : US $ 303,- per mt, CIFR Alexandria/Egypt

**SHIPMENT**     : Latest by 15th of August 2006

**ORIGIN**       : Russia

**DISCHARGE RATE** : Discharge rate will be as follows:
~~1000 mtns pwwd fihrt wix~~
~~...~~
NOR to be tendered during office hours.
Demurrage to be as per Charter Party covering the respective voyage and fast dispatch respectively. Demurrage rate to be indicated at time of vessel's nomination.

**PAYMENT**      : 100% of the invoice value for each shipment is payable by irrevocable, sight Letter of Credit issued by first class bank, against the following documents:
  - 2 Original plus 3 copies of Commercial Invoice
  - 3/3 Original bill of lading issued to the order of issuing bank
  - Draft survey report issued in loading port by Inspectorate.
All claims, if any, to be solved outside of LC.

**FINAL WEIGHT** : Final weight is to be considered as average between draft survey in loading port and draft survey in discharging port issued by Inspectorate.

**FINAL QUALITY** : As per load port quality certificate issued by Inspectorate.

Egyptian American
Steel Rolling Co.

15 06 06 19:55

CTP.2

**ARBITRATION**  : All disputes arising in connection with the present contract shall be finally settled under the rules of Conciliation and Arbitration of the International Chamber of Commerce, by one or more, appointed in accordance with said rules. The adjustment of the arbitration court shall be final with no possibility of appeal.
This contract shall be governed by and in accordance with the laws of England. The seat of Arbitration will be London, England.

Buyer

Egyptian American
Steel Rolling Co.

Seller

GST Commodities Trading Co.
London, United Kingdom

# EXHIBIT 4

```
              NETWORK ACKNOWLEDGMENT              2006-06-25 18:12   page no : 182
Status : MESSAGE DELIVERED
Station :    1           BEGINNING OF MESSAGE


ACK    FIN/Session/ISN       :F01   0282   365328
ACK    Own Address           :ARAIEGCXADOC  ARAB AFRICAN INTERNATIONAL BANK
ACK                                          CAIRO
ACK    Input Message Type    :700            ISSUE OF A DOCUMENTARY CREDIT
ACK    Sent to               :FBHLNL2AXXXX   FINANSBANK (HOLLAND) N.V.
ACK                                          AMSTERDAM
ACK    Input Time            :
ACK    MIR                   :ARAIEGCXADOC0282365328
ACK    Priority              :Normal
ACK    MUR                   :TRADE FINANCE SH
ACK
ACK    {3:{108:TRADE FINANCE SH}}
ACK
ACK    {4:
ACK    :27:1/1
ACK    :40A:IRREVOCABLE
ACK    :20:LC/HEL 610/06
ACK    :31C:060625
ACK    :31D:060905 AT YOUR COUNTERS
ACK    :50:EGYPTIAN AMERICAN STEEL ROLLING CO.
ACK    6,FARID SEMEIKA STR.,HELIOPOLIS
ACK    CAIRO, EGYPT.
ACK    :59:/0019019777
ACK    GST COMMODITIES TRADING CO.
ACK    LANGHAM HOUSE NO.401
ACK    302 REGENT STREET LONDON W1B   3HH
ACK    U.K.
ACK    :32B:USD6060000,
ACK    :39A:05/05
ACK    :41A:FBHLNL2AXXX
ACK    BY PAYMENT
ACK    :43P:ALLOWED
ACK    :43T:PROHIBITED
ACK    :44A:ANY RUSSIAN SEAPORT
ACK    :44B:ALEXANDRIA OR EL DEKHILA SEAPORT - EGYPT
ACK    :44C:060815
ACK    :45A:QUANTITY:20,000.00 NET METRIC TONS(+5/-5PCT) OF  STEEL SCRAP
ACK    QUALITY : STEEL SCRAP
ACK    SIZE: 1500 MM X 600 MM. MAXIMUM 2PCT. OF OVERSIZE IS ALLOWED
ACK         IF THE QUANTITY OVER SIZE IS OVER 2PCT. THIS TONNAGE
ACK         (OVER 2PCT. ONLY) TO BE PENALIZED BY USD10.00 PMT.
ACK    THICKNESS: MINIMUM 4MM. MAXIMUM 5PCT. OF THICKNESS LESS
ACK              THAN 4MM ALLOWED
ACK              IF THIS QUANTITY OF IS OVER 5PCT. TONNAGE (OVER 5PCT.
ACK              ONLY)TO BE PENALIZED BY USD10 PMT.
ACK    UNIT PRICE: USD303.00/MT
ACK    CIF FO,ALEXANDRIA OR EL DEKHILA SEAPORT
ACK    :46A:1- MANUALLY SIGNED COMMERCIAL INVOICE,IN 3 ORIGINALS + 3 COPIES
ACK       SHOWING 100PCT.OF CIF ALEXANDRIA VALUE,SHOWING CONTARCT
ACK       NO. DESCRIPTION OF GOODS, UNIT PRICE TOTAL AMOUNT, NET
ACK       WEIGHTS OF GOODS SHIPPED.
ACK    2- 3/3 ORIGINALS PLUS 3 N.N COPIES OF CLEAN ON BOARD MARINE BILL
ACK       OF LADING ISSUED TO THE ORDER OF ARAB AFRICAN
ACK       INTERNATIONAL BANK,MARKED NOTIFY BUYERS AND FREIGHT PAYABLE
ACK       AS PER CHARTER PARTY
```

```
         NETWORK ACKNOWLEDGMENT                  2006-06-25 18:12   page no : 182
Status  : MESSAGE DELIVERED
Station :   1          CONTINUATION OF MESSAGE
```

ACK     3- INSURANCE CERIFICATE ISSUED BY FIRST CLASS INSURANCE COMPANY
ACK        TO THE ORDER OF ARAB AFRICAN INTERNATIONAL BANK,SHOWING CLAIMS
ACK        PAYABLE IN CAIRO IRRESPECTIVE OF PERCENTAGE FOR THE FULL CIF
ACK        INVOICE VALUE PLUS 10PCT.COVERING ALL RISKS (A) FROM WAREHOUSE
ACK        TO APPLICANT'S WAREHOUSE,VALID FOR 60 DAYS AFTER DISCHARGING
ACK        GOODS AT THE PORT OF DESTINATION AS PER INSTITUTE MARINE CARGO
ACK        CLAUSES (ALL RISKS) (A) INCLUDING WAR, S.R., C.C RISKS. AND
ACK        TRANSHIMENT RISKS IF ANY.
ACK     4- CERTIFICATE OF ORIGIN ISSUED BY SELLER AND CERTIFIED BY ANY
ACK        CHAMBER OF COMMERCE.
ACK     5- CERTIFICATE ISSUED BY SHIPPING AGENT STATING THAT THE AGE OF
ACK        CARRYING VESSEL DOES NOT EXCEED 30 YEARS OLD, OTHERWISE THE
ACK        OVERAGE PREMIUM WILL BE THE RESPONSIBILITY OF THE BENEFICIARY.
ACK     6- COPY OF BENEF. FAX SENT TO THE APPLICANT DIRECTLY STATING
ACK        FULL DETAILS OF SHIPMENT WITHIN FIVE WORKING DAYS AFTER
ACK        B/L DATE
ACK     7- COPY OF BENEF. FAX SENT TO THE SHIPPING AGENCY TO PREMIT
ACK        RELEASE OF GOODS AGAINST SHIPPING LETTER OF GUARANTEE ISSUED
ACK        BY THE ISSUING BANK IN CASE OF DELAY OF THE ORIGINAL
ACK        DOCUMENTS.
ACK     8- BENEF. DECLERATION ACCOMPANIED BY A COURIER RECEIPT COPY
ACK        EVEDINCING THAT THEY HAVE SENT COPIES OF ALL REQUIRED
ACK        DOCUMENTS DIRECTLY TO THE APPLICANT WITHIN FIVE WORKING
ACK        DAYS AFTER B/L DATE.
ACK     9- DRAFT SURVEY CERTIFICATE ISSUED BY INSPECTORATE INTERNATIONAL
ACK        FOR SURVEY PERFORMED AT LOADING PORTS SHOWING ACTUAL WEIGHT OF
ACK        SHIPMENT
ACK    10-QUALITY INSPECTION CERIFICATE ISSUED BY INSPECTORATE
ACK        INTERNATIONAL FOR SURVEY PERFORMED AT LOADING PORTS
ACK    11-CERTIFICATE OF RADIOACTIVITY ISSUED BY INSPECTORATE INTERNAT-
ACK        IONAL,CONFIRMING THAT THE STEEL SCRAP SHIPPED HAS A RADIO
ACK        ·ACTIVE LEVEL WITHIN THE PERMISSIBLE ACCEPTABLE INTERNATIONAL
ACK        LEVELS.
ACK    12-CERTIFICATE OF EXPLOSION SAFETY ISSUED BY INSPECTORATE INTER-
ACK        NATIONAL,CONFIRMING THAT THE STEEL SCRAP SHIPPED HAS BEEN
ACK        SURVEYED AT LOADING PORTS.
ACK    13-BENEFICIARY'S UNDERAKING CONFIRMING THAT THEY WILL SEND
ACK        COPY OF THE CHARTER PARTY FOR THE CARRING VESSEL DIRECTLY TO
ACK        THE APPLICANT WHICH SHOULD CLEARLY INDICATE THE FOLLOWING:-
ACK        A- DISCHARGING OPERATIONS ARE TO BE DONE BY APPLICANT EGYPTIAN
ACK           AMRICAN STEEL ROLLING CO. USING THE CRANES OF THE CARRIER
ACK           VESSEL UNDER CONDIIONS OF FREE OUT AND IT SHOULD NOT
ACK           MENTION BY ANY MEANS C.O.P. (CUSOMS OF PORT).
ACK        B- SHIPPING AGNECY IS TO BE ONE OF THE FOLLOWING:-
ACK           -MATINA SHIPPING AGENCY   -MCBBATY SHIPPING AGENCY.
ACK           -NANMAR SHIPPING AGENCY
ACK        C- THE DISCHARGING RATE IS 1000MT PER WEATHER WORKING DAY OF
ACK           24 CONSECUTIVE HOURS, FRIDAY AND HOLIDAYS EXCLUDED EVEN IF
ACK           USED,(FSHEXEIU),DEMURRAGES AS PER CHARTER PARTY,
ACK           DESPATCH HALF DEMURRAGE, AND WILL BE SETTLED DIRECTLY WITH
ACK           EASRCO,WITHIN FOUR WORKING DAYS FROM THE DAY OF RECEIVING
ACK           THE WRITTEN FAXED CLAIM OF THE APPLICANT FOR THE DESPATCH
ACK           IF ANY.
ACK    :47A:1- AFTER NEGOTIATION THE DOCUMENTS ARE TO BE FORWARDED DIRECTLY
ACK        TO US IN TWO SETS BY COURIER SERVICES TO OUR BANK ADDRESS:
ACK        44 ABDEL KHALEK SARWAT STR.CAIRO EGYPT, UNDER REFERENCE TO

```
          NETWORK ACKNOWLEDGMENT              2006-06-25 18:12   page no : 183
· Status : MESSAGE DELIVERED ·
  Station :   1          CONTINUATION OF MESSAGE
─────────────────────────────────────────────────────────────────────────────
ACK      THE NO. OF THIS CREDIT WHICH SHOULD BE QUOTED IN ALL
ACK      CORRESPONDENCES AND ON ALL DOCUMENTS.
ACK      2- ONE SET OF PHOTOCOPIES OF ALL RELEVANT DOCUMENTS MUST BE
ACK      ATTACHED FOR OUR FILES (FREE OF CHARGE)
ACK      3- PAYMENT UNDER RESERVE OR AGAINST INDEMNITY NOT ACCEPTABLE.
ACK      4- DOCUMENTS DATED PRIOR TO DATE OF ISSUANCE OF L/C NOT
ACK      ACCEPTABLE.
ACK      5- CHARTER PARTY B/L ACCEPTABLE.
ACK      6- B/L INDICATING THE FOLLOWING CLAUSES IS ACCEPTABLE :
ACK      WET BEFORE SHIPMENT, ATMOSPHERICALLY RUSTY,
ACK      7- ONLY COMMERCIAL INVOICE AND COPY OF BENEF.FAX TO SHOW GOODS
ACK      DESCRIPTION, UNIT PRICE, DELIVERY TERM AND VALUE OF GOODS
ACK      8- DIFFERENT TYPING CHARACTER, SPELLING MISTAKES AND TYPING
ACK      ERRORS WHICH DO NOT AFFECT THE MEANING ARE ACCEPTABLE.
ACK      9- ALL DOCUMENTS TO BE ISSUED IN ENGLISH LANGUAGE.
ACK      10-DISCRIPANCY FEES FOR USD100.00 WILL BE DEDUCTED FROM PROCEEDS
ACK      IN CASE DOCS.ARE PRESENTED WITH DISCRPANCIES OR FOR APPROVAL
ACK      BASIS.
ACK      11-ALL DISCREPANT DOCUMENTS PRESENTED UNDER THIS DOCUMENTARY
ACK      CREDIT WILL BE REFUSED AND HELD AT THE DISPOSAL OF THE
ACK      REMITTING BANK, HOWEVER WE WILL REFER THE DISCREPANCIES TO
ACK      THE APPLICANT AND UPON ACCEPTANCE OF SAME WE WILL DELIVER
ACK      DOCUMENTS WITHOUT SEEKING FOR YOUR APPROVAL.
ACK      12-THIS L/C IS SUBJECT TO THE UNIFORM CUSTOMS AND PRACTICE
ACK      FOR DOCUMENTARY CREDITS (1993 REVISION), INTERNATIONAL
ACK      CHAMBER OF COMMERCE PUBLICATION NO.500.
ACK      13-ARTICLE 18-C OF UCP - ICC PUBLICATION NO.500 IS NOT APPLICABLE
ACK      UNDER THIS L/C.   . ;
ACK      :71B:ALL COMMISSION AND CHARGES OUTSIDE
ACK      EGYPT ARE FOR BENEFICIARY A/C
ACK      :49:MAY ADD
ACK      :78:UPON RECEIPT OF YOUR AUTHENTICATED SWIFT MSG. EVEDINCING THAT
ACK      YOU HAVE TAKEN UP AND DESPATCHED TO US CREDIT CONFORM DOCS.
ACK      WE HEREBY UNDERTAKE TO REMIT YOU VALUE OF SAME LESS USD100.00
ACK      BEING OUR REIMBURSMENT BANK CHGS.VALUE FIVE BANKING DAYS AFTER
ACK      OUR RECEIPT OF YOUR SAID SWIFT MSG.
ACK      -}
ACK
ACK      MAC: Authentication Code
ACK          79210572
ACK      CHK: CheckSum
ACK          4D9B1A28833A     ·
ACK      ─────────────────────────────────────────────────────────
ACK      ─────────────────────────────────────────────────────────
```

# EXHIBIT 5

05-JUL-2006 13:19 FROM:ALPHA+EGYPT

*MAYR. GROUP — Russia*

*Contract for 20,000 mt.*

**From:** Petr Terebov [mailto:terebov@bluewin.ch]
**Sent:** Tuesday, June 27, 2006 10:05 AM
**To:** 'Alphaegypt'
**Subject:** comments for LC

C.T /V/0

Nader.

HEL 610/06

*GST COMMODITIES TRADING CO.* — 1

Please find below my comments for LC:

- 44A. please correct 'port' instead of 'seaport'. Most of our small ports are officially river ports.
- Please make tolerance 10% as it was agreed.
- Insurance certificate. Needless to have cover with clause A for scrap. Our main policy covers clause C which is more then enough for our kind of cargo.
- Certificate of Origin. Please delete 'certified by any chamber of commerce'.
- Document #5. Please delete whole clause.
- Document #7. Please delete whole clause
- Documents #9, 10, 11, 12. Please delete word 'International'.
- Documents #13. Please delete whole clause

Best regards,

Petr Terebov

Director

Centramet Trading SA

Tel +41227917676

Fax +41227917672

# EXHIBIT 6

# Egyptian American Steel Rolling Co.

6, Farid Semeika St.,
Heliopolis, Cairo
EGYPT

Tel. : (202) 6201595

Fax: (202) 6201593/92

TO    :  *Arab African International bank*
FAX  :  *4188056*
DATE:  *Sunday, July 09, 2006*

### Subject  :L/ C # HEL 610/06  amounting $6,060,000

*With reference to the above-mentioned Subject, you are kindly requested to carry the following amendments:*

- **Under field 44A:** *please amend the word" seaport" to read" Port".*

- **Under field 46A:**
  - *Item no.3: please amend to read" Marine Insurance Policy certificate covering 110% of the invoice value C-Terms."*
  - *Item no. 4: please amend to read" Certificate of Origin issued by the chamber of commerce "*
  - *Item no. 5: please delete completely.*
  - *Under item 9,10,11,12 please delete the word" International"*
  - *Item 13: please delete completely.*

*This amendment will not be operative unless the beneficiary will pay all related costs.*

*Best Regards,*

*Egyptian American Steel Rolling Co.*

بنك ، العربى ، أفريقى الدولى
مصرالجديدة
arab african international bank
٩  يوليو ٢٠٠٦
أبريد الصادرد

# EXHIBIT 7

09-JUL-2006  13:23

```
                MESSAGE HARDCOPY                  2006-07-10 14:49   page no : 3836
Status  : DISPOSED TO THE TRAQ
Station :   1           BEGINNING OF MESSAGE
```

| | | | |
|---|---|---|---|
| HCPY | FIN/Session/ISN | :F01   .SS.    .SEQ.. | |
| HCPY | Own Address | :ARAIEGCXADOC | ARAB AFRICAN INTERNATIONAL BANK |
| HCPY | | | CAIRO |
| HCPY | Input Message Type | :707 | AMENDMENT TO A DOC CREDIT |
| HCPY | Sent to | ;FBHINL2AXXXX | FINANSBANK (HOLLAND) N.V. |
| HCPY | | | AMSTERDAM |
| HCPY | Input Time | : | |
| HCPY | MIR | : | |
| HCPY | Priority/Obsol.Period | :Normal/100 Minutes | |
| HCPY | MUR | :TRADE FINANCE SH | |

```
HCPY  {3:{108:TRADE FINANCE SH}}
HCPY
HCPY  20 /SENDER'S REFERENCE
HCPY     LC/HEL 610/06
HCPY  21 /RECEIVER'S REFERENCE
HCPY     UNKNOWN
HCPY  31C/DATE OF ISSUE
HCPY     060625
HCPY                       2006-06-25
HCPY  30 /DATE OF AMENDMENT
HCPY     060709
HCPY                       2006-07-09
HCPY  26E/NUMBER OF AMENDMENT
HCPY     01
HCPY  59 /BENEFIC'Y (BEFORE AMNDMT)-NM&ADD
HCPY     /0019019777
HCPY     GST COMMODITIES TRADING CO.
HCPY     U.K.
HCPY  44A/ON BOARD/DISP/TAKING CHARGE AT/F
HCPY     ANY RUSSIAN PORT
HCPY  79 /NARRATIVE
HCPY     +UNDER FIELD 46A PLS. AMEND THE FOLLOWING:-
HCPY     1-ITEM NO.(3) TO READ 'MARINE INSURANCE
HCPY       POLICY / CERTIFICATE COVERING 110 PCT.OF THE
HCPY       INVOICE VALUE C-TERM'
HCPY     2-ITEM NO. 4 SHOULD READ 'CERTIFICATE OF ORIGIN
HCPY       ISSUED BY CHAMBER OF COMMERCE'
HCPY     3-ITEMS NOS. 09,10,11, AND 12 DELETE THE WORD
HCPY       'INTERNATIONAL'
HCPY     4-DELETE ITEMS NOS. 05 AND 13 COMPLETELY.
HCPY     .
HCPY     OUR COMM. AND CHGS. SUBJECT TO THIS AMENDMENT ARE
HCPY     FOR BENEF. A/C ACCORDINGLY IT WILL ONLY BECOME
HCPY     OPERATIVE WHEN YOU CREDIT OUR USD A/C HELD WITH
HCPY     (IRVTUS3NXXX) FOR USD 65,00 BEING THIS AMENDMENT
HCPY     COMM. AND CHGS UNDER ADVICE TO US
HCPY     REGARDS.
HCPY  -
HCPY
```

(7)

# EXHIBIT 8

**Subject:** Fw: M/v Merve A corrected d. rate
**From:** "Denis Kitaev" <kitaev@bluewin.ch>
**Date:** Thu, 13 Jul 2006 14:38:45 +0200
**To:** <alphaegypt@link.net>


Dear Mr. Nader Issa!

Unfortunately we lost vessel Ocean Beauty. But we have possibility
to fix b/m vessel as a sub of Ocean Beaty.
Kindly ask you to confirm this vessel:

M/V MERVE A (EX M/S CORNER BROOK)

TURKISH FLAG, BLT 76, (RBLT 2006).
LOA/LBP/B/D/S.SPD 135,6/127,7/18,5/9,82/15 KNT,
GRT/NRT 7587/2456, DWT 13.500, DWCC 13.200, HO/HA 3/3.
GRAIN FITTED, CO2 FITTED, STEEL FLRD.
GLESS, IMO 7420194, CLASS TURKISH LOYD,
CALL SING: TCOL9, HATCHOVERS PONTOON TYPE,
GR/BL 19098/ 18086 CBM, UNIT WEIGHT 10 TN

HOLD DIMENSIONS
-----------------------------------------------
HOLD: 3 = 32,2 X 10,5 X 17,5/ 7423 CBM
HOLA: 2 = 26,6 X 10,5 X 17,5/ 6313 CBM
HOLD: 1 = 25.2 X 10,5 X 17,5/ 5362 CBM
-----------------------------------------------
HATCH: 3 = 27,2 X 13,5 X 3
HATCH: 2 = 25,1 X 13,5 X 3
HATCH: 1 = 20.2 X 13,5 X 3
-----------------------------------------------


- LP 1 GSPB NOVOROSSIYSK
- DP 1 GSPB ALEXANDRIA OR ISKENDERUN OR MARMARA OR NEMRUT
- LAYCAN 16-20 JULY 2006 (BEST ETA 17.07)
- DISCH RATE 1000 MTS PWWDS
- MIN QTTY - 10000 MTS
- DEM 5000 USD PDPR /FREE DESPATCH

Regards,

Denis Kitaev
Centramet Trading S.A.

tel.  +41 22 791 76 78
fax.  +41 22 791 76 70
mob. +41 79 830 08 84

*[handwritten note:]*

Dear Sirs,

We can accept the above VESSEL on the
FOLLOWING PROVISIONS:
- Discharging rate: 750 MT per wwd FSHEX EIU
- Demurrage: $ 1500
- Agents at disch. port:
  Marina Shipping Agency
  T. 00203-4839353
  F. 00203-4806018
  CAPT. SAMIR
Kindly confirm
Best REGARDS / BESHAY STEEL
13.07.06

17-JUL-2006 12:26 FROM:ALPHA+EGYPT
202 2575081
Re: Beshay's vessel confirmation

**Subject:** RE: FW: Beshay's vessel confirmation
**From:** "Petr Terebov" <terebov@bluewin.ch>
**Date:** Mon, 17 Jul 2006 10:24:17 +0200
**To:** "'alphaegypt'" <alphaegypt@link.net>

We are missing confirmation of last ship.

Regards,
Petr
-----Original Message-----
From: alphaegypt [mailto:alphaegypt@link.net]
Sent: Wednesday, July 12, 2006 1:03 PM
To: Petr Terebov; alphaegypt
Subject: Re: FW: Beshay's vessel confirmation

Dear Mr. Petr

After our communication with Beshay he accepted:
- 1000 MT per WWD FSHEX EIU
- Demurrage 1500.00 $

Please confirm by return
Best regards

Petr Terebov wrote:

We have contractual 1000 mt!!!
We can not agree with 900 mt.
Same is related to demurrage rate!!!!

Regards,
Petr

-----Original Message-----
From: alphaegypt [mailto:alphaegypt@link.net]
Sent: Wednesday, July 12, 2006 12:19 PM
To: Petr Terebov; alphaegypt
Subject: Beshay's vessel confirmation

Dear Petr

Please find attached Beshay's confirmation for M/V Ocean Beauty

*[handwritten notes:]*

عناية السيد الاستاذ/ جميل شاكر
٧ / ١٨

Dear Sirs,
We confirm the
given conditions
herewith.
17.07.06
BESHAY STEEL

# EXHIBIT 9

NAME: "CONGENBILL". EDITION 1994

Page 2

| Shipper |
|---|
| LLC "EXPOMET" |
| 204 KOMAROVA STR., BATAYSK 346881, RUSSIA |
| Contract №756/73317265/15051 dd 04.04.2006г |

**BILL OF LADING**
B/L No. 1
TO BE USED WITH CHARTER-PARTIES

Reference No.

| Consignee |
|---|
| TO THE ORDER OF ARAB AFRICAN INTERNATIONAL BANK |

(10 a)

SECOND ORIGINAL

| Notify address |
|---|
| EGYPTIAN AMERICAN STEEL ROLLING CO. |
| 6. FARID SEMEIKA STR., HELIOPOLIS |
| CAIRO, EGYPT |

| Vessel | Port of loading |
|---|---|
| MERVE A | NOVOROSSISK / RUSSIA |

Port of discharge

EL DEKHILA SEAPORT - EGYPT

| Shipper's description of goods | Gross weight |
|---|---|
| STEEL SCRAP | IN BULK  318.230 MT |

L/C NO. LC/HEL 610/06

(of which ........... on deck at Shipper's risk; the Carrier not being responsible for loss or damage howsoever arising)

**CLEAN ON BOARD**

| Freight payable as per CHARTER-PARTY | SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above. |
|---|---|
| FREIGHT ADVANCE. Received on account of freight: | Weight, measure, quality, quantity, condition, contents and value unknown. IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void. |
| ................................................................................ | FOR CONDITION OF CARRIAGE SEE OVERLEAF |
| Time used for loading ................. days .................. hours. | |

| FREIGHT PAYABLE AS PER CHARTER PARTY | Place and date of issue |
|---|---|
| | NOVOROSSISK          29.07.2006 |
| Number of original Bs'L | Signature |
| 3 (THREE) | MASTER OF THE M/V " MERVE A " |
| | MR. SEMIH UYGUNKAN |

الممكلة في الافريقي الدولي
شركة مصر لصناعة الحديد

# BILL OF LADING

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) **General Paramount Clause.**
(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment, shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

*(b)Trades where Hague-Visby Rules apply.*
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

(c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) **General Average.**
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) **New Jason Clause.**
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo.
If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessel belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Carrier before delivery.

(5) **Both-to-Blame Collision Clause.**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.



For particulars of cargo, freight, destination, etc., see overleaf.

# EXHIBIT 10

CODE NAME: "CONGENBILL". EDITION 1994

Page 2

| | |
|---|---|
| Shipper<br>JSC "TK" «MAIRCENTER» ON BEHALF OF "CENTRAMET TRADING S.A."<br>Contract № 756/52420817/15013 dd. 26.12.2005 | **BILL OF LADING**   B/L No. 2<br>**TO BE USED WITH CHARTER-PARTIES**<br>Reference No. |

Consignee
TO THE ORDER OF ARAB AFRICAN
INTERNATIONAL BANK

Notify address
EGYPTIAN AMERICAN STEEL ROLLING CO.
6, FARID SEMEIKA STR., HELIOPOLIS
CAIRO. EGYPT

**FIRST ORIGINAL**

| Vessel | Port of loading |
|---|---|
| **MERVE A** | **NOVOROSSISK / RUSSIA** |

Port of discharge

**EL DEKHILA SEAPORT - EGYPT**

| Shipper's description of goods | Gross weight |
|---|---|
| **STEEL SCRAP** | **IN BULK  680.520 MT** |

L/C NO. LC/HEL 610/06

(of which            on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

**CLEAN ON BOARD**

| | |
|---|---|
| Freight payable as per<br>CHARTER-PARTY<br>...<br><br>FREIGHT ADVANCE.<br>Received on account of freight:<br><br>........................................................................<br><br>Time used for loading ............... days ............... hours. | SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above.<br>Weight, measure, quality, quantity, condition, contents and value unknown.<br>IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.<br>FOR CONDITION OF CARRIAGE SEE OVERLEAF |

| FREIGHT PAYABLE AS PER CHARTER PARTY | Place and date of issue<br>NOVOROSSISK        29.07.2006 |
|---|---|
| Number of original Bs/L<br><br>3 (THREE) | Signature<br>**MASTER OF THE M/V " MERVE A "** |

# BILL OF LADING

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.
(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment, shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

(b)Trades where Hague-Visby Rules apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

(c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo.
If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessel belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight,
destination, etc., see overleaf.



# EXHIBIT 11

CODE NAME: "CONGENBILL", EDITION 1994                                                    Page 2

| | |
|---|---|
| Shipper<br>JSC "TK" «MAIRCENTER» ON BEHALF OF "CENTRAMET TRADING S.A."<br>Contract № 756/52420817/15012 dd 26.12.2005 | **BILL OF LADING**<br>TO BE USED WITH CHARTER-PARTIES |

B/L No. 3

Reference No.

| |
|---|
| Consignee<br>TO THE ORDER OF ARAB AFRICAN INTERNATIONAL BANK |
| Notify address<br>EGYPTIAN AMERICAN STEEL ROLLING CO.<br>6, FARID SEMEIKA STR., HELIOPOLIS<br>CAIRO, EGYPT |

## FIRST ORIGINAL

| | |
|---|---|
| Vessel<br><br>MERVE A | Port of loading<br><br>NOVOROSSISK / RUSSIA |

Port of discharge

EL DEKHILA SEAPORT - EGYPT

| | |
|---|---|
| Shipper's description of goods<br><br>STEEL SCRAP | Gross weight<br><br>IN BULK  8 276.147 MT |

L/C NO. LC/HEL 610/06

(of which                on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

**CLEAN ON BOARD**



| |
|---|
| Freight payable as per<br>CHARTER-PARTY<br>....<br><br>FREIGHT ADVANCE<br>Received on account of freight:<br>........................<br>........................<br><br>Time used for loading . ............... days ................ hours. |

SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above.
Weight, measure, quality, quantity, condition, contents and value unknown.
IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.

FOR CONDITION OF CARRIAGE SEE OVERLEAF

| | |
|---|---|
| FREIGHT PAYABLE AS PER<br>CHARTER PARTY | Place and date of issue<br><br>NOVOROSSISK        29.07.2006 |
| Number of original Bs/L<br><br>3 (THREE) | Signature<br><br>**MASTER OF THE<br>M/V " MERVE A "** |

MR. SEMIH UYGUNKAN

# BILL OF LADING

TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

## Conditions of Carriage

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.
(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment, shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply

(b) Trades where Hague-Visby Rules apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

(c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo.
If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.



For particulars of cargo, freight,
destination, etc., see overleaf.

# EXHIBIT 12

PAGE No. 2

STANDARD STATEMENT OF FACTS (SHORT FORM)
RECOMMENDED BY
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE (BIMCO)
AND THE FEDERATION OF NATIONAL ASSOCIATIONS
OF SHIP BROKERS AND AGENTS (FONASBA)

| 1. Agents | MATINA SHIPPING AGENCIES | | |
|---|---|---|---|
| 2. Vessel's name | MERVE - A | 3. Port | ALEXANDRIA - EGYPT |
| 4. Owners/Disponent Owners | KOÇ FINANSAL KIRALAMA VE ANONIM ACTIVE MARINE | 5. Vessel berthed | 2006-08-07-2300H. ALLFAST |
| | | 6. Loading commenced | ✓ |
| | | 7. Loading completed | ✓ |
| 8. Cargo | 9274+897 M/T STEEL SCRAP! | 9. Discharging commenced | 2006-08-08-043cH |
| | | 10. Discharging completed | 2006-09-30-0600H- |
| | | 11. Cargo documents on board | 12. Vessel sailed  2006- |
| 13. Charter Party* | | 14. Working hours/meal hours of the port* | FROM 0800H. To 1600H. INCLUDING ONE HOUR FOR MEAL. |
| 15. B/L of Lading weight/quantity | 16. Outturn weight/quantity | | |
| 17. Vessel arrived on roads  2006-08-06-0345H. | | 18. S.P.O.B. 2006-08-06-1200H. | |
| 19. Notice of readiness tendered  2006-08-06-0345H. | | 20. H.P.O.B. 2006-08-07-2200H. | |
| 21. ~~Notice of~~ N.O.R. ACC.        AS PER C/P | | 22. H.P.O.B. 2006-8-30-1935 TO RESUME | |

DETAILS OF DAILY WORKING: DISCHARGING - MASTER REFUSED DISCHARGING WITHOUT PRESENT B/L- RECEIVERS PRESENT B/L ON 31-8-2006 AT 2000H. - ON 8-9-06 P.O.B. 2140 To 2250H. To RESUME DISCH. - No TRUCK, No DELAY ON SHIP'S ACCOUNT

| Date | Day | Hours worked | | Hours stopped | | No. of gangs | Quantity load./disch. | Remarks* |
|---|---|---|---|---|---|---|---|---|
| | | From | to | From | to | | | |
| 8-8-06 | TUES. | 0430 | 0530 | | 1 | 1 | | |
| | | 0930 | 2030 | | | 1 | | |
| 9-8-06 | WEDNES. | 1000 | 1815 | | | 1 | | |
| 10-8-06 | THURS. | — | — | | | | NO WORKED. |
| 11-8-06 | FRI. | — | — | | | | ANCHOR AT 1745H. |
| 31-8-06 | THURS. | 2130 | 2400 | | | 1 | RESUME DISCH. |
| 1-9-06 | FRI. | 0001 | 0500 | | | 2 | |
| | | 0800 | 2400 | | | 2 | |
| 2-9-06 | SATUR. | 0001 | 0500 | | | 2 | |
| | | 0800 | 2400 | | | 2 | |
| 3-9-06 | SUN. | 0001 | 0500 | | | 2 | |
| | | 0800 | 2400 | | | 2 | |
| 4-9-06 | MON. | 0001 | 0500 | | | 2 | |
| | | 0800 | 2400 | | | 2 | |
| 5-9-06 | TUES. | 0001 | 0500 | | | 2 | ANCHOR. AT 1830 |
| | | 0800 | 1930 | | | 2 | |
| 9-9-06 | SATUR. | 1800 | 2400 | | | 2 | |
| 10-9-06 | SUN | 0001 | 0500 | | | 2 | |
| | | 0800 | 2400 | | | 2 | |
| 11-9-06 | MON. | 0001 | 0500 | | | | |

General remarks* ALL CARGO DISCHARGE AS PER CARGO MANIFEST AND B/L HOLDS ARE EMPTY. FINAL WEIGHT ACC. S.G.S. REPORT. - ON 10/11-8-06 NO WORKED FOR BAD STEEL SCRAP                 SEE SECOND PAGE

| Place and date | Name and signature (Master)* |
|---|---|
| Name and signature (Agents)*  SAAD | Name and signature (for the Charterers/Shippers/Receivers)* |

* See Explanatory Notes overleaf for filling in the boxes

*PAGE NO 2*

| 1. Agents | STANDARD STATEMENT OF FACTS (SHORT FORM) |
|---|---|
| *MATINA SHIPPING AGENCIES* | RECOMMENDED BY THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE (BIMCO) AND THE FEDERATION OF NATIONAL ASSOCIATIONS OF SHIP BROKERS AND AGENTS (FONASBA) |

| 2. Vessel's name | 3. Port |
|---|---|
| *MERVE - A* | *ALEXANDRIA - EGYPT* |

| 4. Owners/Disponent Owners | 5. Ves.:l berthed |
|---|---|
| *KOÇ FINANSAL KIRALAMA ve ANONIM ACTIVE MARINE* | *2006-08-07-2300 H.*   *ALL FAST* |

| 6. Loading commenced | 7. Loading completed |
|---|---|
| | |

| 8. Cargo | 9. Discharging commenced | 10. Discharging completed |
|---|---|---|
| *9274.897 M/T STEEL SCRAP* | *2006-08-08-0430 H.* | *2006-09-30-0600 H* |

| 11. Cargo documents on board |
|---|
| *2006-* |

| 12. Vessel sailed |
|---|
| |

| 13. Charter Party* | 14. Working hours meal hours of the port* |
|---|---|
| | *FROM 0800 H. To 1600 H. INCLUDING ONE HOUR FOR MAIL.* |

| 15. Bill of Lading weight/quantity | 16. Outturn weight/quantity |
|---|---|
| | |

| 17. Vessel arrived on roads | 18. |
|---|---|
| *2006-08-06-0345 H.* | *S.P.O.B. 2006-08-06-1200 H.* |

| 19. Notice of readiness tendered | 20. |
|---|---|
| *2006-08-06-0345 H.* | *H.P.O.B. 2006-08-07-2200 H.* |

| 21. Next tide available | 22. |
|---|---|
| *N.O.R. ACC.      AS PER C/P* | *H.P.O.B 2006-8-30-1935 TO RESUME* |

*DISCHARGING — MASTE REFUSED DISCHARGING WITHOUT PRESENT B/L — RECEIVE
PRESENT Bs/L ON 31-8-2006 AT 2000H. — ON 22-9-06 P.O.B. AT 2320H To 23-9-06 P.OFF 0035H
TO RESUME DISCH. - NO TRUCK.*

DETAILS OF DAILY WORKING

| Date | Day | Hours worked | | Hours stopped | | No. of gangs | Quantity load./disch. | Remarks* |
|---|---|---|---|---|---|---|---|---|
| | | From | to | From | to | | | |
| *11-9-06* | *MON.* | *0800* | *1700* | | | | | *ANCHOR. AT 1724/1825* |
| *23-9-06* | *SATUR.* | *1025* | *2400* | | | *2* | | |
| *24-9-06* | *SUN.* | *0001* | *0500* | | | | | |
| | | *0800* | *2400* | | | *2* | | |
| *25-9-06* | *MON.* | *0001* | *0300* | | | | | |
| | | *0800* | *2400* | | | *2* | | |
| *26-9-06* | *TUES.* | *0001* | *0300* | | | | | |
| | | *0800* | *2400* | | | *2* | | |
| *27-9-06* | *WEDNES* | *0001* | *0300* | | | | | |
| | | *0800* | *2400* | | | *2* | | |
| *28-9-06* | *THURS* | *0001* | *0300* | | | | | |
| | | *0800* | *2400* | | | *2* | | |
| *29-9-06* | *FRI* | *0001* | *0300* | | | | | |
| | | *0800* | *2400* | | | | | |
| *30-9-06* | *SATUR.* | *0001* | *0600* | | | | | |

General remarks*

*SEE TIME SHEET ATTACH. FROM SHIP'S SIDE. 7 PAGES*

*PLS SEE MASTER GENERAL FACTS — ATTACHED.*

| Place and date | Name and signature (Master)* |
|---|---|
| *ALEXANDRIA* |  |
| Name and signature (Agents)* | Name and signature (for the Charterers/Shippers/Receivers)* |
| *SAAD* | |

Published by The Baltic and International Maritime Conference (BIMCO), Copenhagen



*MV MERVE A*                                                    *ALEXANDRIA PORT*

## MASTER GENERAL STATEMENT OF FACT

*DISCHARGING 9274 MT SCRAP*

**VSL ARVD OUT ROAD** ........................................................  **06/08/06  03:45**

**NOR  TENDERD**........... ..............................................  **07/08/06  03:45**

**VSL BRD** ...............................................................  **07/08/06  23:00**

**MASTER  RCVD OB/L** ..................................................   **31/08/06  20:00**

*( TOTAL 23 DAYS  DELAY ' WAITING RECEIVER TO BRING O B/L )*

**VSL START DISCH** ..........................................................  **31/08/06  21:00**

**VSL COMP DISCH** .......................................................  **.30/09/06  05:00**

*( TOTAL 30 DAYS TO DISCHARGE 9274 MT SCRAP  DUE TO VERY LOW RATE  OF DISCHARGIG*
*CAUSED BY RECEIVERS  STIVEDORING CO )*

*( SUB TOTAL 53 DAYS VESSEL DELAY IN ALEX PORT )*

SO WE DECLARE  THIS REMARKS
1-WE KEEP ALL OWNER  RIGHTS RESERVED OF DEMORAGE  INC.. WHEREAS
VSL IS NOT RESPONSIBLE FOR THIS 53 DAYS. DELAY .

2-VSL IS NOT RESPONSIBLE FOR EXTRA EXPENSES CAUSED BY THIS DELAY
INCLUDING ALLSHIFTING EXPENSES FROM THE BERTH TO INNER ANCHORAGE
AND FROM INNER ANCHORAGE TO BERTH AGAIN – WHEREAS THIS IS
HAPPEND 3 TIMES  BY PORT AUTHORITY INSTRUCTION  WHICH IS NOT
ACCEPTED THIS DELAYT DUE TO LOW RATE OF DISCHARGE .

3-VSL IS NOT RESPONSIBLE FOR ANY DELAY CAUSED BY RECEIVER
ALL CARGO DISCHARGED AS LOADED – VSL IS NOT RESPONSIBLE FOR THE
CARGO QAULITY IF  RECEIVER ACCEPTED OR NOT  AND VSL IS NOT INVOLVED
IN THE DEAL IN BETWEEN SHIPPRS AND RECEIVERS FOR THE CARGO .

BEST REGARDS
MASTER

LATT Shipping

30 / 0 9 / 06 - 0330 HRS

## M/V MERVE A DISCHARGING OPERATION ALEX PORT

### TIME SHEET

| DATE | TIME | OPERATION |
|------|------|-----------|
| 07.08.06 | 23:00 | BERTHING |
| 07.08.06 | 23:30 | DRAFT SURVEY START |
| | | |
| 08.08.06 | 02:30 | DRAFT SURVEY FINISH |
| 08.08.06 | 04:30 | NO 2 START DISCHARGING |
| 08.08.06 | 05:30 | NO 2 STOP DISCHARGING(CHANGE TO PORT PERSONS) |
| 08.08.06 | 09:30 | NO 2 START DISCHARGING |
| 08.08.06 | 11:00 | NO 1 START DISCHARGING |
| 08.08.06 | 14:00 | NO 2 STOP DISCHARGING ( CHANGE TO SHIP'S HOLD) |
| 08.08.06 | 14:30 | NO 3 START DISCHARGING |
| 08.08.06 | 20:00 | NO 1 STOP DISCHARGING (WAITING LORRY) |
| 08.08.06 | 20:30 | NO 3 STOP DISCHARGING (WAITING LORRY) |
| 08.08.06 | 24:00 | NO 1 AND NO 2 NO DISCHARGING(WAITING LORRY) |
| | | |
| 09.08.06 | 10:00 | NO 3 START DISCHARGING |
| 09.08.06 | 10:50 | NO 3 STOP DISCHARGING(WAITING LORRY) |
| 09.08.06 | 11:30 | NO 3 START DISCHARGING |
| 09.08.06 | 18:15 | NO 3 STOP DISCHARGING |
| | | |
| **09.08.06 TO 30.08.06** | | **WAITING ANCHOR** |
| | | |
| 31.08.06 | 21:00 | NO 1 NO 3 START DISCHARGING |
| 31.08.06 | 24:00 | DISCHARGING |
| | | |
| 01.09.06 | 01:00 | NO 1 NO 3 DISCHARGING STOP (WAITING LORRY) |
| 01.09.06 | 01:15 | NO 1 NO 3 DISCHARGING START |
| 01.09.06 | 05:25 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 01.09.06 | 06:00 | NO 1 DISCHARGING STOP (WAITING LORRY) |
| 01.09.06 | 09:05 | NO 1 DISCHARGING START |
| 01.09.06 | 11:00 | NO 1 DISCHARGING STOP(CRANE BREAKDOWN) |
| 01.09.06 | 12:00 | NO 1 DISCHARGING START |
| 01.09.06 | 12:45 | NO 1 DISCHARGING STOP (WAITING LORRY) |
| 01.09.06 | 14:00 | NO 1 NO 3 DISCHARGING START |
| 01.09.06 | 18:30 | NO 1 DISCHARGING STOP(CRANE BREAKDOWN) |
| 01.09.06 | 18:30 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 01.09.06 | 1850 | NO 3 DISCHARGING START |
| 01.09.06 | 19:15 | NO 1 DISCHARGING START |
| 01.09.06 | 21:50 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 01.09.06 | 22:20 | NO 1 DISCHARGING STOP(WAITING LORRY) |
| 01.09.06 | 24:00 | NO DISCHARGING WAITING LORRY |

PAGE 1

| | | |
|---|---|---|
| 02.09.06 | 08:45 | NO 1 NO 3 DISCHARGING START |
| 02.09.06 | 10:30 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 02.09.06 | 10:50 | NO 1 DISCHARGING STOP(WAITING LORRY) |
| 02.09.06 | 11:50 | NO 3 DISCHARGING START |
| 02.09.06 | 12:50 | NO 3 DISCHARGING STOP (WAITING LORRY) |
| 02.09.06 | 15:00 | NO 3 DISCHARGING START |
| 02.09.06 | 15:30 | NO 1 DISCHARGING START |
| 02.09.06 | 15:55 | NO 3 DISCHARGINNG STOP(WAITING LORRY) |
| 02.09.06 | 16:20 | NO 1 DISCHARGING STOP(WAITING  LORRY) |
| 02.09.06 | 16:40 | NO 3 DISCHARGING START |
| 02.09.06 | 17:30 | NO 1 DISCHARGING START |
| 02.09.06 | 17:50 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 02.09.06 | 18:10 | NO 1 DISCHARGING STOP(WAITING LORRY) |
| 02.09.06 | 19:55 | NO 1 DISCHARGING START |
| 02.09.06 | 22:00 | NO 1 DISCHARGING STOP(CRANE BREAKDOWN) |
| 02.09.06 | 22:30 | NO 1 DISCHARGING START |
| 02.09.06 | 23:00 | NO 1 DISCHARGING STOP(WAITING LORRY) |
| 02.09.06 | 24:00 | NO DISCHARGING (WAITING LORRY) |
| | | |
| 03.09.06 | 00:15 | NO 1 DISCHARGING START |
| 03.09.06 | 00:45 | NO 1 DISCHARGING STOP (CRANE BREAKDOWN) |
| 03.09.06 | 01:00 | NO 1 DISCHARGING START |
| 03.09.06 | 06:00 | NO 1 DISCHARGING STOP(CHANGE TO PORT PERSONS) |
| 03.09.06 | 08:40 | NO 1 DISCHARGING START |
| 03.09.06 | 09:05 | NO 3 DISHARGING START |
| 03.09.06 | 10:10 | NO 1 DISCHARGING STOP (CRANE BREAKDOWN) |
| 03.09.06 | 10:10 | NO 3 DISCHARGING STOP (WAITING LORRY) |
| 03.09.06 | 10:55 | NO 1 NO 3 DISCHARGING START |
| 03.09.06 | 11:15 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 03.09.06 | 11:25 | NO 3 DISCHARGING START |
| 03.09.06 | 12:15 | NO 1 DISCHARGING STOP(WAITING LORRY) |
| 03.09.06 | 12:45 | NO 1 DISCHARGING START |
| 03.09.06 | 13:10 | NO 1 DISCHARGING STOP(CRANE BREAKDOWN) |
| 03.09.06 | 13:25 | NO 1 DISCHARGING START |
| 03.09.06 | 13:35 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 03.09.06 | 13:50 | NO 3 DISCHARGING START |
| 03.09.06 | 14.15 | NO 1 DISCHARGING STOP (WAITING LORRY) |
| 03.09.06 | 14:50 | NO 1 DISCHARGING START |
| 03.09.06 | 15.15 | NO 1 DISCHARGING STOP (WAITING LORRY) |
| 03.09.06 | 15:45 | NO 3 DISCHARGING STOP (WAITING LORRY) |
| 03.09.06 | 16.05 | NO 3 DISCHARGING START |
| 03.09.06 | 16:35 | NO 3 DISCHARGING START(WAITING LORRY) |
| 03.09.06 | 17:50 | NO 1 DISCHARGING START |
| 03.09.06 | 18:10 | NO 3 DISCHARGING START |
| 03.09.06 | 18:55 | NO 1 DISCHARGING STOP (WAITING LORRY) |
| 03.09.06 | 19:00 | NO 3 DISCHARGING STOP (WAITING LORRY) |
| 03.09.06 | 19:45 | NO 1 NO 3 DISCHARGING START |

PAGE 2

| | | |
|---|---|---|
| 03.09.06 | 20:50 | NO 1 NO 3 DISCHARGING STOP (WAITING LORRY) |
| 03.09.06 | 20:50 | NO 1 NO 3 DISCHARGING STOP (WAITING LORRY) |
| 03.09.06 | 21:25 | NO 1 NO 3 DISCHARGING START |
| 03.09.06 | 23:20 | NO 1 DISCHARGING STOP (WAITING LORRY) |
| 03.09.06 | 23:40 | NO 1 DISCHARGING START |
| | | |
| 04.09.06 | 01:05 | NO 3 DISCHARGING STOP (WAITING LORRY) |
| 04.09.06 | 03:20 | NO 3 DFISCHARGING START |
| 04.09.06 | 03:35 | NO 1 NO 3 DISCHARGING STOP (WAITING LORRY) |
| 04.09.06 | 04:55 | NO 1 NO 3 DISCHARGING START |
| 04.09.06 | 05:20 | NO 1 DISCHARGING STOP (WAITING LORRY) |
| 04.09.06 | 05:30 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 04.09.06 | 09:00 | NO 1 DISCHARGING START |
| 04.09.06 | 10:20 | NO 3 DISCHARGING START |
| 04.09.06 | 11:15 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 04.09.06 | 13:05 | NO 1 DISCHARGING STOP(WAITING LORRY) |
| 04.09.06 | 13:20 | NO 1 DISCHARGING START |
| 04.09.06 | 13:35 | NO 3 DISCHARGING START |
| 04.09.06 | 14:05 | NO 1 DISCHARGING STOP(WAITING LORRY) |
| 04.09.06 | 14:30 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 04.09.06 | 15:35 | NO 3 DISCHARGING START |
| 04.09.06 | 15:45 | NO 1 DISCHARGING START |
| 04.09.06 | 17:25 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 04.09.06 | 18:00 | NO 3 DISCHARGING START |
| 04.09.06 | 20:50 | NO 1 DISCHARGING STOP(CHANGE TO SHIP'S HOLD) |
| 04.09.06 | 21:10 | NO 3 DISCHARGING STOP (WAITING LORRY) |
| 04.09.06 | 23:00 | NO 2 NO 3 DISCHARGING START |
| | | |
| 05.09.06 | 02:05 | NO 2 DISCHARGING STOP( WAITING LORRY) |
| 05.09.06 | 02:15 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 05.09.06 | 03:05 | NO 2 DISCHARGING START |
| 05.09.06 | 03:25 | NO 3 DISCHARGING START |
| 05.09.06 | 04:05 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 05.09.06 | 04:25 | NO 2 DISCHARGING STOP(WAITING LORRY) |
| 05.09.06 | 08:50 | NO 2 DISCHARGING START |
| 05.09.06 | 09:00 | NO 3 DISCHARGING START |
| 05.09.06 | 13:05 | NO 2 DISCHARGING STOP(WAITING LORRY) |
| 05.09.06 | 13:10 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 05.09.06 | 15:00 | NO 2 DISCHARGING START |
| 05.09.06 | 15:45 | NO 2 DISCHARGING STOP(WAITING TO UNBERTHING) |

### 05.09.06 TO 08.09.06 WAITING ANCHORE

| | | |
|---|---|---|
| 08.09.06 | 23:00 | P.OF.B |
| 08.09.06 | 24:00 | WAITING FOR DISCHARGING |
| 09.09.06 | 10:50 | NO 2 DISCHARGING START |
| 09.09.06 | 12:20 | NO 2 DISCHARGING START |
| 09.09.06 | 13:30 | NO 2 DISCHARGING STOP (WAITING LORRY) |

| 09.09.06 | 13:40 | SHIFTING START |
| 09.09.06 | 13:40 | SHIFTING START |
| 09.09.06 | 14:00 | SHIFTING STOP |
| 09.09.06 | 14:20 | NO 2 DISCHARGING START |
| 09.09.06 | 18:30 | NO 2 DISCHARGING STOP |
| 09.09.06 | 19:20 | NO 2 DISCHARGING START |
| 09.09.06 | 20:40 | NO 2 DISCHARGING STOP(CRANE BREAKDOWN) |
| 09.09.06 | 21:55 | NO 2 DISCHARGING START |
| 09.09.06 | 22:50 | NO 2 DISCHARGING STOP (WAITING LORRY) |
| 09.09.06 | 23:15 | NO 2 DISCHARGING START |
| 10.09.06 | 01:00 | NO 2 DISCHARGING STOP(WAITING LORRY) |
| 10.09.06 | 04:15 | NO 2 DISCHARGING START |
| 10.09.06 | 05:15 | NO 2 DISCHARGING STOP(WAITING LORRY) |
| 10.09.06 | 09:30 | NO 2 DISCHARGING START |
| 10.09.06 | 10:20 | NO 2 DISCHARGING STOP (WAITING LORRY) |
| 10.09.06 | 12:45 | NO 2 DISCHARGING START |
| 10.09.06 | 13:40 | NO 2 DISCHARGING STOP (WAITING LORRY) |
| 10.09.06 | 13:55 | NO 2 DISCHARGING START |
| 10.09.06 | 16:50 | NO 2 DISCHARGING STOP (CRANE BREAKDOWN) |
| 10.09.06 | 17:20 | NO 2 DISCHARGING START |
| 10.09.06 | 18:30 | NO 2 DISCHARGING STOP (CRANE BREAKDOWN) |
| 10.09.06 | 19:10 | NO 2 NO 3  DISCHARGING START |
| 10.09.06 | 20:00 | NO 2 DISCHARGING STOP (WAITING LORRY) |
| 10.09.06 | 20:50 | NO 3 DISCHARGING STOP (WAITING  LORRY) |
| 10.09.06 | 21:00 | NO 2 DISCHARGING START |
| 10.09.06 | 21:05 | NO 3 DISCHARGING START |
| 10.09.06 | 22:10 | NO 2 NO 3 DISCHARGING STOP(WAITING LORRY) |
| 10.09.06 | 22:50 | NO 2 NO 3 DISCHARGING START |
| 11.09.06 | 02:40 | NO 3 DISCHARGING STOP (WAITING LORRY) |
| 11.09.06 | 03:30 | NO 2 DISCHARGING STOP (WAITING LORRY) |
| 11.09.06 | 09:25 | NO 2 DISCHARGING START |
| 11.09.06 | 11:30 | NO 3 DISCHARGING START |
| 11.09.06 | 15:40 | NO 2 NO 3 DISCHARGING STOP.WAITING FOR ANCHORE |
| 11.09.06 | 16:30 | ALL HOLD CLOSE |

**11.09.06 TO 23.09.06 ANCHORE**

| 23.09.06 | 00:25 | BERTHING NO:65 |
| 23.09.06 | 01:00 | ALL HOLD OPEN WAITING FOR DISCHARGING |
| 23.09.06 | 10:25 | NO 1 DISCHARGING START |
| 23.09.06 | 10:40 | NO 3 DISCHARGING START |
| 23.09.06 | 11:45 | NO 1 NO 3 DISCHARGING STOP (WAITING LORRY) |
| 23.09.06 | 12:00 | NO 1 DISCHARGING START |
| 23.09.06 | 12:20 | NO 3 DISCHARGING START |
| 23.09.06 | 14:30 | NO 3 DISCHARGING STOP (WAITING LORRY)    PAGE 4 |

| | | |
|---|---|---|
| 23.09.06 | 14:50 | NO 3 DISCHARGING START |
| 23.09.06 | 15:40 | NO 1 DISCHARGING STOP(CRANE BREAKDOWN) |
| 23.09.06 | 16:00 | NO 1 DISCHARGING START |
| 23.09.06 | 20:15 | NO 3 DISCHARGING STOP |
| 23.09.06 | 21:00 | NO 3 DISCHARGING START |
| | | |
| 24.09.06 | 00:30 | NO 1 DISCHARGING STOP(WAITING LORRY) |
| 24.09.06 | 01:00 | NO 1 DISCHARGING START |
| 24.09.06 | 01:50 | NO 1 NO 3 DISCHARGING STOP |
| 24.09.06 | 03:30 | NO 1 NO 3 DISCHARGING START |
| 24.09.06 | 04:20 | NO 1 NO 3 DISCHARGING STOP(WAITING LORRY) |
| 24.09.06 | 08:25 | NO 1 NO 3 DISCHARGING START |
| 24.09.06 | 10:00 | NO 3 DISCHARGING STOP(CRANE BREAKDOWN) |
| 24.09.06 | 10:40 | NO 3 DISCHARGING START |
| 24.09.06 | 11:45 | NO 1 DISCHARGING STOP(WAITING LORRY) |
| 24.09.06 | 11:50 | NO 3 DISCHARGING STOP (WAITING LORRY) |
| 24.09.06 | 12:20 | NO 3 DISCHARGING START |
| 24.09.06 | 12:40 | NO 3 DISCHARGING START |
| 24.09.06 | 13:00 | NO 1 DISCHARGING STOP |
| 24.09.06 | 13:30 | NO 1 DISCHARGING START |
| 24.09.06 | 15:30 | NO:1 DISCHARGING STOP(WAITING LORRY) |
| 24.09.06 | 15:30 | NO 3 DISCHARGING STOP (WAITING LORRY) |
| 24.09.06 | 16:20 | NO 1 NO 3 DISCHARGING START |
| 24.09.06 | 17:40 | NO 1 NO 3 DISCHARGING STOP |
| 24.09.06 | 19:30 | NO 1 NO 3 DISCHARGING START |
| 24.09.06 | 21:10 | NO 1 DISCHARGING STOP (WAITING LORRY) |
| 24.09.06 | 21:40 | NO 3 DISCHARGING STOP (WAITING LORRY) |
| 24.09.06 | 22:05 | NO 1 DISCHARGING START |
| 24.09.06 | 22:10 | NO 3  DISCHARGING STARTH |
| 24.09.06 | 24:00 | NO 1 NO 3 DISCHARGING. |
| | | |
| 25.09.06 | 00:10 | NO 3 DISCHARGING STOP(CRANE BREAK DOWN) |
| 25.09.06 | 01:00 | NO 1 DISCHARGING STOP |
| 25.09.06 | 02:45 | NO 1 DISCHARGING START |
| 25.09.06 | 04:20 | NO 1 DISCHARGING STOP |
| 25.09.06 | 05:00 | NO 1 DISCHARGING START |
| 25.09.06 | 05:40 | NO 1 DISCHARGING STOP(WAITING LORRY) |
| 25.09.06 | 08:30 | NO 1 DISCHARGING START |
| 25.09.06 | 11:15 | NO 1 DISCHARGING STOP(WAITING LORRY) |
| 25.09.06 | 11:40 | NO 1 DISCHARGING START |
| 25.09.06 | 12:40 | NO 1 DISCHARGING STOP |
| 25.09.06 | 13:20 | NO 2 DISCHARGING START |
| 25.09.06 | 13:45 | NO 3 DISCHARGING START |
| 25.09.06 | 14:15 | NO 2 NO 3 DISCHARGING STOP.SHIFTING START |
| 25.09.06 | 15:00 | SHIFTING STOP |
| 25.09.06 | 15:30 | NO 2 NO 3 DISCHARGING START |
| 25.09.06 | 17:25 | NO 2 NO 3 DISCHARGING STOP |

PAGE 5

| | | |
|---|---|---|
| 25.09.06 | 19:20 | NO 2 DISCHARGING USEING 2 CRANE |
| 25.09.06 | 19:25 | NO 3 DISCHARGING START |
| 25.09.06 | 23:20 | NO 2 DISCHARGING STOP (WAITING LORRY) |
| | | |
| 26.09.06 | 00:20 | NO 2 DISCHARGING START |
| 26.09.06 | 02:25 | NO 2 NO 3 DISCHARGING STOP |
| 26.09.06 | 03:15 | NO 2 NO 3 DISCHARGING START |
| 26.09.06 | 04:25 | NO 2 NO 3 DISCHARGING STOP |
| 26.09.06 | 05:00 | NO 2 NO 3 DISCHARGING START |
| 26.09.06 | 05:40 | NO 2 NO 3 DISCHARGING STOP |
| 26.09.06 | 08:25 | NO 2 NO 3 DISCHARGING START |
| 26.09.06 | 12:15 | NO 3 DISCHARGING STOP(WAITING LORRY) |
| 26.09.06 | 12:40 | NO 3 DISCHARGING START |
| 26.09.06 | 16:25 | NO 2 DISCHARGING STOP(CRANE BREAKDOWN) |
| 26.09.06 | 16:45 | NO 2 DISCHARGING START |
| 26.09.06 | 17:10 | NO 2 NO 3 DISCHARGING STOP(FOOD TIME) |
| 26.09.06 | 19:10 | NO 3 DISCHARGING START |
| 26.09.06 | 19:55 | NO 2 DISCHARGING START |
| 26.09.06 | 21:25 | NO 2 DISCHARGING STOP(CRANE BREAKDOWN) |
| 26.09.06 | 22:30 | NO 2 DISCHARGING START |
| | | |
| 27.09.06 | 01:10 | NO 3 DISCHARGING STOP(CRANE BREAKDOWN) |
| 27.09.06 | 01:40 | NO 3 DISCHARGING START |
| 27.09.06 | 02:30 | NO 2 NO 3 DISCHARGING STOP(FOOD TIME) |
| 27.09.06 | 04:10 | NO 2 NO 3 DISCHARGING START |
| 27.09.06 | 05:20 | NO 2 NO 3 DISCHARGING STOP CHANGE PORT PERSONS |
| 27.09.06 | 08:20 | NO 2 NO 3 DISCHARGING START |
| 27.09.06 | 14:10 | NO 2 DISCHARGING STOP(WAITING LORRY) |
| 27.09.06 | 14:40 | NO 2 DISCHARGING START |
| 27.09.06 | 15:55 | NO 2 DISCHARGING STOP (WAITING LORRY) |
| 27.09.06 | 16:20 | NO 3 DISCHARGING STOP(FOOD TIME) |
| 27.09.06 | 20:20 | NO 2 NO 3 DISCHARGING START |
| | | |
| 28.09.06 | 00:45 | NO 2 DISCHARGING STOP(WAITING LORRY) |
| 28.09.06 | 01:30 | NO 3 DISCHARGING STOP (WAITING LORRY) |
| 28.09.06 | 03:00 | NO 2 NO 3 DISCHARGING START |
| 28.09.06 | 04:40 | NO 2 NO 3 DISCHARGING STOP(FOOD TIME) |
| 28.09.06 | 05:00 | NO 2 NO 3 DISCHARGING STOP |
| 28.09.06 | 06:00 | NO 2 NO 3 DISCHARGING STOP CHANGE PORT PERSON |
| 28.09.06 | 08:25 | NO 2 DISCHARGING START |
| 28.09.06 | 09:30 | NO 3 DISCHARGING START |
| 28.09.06 | 17:10 | NO 2 NO 3 DISCHARGING STOP(FOOD TIME) |
| 28.09.06 | 19:55 | NO 3 DISCHARGIG START |
| 28.09.06 | 21:30 | NO 2 DISCHARGING START |
| 28.09.06 | 22:35 | NO 2 DISCHARGING STOP(WAITING LORRY) |
| 28.09.06 | 23:50 | NO 3 DISCHARGING STOP |
| 28.09.06 | 24:00 | NO 2 DISCHARGING START |

P · 6

| | | |
|---|---|---|
| 29.09.06 | 02:30 | NO 2 DISCHARGING STOP(FOOD TIME) |
| 29.09.06 | 03:35 | NO 2 DISCHARGING START |
| 29.09.06 | 04:16 | NO 2 DISCHARGING STOP |
| 29.09.06 | 04:50 | NO 2 DISCHARGING START |
| 29.09.06 | 06:15 | NO 2 DISCHARGING STOP |
| 29.09.06 | 08:40 | NO 2 DISCHARGING START |
| 29.09.06 | 11:45 | NO 2 DISCHARGING STOP |
| 29.09.06 | 14:00 | NO 2 DISCHARGING START |
| 29.09.06 | 14:35 | NO 1 DISCHARGING START |
| 29.09.06 | 16:10 | NO 1 NO 2 DISCHARGING STOP(FOOD TIME) |

30.09.06    24:00    DRAFT SURVEY START

30.09.06    09:15    DRAFT SURVEY FINISH

30.09.06    06:00    DISCHARGE COMPLATE FINISH



p. 7

# EXHIBIT 13

# GST COMMODITIES TRADING CO.

Langham House, #401, 302 Regent Street, London W1B 3HH, United Kingdom

**To:**  **Active Marine**                    **via fax**
**Fax:**  00902166589706
**Date:**  02.08.2006
**Re:**  m/v Merve A

Dear Sirs,

Please be informed that we permit release of goods against shipping letter of guarantee issued by the issuing bank in case of delay of the original documents.

GST Commodities Trading Co.

البنك العربي الأفريقي الدولي
فرع مصر الجديدة

# EXHIBIT 14

**Subject:** M/V Merve
**From:** alphaegypt <alphaegypt@link.net>
**Date:** Wed, 09 Aug 2006 15:56:43 +0300
**To:** Petr Terebov <terebov@bluewin.ch>, 'Denis Kitaev' <kitaev@bluewin.ch>, alphaegypt
<alphaegypt@link.net>

```
Dear All

Attached you will find Beshay's bank guarantee

Best regards
```

|  | **Content-Type:** | application/pdf |
|---|---|---|
| **mv merve.pdf** | **Content-Encoding:** base64 |  |

أصحاب أو وكلاء / أو مستأجرى / أو قبطان الباخرة    "M/V" Merve A" مشربه رقم

ى وصلت بتاريخ ـــــ

نظراً لقبولكم تسليم البضائع المذكورة لنا ـ التى نقرر بأننا أصحابها الشرعيون ـ لنا أو لأمرنا بدون تقديم بوليصة أو بوالص الشحن خاصة بها لعدم وصولها الينا حتى الآن ـ لذا نتعهد لكم بموجب هذا بتقديم التعويض الكامل لكم عن جميع ما يمكن أن يترتب بالنسبة لكم ن نفقات ومسئوليات مهما كان نوعها مباشرة أو غير مباشرة لخصوص أو بسبب هذا التسليم المذكور وكذا قيمة كل الخسائر والمصاريف الأخرى التى تطالبون بها أو قمتم بدفعها بما فى ذلك أتعاب المحامين وكل ما يطلب منكم من مصاريف أخرى عن القضايا والاجراءات القانونية مقامة ضدكم بسبب هذا التسليم :

وكذا نقبل ونتعهد بأن ندفع لكم فوراً ما يطالبونه من أجر الشحن أو عواريات عمومية ومصاريف أو رسوم أو أى مصاريف أخرى عن بضائع المذكورة حيث نقبل لبقاء جميع حقوقكم على البضائع الخاصة بهذا التسليم وكذلك نتعهد بأن نحول فى الحال بمجرد طلبكم الى حاملى بوليصة للشحن الأصلية فى الدولة التى تحددونها وبالعملة الحرة أى مبلغ تطالبون به مهما كان نوعه وقيمته .

وكذلك نقبل ونتعهد حين استلامنا بوليصة الشحن ان نقدمها لكم مرقعاً عليها ومحوله منا .

| الوزن | محتويات الطرود | عدد | ماركه | رقم بوليصة الشحن | ميناء الشحن |
|---|---|---|---|---|---|
| 9,274.800 M Tons | فردة حديد | | | 1, 2, 3 | "Novorossisk Russia |
| | | | | 4C# HEL 610106 | |

التاريخ : ٢٠٠٦/٨/١٢    الاسم : الشركة المصرية الامريكية لرفع الصلب

أمضاء الشاحنين أو المستلمين :    التوقيع :

خطاب ضمان ( مصر فى ) صادر من بنك

نظراً لقيامكم بتسليم البضائع الموضحة وجه هذا للسادة

أولاً : قائنا بموجب هذا نقبل أن نكون ضامنين متضامنين فى كل ما ورد فى التعهد المذكور اعلاه ، وأن ندفع لكم فوراً أو بمجرد طلبكم انسانخ المستحقة والمرتبطة مباشرة أو غير مباشرة بهذا التسليم .

وكذلك نقبل ونتعهد بأن نحول فى الحال بمجرد طلبكم الى حاملى بوليصة الشحن الأصلية فى الدولة التى تحددونها أو بالعملة الحرة مبالغ تطالبون بها مهما كان نوعها وقيمتها .

كما نقبل ونتعهد بأن كافة الضمانات والتعويضات والمسئوليات والالتزامات سابقة الذكر لا تكون محدودة أو موصوفة بأية أوصاف أو ملاحظات مهما كان نوعها .

أعتمد مستندى رقم    4C# HEL 610106

خطاب ضمان ملاحى رقم    99/2006

التاريخ :    البنك :

خالص الدمغة ورسم التنمية

# EXHIBIT 15

# EGYPTIAN AMERICAN STEEL ROLLING CO.

6, Farid Semeika St.,
Heliopolis, Cairo
EGYPT

Tel.: (202) 6201595

Fax: (202) 6201592 / 6201593

| | | |
|---|---|---|
| **To** | : GST Commodities Trading Co. | |
| **Fax** | : 00 41 22 791 76 72 | |
| **Cc** | : Alpha Egypt | |
| **Fax** | : 2575081 | |

**Date** : Tuesday, August 08, 2006          **Total number of pages: 1**

**Attn.** : Mr. Peter Terebov

**Attn.** : Mr. Nader Eissa

**Subject:**
**Non compliance of goods shipped in first shipment under Contract no.**
**GB001 (20,000MT) on MV MERVE (9,274 MT)**
**Letter of credit number HEL610/06.**

Dear Sir,
With reference to the above mentioned subject, the said goods arrived at Alexandria port on 6 August 2006, and were inspected by SGS (on board) who confirmed that the goods were not compliant as they were found to contain the following:

- Non compliant dimensions of steel scrap
- Slag
- Impurities.
- Compressed bales.
- Rubber

The above stated Contract as well as the letter of credit terms does not allow such deviations. As a result we ask you strongly to immediately come to Egypt in order to inspect the goods, and find a solution.

We hereby inform you that we will not accept any further shipments under this Contract/ letter of credit until the said problem is resolved, and our representatives are permitted to attend loading and draft surveys of the remaining quantity.

We ask you kindly to address this matter with urgency and reply by return confirming your arrival date.

Best Regards

Eng. Kamal Beshay

**SENDING REPORT**

Aug. 08 2006 04:17PM

YOUR LOGO    : BESHAYSTEEL
YOUR FAX NO. : +2026201593

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|-----|-----------------|------------|------------|------|-------|--------|
| 01 | 0041227917672 | Aug. 08 04:17PM | 00'26 | SND | 01 | OK |

TO TURN OFF REPORT, PRESS 'MENU' #04.
THEN SELECT OFF BY USING '+' OR '-'.

| HP LaserJet 3100 Printer/Fax/Copier/Scanner | SEND CONFIRMATION REPORT for BS 2026201592 Aug-8-06  4:17PM |
| --- | --- |

| Job | Start Time | Usage | Phone Number or ID | Type | Pages | Mode | Status |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 861 | 8/ 8  4:17PM | 0'32" | 202 2575081 | Send.............. | 1/ 1 | 144 | Completed.................................... |

Total    0'32"    Pages Sent: 1    Pages Printed: 0

---

**EGYPTIAN AMERICAN STEEL ROLLING CO.**

Heliopolis, Cairo
EGYPT

To    : GST Commodities Trading Co.
Fax   : 00 41 22 791 76 72
Cc    : Alpha Egypt
Fax   : 2575081

Date  : Tuesday, August 08, 2006          Total number of pages: 1

Attn. : Mr. Peter Terebov

Attn. : Mr. Nader Elssa

Subject:
          Non compliance of goods shipped in first shipment under Contract no.
          GB001 (20,000MT) on MV MERVE (9,274 MT)
          Letter of credit number HEL610/06.

Dear Sir,
With reference to the above mentioned subject, the said goods arrived at Alexandria port
on 6 August 2006, and were inspected by SGS (on board) who confirmed that the goods
were not compliant as they were found to contain the following:

- Non compliant dimensions of steel scrap
- Slag
- Impurities.
- Compressed bales.
- Rubber

The above stated Contract as well as the letter of credit terms does not allow such
deviations. As a result we ask you strongly to immediately come to Egypt in order to
inspect the goods, and find a solution.

We hereby inform you that we will not accept any further shipments under this
Contract/ letter of credit until the said problem is resolved, and our representatives
are permitted to attend loading and draft surveys of the remaining quantity.

We ask you kindly to address this matter with urgency and reply by return confirming
your arrival date.

                                        Best Regards

                                        Eng. Kamal Bashay

# EXHIBIT 16

# GST COMMODITIES TRADING CO.

Langham House, #401, 302 Regent Street, London W1B 3HH, United Kingdom

**To:**  Egyptian American Steel Rolling Co.                          _via fax_
**Fax:**  00202 620 1592
**Date:**  16.08.2006
**Re:**  m/v Merve A

Dear Sirs,

With reference to our several discussions related to the quality of steel scrap shipped on the above mentioned vessel, being not conforming to the signed contract and the quality mentioned in the above mentioned L/C. And after checking it in the port of Alexandria, we agree to make a discount of $ 15/MT on the price of the above mentioned L/C for the total shipped quantity on the board mv Merve A (Bill of Lading #1,2,3; total quantity 9'274,897 mts) and to cancel the rest of the above L/C and contract as a final settlement and solution.

Please immediately instruct your bank to send the swift/telex message to our bank to accept the discrepancies (some documents show the description of goods) after deducting $ 15 per ton.

Best regards,
GST Commodities Trading Co.

**EXHIBIT 17**

31-07-2007  17:17    FROM-PENLAW                        +33 1 44 51 59 71    T-208  P.004/008  F-177
SENT BY: .;                                             UU1-3U-U7  3:5bPM;                  Page 1/3
     17 08 06  15:45            022 7917672;            17-AUG-06 16:01;                   PAGE 1/1
                                                                                          CTP. 1

# GST COMMODITIES TRADING CO.

Langham House, #401, 502 Regent Street, London W1B 3BH, United Kingdom

To:        Egyptian American Steel Rolling Co.
Fax:       00202 620 1592                                      via fax
Date:      16.08.2006
Re:        m/v Merve A

Dear Sirs,

Hereby we inform you that all time lost due to clarification of quality claim will
be on our account.

Best regards,
GST Commodities Trading Co.

2

**Subject:** RE: SWIFT
**Date:** Tue, 22 Aug 2006 10:08:07 +0200
**From:** Petr Terebov <terebov@bluewin.ch>
**To:** 'Alphaegypt' <alphaegypt@link.net>, 'Denis Kitaev' <kitaev@bluewin.ch>

Nader,

We will try to manage swift as you have mentioned but we I don't understand how owner can send such message to agent.

We are liable in front of ship-owner as charterer and we are the only one who can blame Beshay for demurrage. As you know we have already sent fax to you and Beshay confirming that all time lost will be on our account. What else?

Regards,
Petr

**From:** Alphaegypt [mailto:alphaegypt@link.net]
**Sent:** Monday, August 21, 2006 8:56 PM
**To:** Denis Kitaev; Petr Terebov
**Subject:** Re: SWIFT

Dear Denis,

Referring to your attached swift received today,  please note that this is not like what has been agreed.

The following is required:

- **Please instruct your bank to re-write the swift to AAIB saying: "DUE TO NON-CONFORMITY AND HIGH PERCENTAGE OF IMPURITY (SLAG, CONCRETE, DUST) OF THE SHIPPED QUANTITY COMPARED TO THE QUALITY MENTIONED IN THE CONTRACT NO. GB001 AND THIS L/C, BENEFICIARY OFFERS A DISCOUNT OF USD 15,00 P/MT.................CONCIDER REMAINING BALANCE AS NON UTILIZED BY BENEFICIARIES".**
- **To mention in the same swift that:" BENEFICIARY ACCEPT TO HOLD THE AMOUNT OF USD 100.000,- WHICH WILL BE PAID AGAINST  PRESENTATION OF THE FOLLOWING DOCUMENTS:**
                     **A) FINAL COMMERCIAL INVOICE FOR BALANCE OF CARGO VALUE SHOWING THE WEIGHT AS PER THE FINAL DRAFT SURVEY REPORT CONDUCTED AT DISCHARGING PORT. (DIFFERENCE BETWEEN B/L WEIGHT AND FINAL DRAFT SURVEY TO BE DEDUCTED FROM THE HELD AMOUNT OF USD 100.000,-).**
                     **B) COPY OF THE DRAFT SURVEY REPORT FOR SURVEY PERFORMED AT DISCHARGE PORT CONDUCTED AND ISSUED BY INSPECTORATE INTERNATIONAL.**

- **After your bank sends this swift, the owner of MV Merve send a message to the maritime agent in alexandria MATINA SHIPPING AGENCY confirming that he gives him 9 days to resume discharging free from any demurrage for all the time lost till the day they resume discharging, starting from the day they re-start discharging.**

Please try to arrange that your bank sends this swift tomorrow.

FYG, The coordinates of the Egyptian branch of Inspectorate International (UK) are as follows:
**Tel: 00 203 428 13 27**
**Fax: 00 203 427 14 16**
**e-mail:  operations@inspectorateeg.com**
**Attention: Mr. Ahmed Bakry**

Best Regards - Nader Issa

Denis Kitaev wrote:
Dear Mr Nader!

Pls fined attached SWIFT sent to AAIB.

Regards,

Denis Kitaev
Centramet Trading S.A.

tel.   +41 22 791 76 78 fax.   +41 22 791 76 70
mob. +41 79 830 08 84

# EXHIBIT 18

Sent By: NB;

>>> From: "Petr Terehov" <terehov@bluewin.ch>
>>> To: "alphaegypt" <alphaegypt@link.net>
>>> Date: Wed, 12 Jul 2006 15:10:02 +0200
>>> Subject: FW: MERVE A 16-20 JULY 2006
>>>
>>> Dear Nader,
>>>
>>> This is first nomination.
>>>
>>> Please ask Beshay to confirm
>>>
>>>
>>> M/V MERVE A (EX M/S CORNER BROOK)
>>>
>>> TURKISH FLAG, BLT 76, (RBLT 2006),
>>> LOA/LBP/B/D/S.SPD 135.6/127.7/18.5/9.82/15 KNT,
>>> GRT/NRT 7587/2456, DWT 13.500, DWCC 13.200, HO/HA 3/3,
>>> GRAIN FITTED, CO2 FITTED, STEEL PLRD,
>>> GLESS, IMO 7420194, CLASS TURKISH LOYD,
>>> CALL SING: TCOL9, HATCHOVERS PONTOON TYPE,
>>> GR/BL 19098/ 18086 CBM, UNIT WEIGHT 10 TN
>>>
>>> HOLD DIMENSIONS
>>> --------------------------------------------
>>> HOLD: 3 = 32,2 X 10,5 X 17,5/ 7423 CBM
>>> HOLA: 2 = 26,6 X 10,5 X 17,5/ 6313 CBM
>>> HOLD: 1 = 25,2 X 10,5 X 17,5/ 5362 CBM
>>> --------------------------------------------
>>> HATCH: 3 = 27,2 X 13,5 X 3
>>> HATCH: 2 = 25,1 X 13,5 X 3
>>> HATCH: 1 = 20,2 X 13,5 X 3
>>> --------------------------------------------
>>> - LP 1 GSPB NOVOROSSIYSK
>>> - DP 1 GSPB ALEXANDRIA
>>> - LAYCAN 16-20 JULY 2006 (BEST ETA 16.07)
>>> - DISCH RATE 1000 MTS PWWDS
>>> - MIN QTTY - 10000 MTS
>>> - DEM 7500 USD PDPR /FREE DESPATCH

*Dear Sirs,*

*We can accept the above*
*vessel on the provision that*
*demurrage rate is*
*away 7,000 $.*
*Agents at disch port :*
*"Metina Shipping Agency"*

*Best Regards,*
*Bestay Steel*
*12.07.06*

# EXHIBIT 19

27-07-2007   20:10    FROM-PENLAW                    +33 1 44 51 59 71    T-189   P.008/011   F-137

18/09 00  MON 20:40 FAX                                            @001

*NEVER SEEN BEFORE*

*RECEIVED VIA*
*ENGLISH LAWYERS*

(21)

Date: 01/09/2006

## AMENDMENT

**CONTRACT NR** : GB001
**DATE** : 14/06/2006
**QUANTITY** : 20,000 MTONS (+/- 10% AT SELLER'S OPTION)
**UNIT PRICE** : USD/MT 303,00 CIF FO Alexandria / Egypt

**PLEASE AMEND THE FOLLOWING CLAUSES OF THE A/M CONTRACT AS FOLLOWS:**

**CLAUSE 'SHIPMENT'**

THE LATEST SHIPMENT IS TO BE 15TH OF OCTOBER 2006

THE REST OF THE CONTRACT WILL REMAIN UNCHANGED. THIS AMENDMENT IS AN INTEGRAL PART OF THE CONTRACT NR GB001 DTD 14/06/2006.

**SELLER**
------------------------------
GST COMMODITIES TRADING CO

**BUYER**
------------------------------
EGYPTIAN AMERICAN STEEL ROLLING CO.

*Egyptian American Steel Rolling Co.*

*FORGED*