UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

**07 CIV 6379 (RMB)**

CENTRAMET TRADING S.A.,

                              Plaintiff

          -against-

EGYPTIAN AMERICAN STEEL

ROLLING COMPANY,

                              Defendant

---

I, **Charles St Clair Smallwood,** pursuant to 28 U.S.C. Paragraph 1746 hereby declare and say the following under penalty of perjury:

1    I am a former partner of the international law firm, Watson Farley & Williams. I now employed as a senior lawyer and consultant to the successor firm of Watson Farley & Williams, Watson Farley & Williams LLP.

2    I make this declaration in reply to the affidavit of Henry Charles Micklem Page in these proceedings dated 31 August 2007.

3    I refer to the middle paragraph on page 5 of the declaration of Mr Page, being the seventh paragraph under numbered item 4 in his declaration. This paragraph quotes selectively from the Verified Complaint in the New York Proceedings. In particular, Mr Page fails to quote paragraphs 8 and 9 of the Verified Complaint which read as follows:

> *"8. The Sales Contract expressly provided that EASR was required to pay demurrage pursuant to the Voyage Charter.*
>
> *9. The Sales Contract provides for English law and calls for arbitration in London, England."*

The Verified Complaint goes on at paragraph 19 to refer to the claim to be made in the London arbitration (which has subsequently been commenced). As Mr Page observes on the following page of his declaration such a claim in London arbitration could only be made under the Sale Contract.

26138887 v1

4    The Verified Complaint makes it clear to me that a claim is being made under the Sale Contract. Mr Page seeks to interpret the Verified Complaint otherwise when he states as follows:

> "I can only presume that the Verified Complaint is trying to state that in fact there was a direct contract between Centramet and EASROC under the three Bills of Lading, presumably because the shipper in two of the Bills of Lading is named as "JSC "TEEKAY" Maircenter on behalf of "Centramet Trading SA"".

Mr Page's presumption is wrong. For the reasons given above I submit that his presumption is also at odds with the language of the Verified Complaint and in particular of paragraphs 8, 9 and 19.

5    Mr Page goes on at page 6 of his declaration to state:

> "In fact I presumed that the prompt response from Watson Farley & Williams (London) of 27 July 2007 where they clearly set out the basis upon which their clients would bring the claim in London was a result of their own reading of the Verified Complaint of 12 July 2007 which was filed in this Court by Watson Farley & Williams (New York) and realising that the Verified Complaint was wrong as a matter of English law."

This is incorrect. I regarded the response sent by Watson Farley & Williams (London) to Pen Law as consistent with the claim put forward in the Verified Complaint and as providing an explanation, should such be required of the basis for such Verified Complaint.

6    I have considered but do not respond to paragraph 5 of Mr Page's declaration as I understand it to be wholly irrelevant to the decision of this Court which is considering whether there is an Admiralty claim under the law of the United States where I understand that the rules governing the existence of an Admiralty claim are substantially different from those which apply in England and under the Brussels Convention on the arrest of seagoing ships.

7    I will leave the response to paragraph 4 of Mr Page's declaration mainly to Centramet's factual witness, Mr Petr Terebov but offer the following comment on the case of **Fal Oil Co Ltd v Petronas Trading Corporation** to which Mr Page refers. I have considered the report of this case as it appears at 2004 Lloyds Law Report Volume II at page 282. As Mr Page observes:

> *"Under a Sales Contract such as this the demurrage provisions can be classified as either providing an indemnity or providing for an independent liability".*

Mr Page does not express a view on the nature of the demurrage obligation in GST's Contract with EASR. Having considered the report in Fal Oil Co Ltd v Petronas Trading Corporation I believe that the demurrage provision in such Contract gives rise, as a matter of English law to an independent obligation of EASR to GST rather than an indemnity obligation. It is perhaps unfortunate that the demurrage claim was put to EASR by passing on of the Shipowners invoices to Centramet but the nature and substance of the claim against EASR for demurrage was made plain.

8    I refer next to paragraph 9 of Mr Page's declaration. In the first sentence of his paragraph 9 Mr Page states as a conclusion of law that there is no doubt that all claims of GST against EASROC have been fully and finally settled. This conclusion is not a conclusion of law. It is a conclusion on mixed questions of fact and law. I will leave the response on questions of fact for the declaration of Mr Terebov. Unlike Mr Page I do not presume to reach unconditional conclusions on issues of fact and law which are properly a matter for the tribunal in this case the arbitration tribunal established under the Sale Contract in London. Insofar as Mr Page reaches conclusions of law they are clearly based on conclusions about the facts. These appear to be substantially in dispute. Based on the evidence in the declaration of Mr Terebov I believe GST to have had a valid claim for demurrage against EASROC which claim has been validly assigned to Centramet.

9    The Sale Contract contains an arbitration clause which provides that "all disputes arising in connection with the Contract shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce". In accordance with such provision and the Rules of Arbitration of the International Chambers of Commerce (the "ICC"), Centramet submitted a Request for Arbitration (the "Request") on 30 August 2007 to the ICC notifying it of its' intention to commence arbitral proceedings against EASROC in connection with EASROC's failure to meet its obligations under the Sale Contract with regard to the payment of demurrage and port costs. Details of Centramet's claim and its choice of arbitrator were provided in the Request. A copy of the Request was faxed to Mr Page on the same day and appears at Exhibit 1 attached.

10    On 31 August 2007, the ICC confirmed receipt of the Centramet's Request and assigned the reference 15145/VRO to the matter. A copy of such confirmation also appears with Exhibit 1 attached. The matter is now formally pending before the ICC.

26138887 v1

11    On 4 September 2007, the ICC notified EASROC of Centramet's Request. A copy of that notification also appears with Exhibit 1 attached. EASROC has 30 days from 4 September 2007 to nominate its arbitrator and file a formal response to Centramet's Request. As at the date of this statement, Centramet has received no such response.

Signed ........

**Charles St Clair Smallwood**

Dated ........

26138887 v1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

**07 CIV 6379 (RMB)**

CENTRAMET TRADING S.A.,

                                   Plaintiff

           -against-

EGYPTIAN AMERICAN STEEL

ROLLING COMPANY,

                         Defendant

---

**EXHIBIT 1**
**referred to in the**
**Declaration of Charles St Clair**
**Smallwood**

IN AN ARBITRATION PURSUANT TO THE RULES OF THE INTERNATIONAL

CHAMBER OF COMMERCE

BETWEEN :


CENTRAMET TRADING SA
(Switzerland)

**Claimant**


- and -


EGYPTIAN AMERICAN STEEL ROLLING COMPANY
(Egypt)

**Respondent**

---

**REQUEST FOR ARBITRATION**

---

30 August 2007

Olga Baglay
Charles Smallwood
Samantha Tite

Watson, Farley & Williams LLP
15 Appold Street
London
EC2A 2HB

Tel: +44 20 7814 8000
Fax: + 44 20 7814 8210

**Counsel for Claimant**

26128045 v2

1    This Request for Arbitration is submitted pursuant to Article 4 of the Rules of Arbitration of the International Chamber of Commerce (the "**ICC Rules**" and the "**ICC**" respectively).

2    In accordance with Articles 3(1) and 4 of the ICC Rules, this Request for Arbitration is submitted in 4 copies, one for each of the Claimant and Respondent, one for the arbitrator appointed by the Claimant (who may or may not sit as sole arbitrator) and one for the ICC Secretariat.  Further copies of the Request will be provided if the parties are unable to agree on a sole arbitrator.  In addition, a cheque for the Claimant's advance payment of US$2,500 is enclosed.

3    As required by the Contract (as defined below), this Request for Arbitration is submitted in the English language.

A:    **THE PARTIES**

4    The Claimant in this Arbitration is Centramet Trading SA ("**Centramet**").

5    Centramet is a company incorporated under the laws of Switzerland and having its registered office at 220 Route de Ferney, Grand-Saconnex, PO Box 201, 1218, Geneva, Switzerland.

6    Centramet is represented in this matter by Olga Baglay, Charles Smallwood and Samantha Tite of Watson, Farley & Williams LLP of:

     15 Appold Street
     London
     EC2A 2HB
     United Kingdom
     Tel: +44 20 7814 8000
     Fax: +44 20 7814 8210.

7    The Respondent in this Arbitration is Egyptian American Steel Rolling Company ("**EASR**").

8    EASR is a company organised and existing under the laws of Egypt and having its registered office at 6 Farid Simeka Street, Heliopolis, Cairo, Egypt.

9    EASR is represented in this matter by Henry Page of Penlaw of:

     23 rue d'Anjou

26128045 v2

75008 Paris
France
Tel: +33 1 44 51 59 70
Fax: +33 1 44 51 59 71.

**B:**    **BACKGROUND TO THE CLAIM**

10    On 14 June 2006, EASR agreed to purchase approximately 20,000 metric tonnes of steel scrap on a CIF basis for US$303 per metric tonne from GST Commodities Trading Co. ("**GST**") pursuant to a sales contract numbered GB001 (the "**Contract**"). The Contract expressly provided that EASR was required to pay demurrage pursuant to the Charterparty (defined below).

11    Centramet chartered the m.v. "MERVE A" (the "**Vessel**") from its owners, Nautilus Denizcilik San Ve Tic Ltd STI, for a voyage from Novorossiysk, Russia to Alexandria, Egypt. The terms of the charter are recorded in a recap dated 14 July 2006 (the "**Charterparty**"). Notice of the charterparty and the applicable demurrage rate was given to EASR by e-mail on 12 July 2006 (the "**E-mail**") Beshay Steel, acting on behalf of EASR, endorsed on the E-mail their acceptance of a demurrage rate of US$7,000/day and faxed the endorsed e-mail to GST.

12    On or about 20 July 2006, the Vessel arrived at Novorossiysk, Russia to load the steel scrap cargo. 9,274.897 metric tonnes of scrap metal were loaded onto the Vessel pursuant to three CONGENBILL negotiable bills of lading (the "**Bills of Lading**"). The Vessel sailed from Novorossiysk at 16.20 hours local time on 29 July 2006 and arrived in Alexandria, Egypt, safely and without incident, at 03.45 hours local time on 6 August 2006.

13    On arrival in Alexandria, EASR failed to produce the original Bills of Lading. Accordingly, discharge operations were delayed and significant demurrage accrued. The Vessel was sent to anchor, almost fully laden, between 9 and 30 August 2006 whilst the issues of original documentation and the availability of discharge personnel and equipment were resolved. Discharging of the cargo restarted on 31 August but was then subsequently interrupted between 5 and 8 September 2006 and again between 11 and 23 September 2006. The full discharge operation was not completed until 30 September 2006 by which time the Vessel had spent approximately 53 days on demurrage incurring a total demurrage cost of US$338,940 (less 3.75% commission as per the Charterparty).

14   In September 2006, Centramet agreed to pay the Vessel owners an advance payment of US$50,000 on account of demurrage. Centramet paid the advance and on 6 October 2006 received an invoice for the outstanding amount of US$276,299.75 (the "**Invoice**").

15   Centramet sent a copy of the Invoice to GST who then forwarded it to EASR requesting payment. A payment chaser was sent on 6 November 2006 by fax and subsequently by e-mail. In breach of the Contract, EASR have failed to pay the outstanding demurrage.

16   To date, EASR has also refused to pay the sum of US$18,323 in respect of port costs which were incurred due to the excessive period spent at Alexandria and for which EASR is also responsible. The invoice for the port costs was originally presented to Centramet on 2 October 2006 and subsequently forwarded to EASR (the "**Port Costs Invoice**").

17   On 16 March 2007, Centramet paid a further US$295,000 to the Vessel owners in settlement of the Vessel owners claim under the Charterparty against Centramet for unpaid demurrage (US$276,229.75) and interest (US$54,089.45) and costs (US$70,000). Payment was made by Centramet to the Vessel owners' US lawyers (Tisdale & Lennon LLC) and confirmed by the payment receipt (the "**Payment Receipt**").

18   On 28 April 2007, GST assigned its claim for demurrage under the Contract to Centramet pursuant to a written assignment (the "**Assignment**").

19   Copies of the Contract, Charterparty, E-mail, Bills of Lading, Invoice, Port Costs Invoice, Payment Receipt and the Assignment are attached to this Request.

**C:   RELIEF SOUGHT**

20   Centramet, as GST's assignee, seeks an award of all relief available under the Contract and/or applicable law in connection with EASR's failure to meet its obligations with regard to the payment of demurrage and port costs as described above. Centramet has, itself, paid the total sum of US$345,000 (i.e. US$50,000 plus US$295,000) to the Vessel owners on account of the demurrage claim.

21   Centramet now seeks in this Arbitration, in particular, and without prejudice to any further claims or arguments, an award against EASR in the sum of US$344,552.75 excluding interest and costs. This sum is made up of the full amount of accrued demurrage (US$338,940) less commission at 3.75% (i.e. US$12,710.25) together with the unpaid port costs of US$18,323.

26128045 v2

22    Centramet sought to secure this claim by attaching funds owned by EASR in the United States. Accordingly, Centramet commenced proceedings against EASR before the United States District Court for the Southern District of New York in an action bearing docket number 07CIV6379 (the "**New York Action**").    Centramet obtained an Order of Attachment against EASR's assets in New York and attached assets of EASR on 19 and 24 July 2007 to the value of US$466,228.82.

23    Centramet is not, however, fully secured for its claim in the Arbitration by the security which has been obtained in the New York Action.  The amount secured in the New York Action can be broken down as follows:

| | |
|---|---|
| Unpaid demurrage: | US$276,229.75 |
| Port charges: | US$18,323.00 |
| 3 years interest at 8.5%: | US$81,676.26 |
| Arbitration costs: | US$40,000 |
| Attorney's fees: | US$50,000 |
| Total | US$466,228.82 |

Centramet has no security, therefore, in the New York Action (or otherwise) for the US$50,000 advance payment which was made by it in 2006 to the Vessel owners prior to the Settlement Agreement on account of demurrage.

24    In addition to the above sums, Centramet claims interest calculated at such rate, and from such date and in relation to such amounts as the Tribunal may deem appropriate.

25    Centramet also claims the cost of the Arbitration including attorneys fees, expert fees, arbitrator fees, ICC administrative costs, direct costs and all other costs, expenses and fees of any kind whatsoever.

26    Centramet reserves the right to modify its claim and to claim additional, or alternative, heads of claim to those set out above.

**D:    ARBITRATION AGREEMENT**

27    The parties agreement to ICC Arbitration is included in the final clause of the Contract which provides that:

> "*All disputes arising in connection with the present contract shall be finally settled under the Rules of Conciliation and Arbitration of the International*

*Chamber of Commerce by one or more, appointed in accordance with the said Rules. The adjustment of the arbitration court shall be final with no possibility of appeal. This contract shall be governed by and in accordance with the laws of England. The seat of arbitration will be London, England."*

**E:    CLAIMANT'S CHOICE OF ARBITRATOR**

28    The Contract provides that the dispute is to be resolved by one or more arbitrators appointed in accordance with the ICC Rules. The Contract does not, however, specify how the decision as to whether a sole or three arbitrators are to be appointed is to be made and/or within what time frame. Given the relatively small sum of money in dispute, the appointment of a sole arbitrator would seem sensible provided the parties are able to agree to the same.

29    Pursuant to the Contract and Article 4(3)(e) of the ICC Rules, Centramet chooses and nominates Mr Colin Sheppard to act as an arbitrator, possibly the sole arbitrator subject to EASR's approval, in this matter.

30    Mr Sheppard's contact details are as follows:

43 Park Road
Chiswick
London W4 3EY
United Kingdom

Tel: +44 208 994 0800
Fax: +44 208 742 0649
E-mail: jcsheppard@btconnect.com

31    Mr Sheppard is a competent individual to act in this matter. He has confirmed his independence to Centramet. If appropriate, Mr Sheppard would be happy to confirm his independence to the ICC Court and, if necessary, EASR.

32    Centramet is aware of no facts or circumstances which might be of such a nature as to call into question Mr Sheppard's independence in the eyes of the parties.

**F:    APPLICABLE RULES OF LAW**

33    The final clause in the Contract provides that:

26128045 v2

> *"This contract shall be governed by and in accordance with the laws of England. The seat of Arbitration will be London, England."*

34    The parties agreed in the Contract that the substantive law under which Centramet's claims are to be determined is English law and that the seat of arbitration is London, England.

Respectfully submitted,

*O. Baglay*

Olga Baglay


Watson, Farley & Williams LLP

15 Appold Street

London

EC2A 2HB

**Counsel for Claimant**

26128045 v2

IN AN ARBITRATION PURSUANT TO THE RULES OF THE INTERNATIONAL

CHAMBER OF COMMERCE

BETWEEN :

**CENTRAMET TRADING SA**
(Switzerland)

**Claimant**

- and -

**EGYPTIAN AMERICAN STEEL ROLLING COMPANY**
(Egypt)

**Respondent**

---

## ANNEX 1

---

30 August 2007

Olga Baglay
Charles Smallwood
Samantha Tite

Watson, Farley & Williams LLP
15 Appold Street
London
EC2A 2HB

Tel: +44 20 7814 8000
Fax: + 44 20 7814 8210

**Counsel for Claimant**

26128045 v2

CTP.1

15 '06 06 19:55                    œœ 2575001        TO:+20 2 6201593        P.001

14/06/2006

CONTRACT NO : GB001

GST Commodities Trading Co. hereinafter referred to as sellers, agree having sold and
EGYPTIAN AMERICAN STEEL ROLLING CO, hereinafter referred to as Buyers, agree having
bought material mentioned here below subject to following terms and conditions:

QUANTITY : 20'000 MT +/- 10% in seller's option. Partial shipment by gearless ships
allowed.

QUALITY : Steel scrap

SIZE : 1500 mm x 600 mm x 600 mm. Maximum 2% of oversize is allowed. If
the quantity of over size is over 2% - this tonnage (over 2% only) to be
penalized by $10 pmt

THICKNESS : Minimum 4 mm. Maximum 5% of thickness less than 4 mm allowed. If
this quantity of is over 5% - this tonnage (over 5% only) to be penalized by
$10 pmt

PRICE : US $ 303,- per mt. CIFR Alexandria/ Egypt

SHIPMENT : Latest by 15th of August 2006

ORIGIN : Russia

DISCHARGE RATE : Discharge rate will be as follows:
~~████████████ 1000 mtns pwwd 6lxxx etc.~~
~~████████████████████████████████~~
~~████████████████████████████████~~
NOR to be tendered during office hours.
Demurrage to be as per Charter Party covering the respective voyage and
free dispatch respectively. Demurrage rate to be indicated at time of vessel's
nomination.

PAYMENT : 100% of the invoice value for each shipment is payable by irrevocable, sight
Letter of Credit issued by first class bank, against the following documents;
   - 2 Original plus 2 copies of Commercial Invoice
   - 3/3 Original bill of lading issued to the order of issuing bank
   - Draft survey report issued in loading port by Inspectorate.
All claims, if any, to be solved outside of LC.

FINAL WEIGHT : Final weight is to be considered as average between draft survey in loading
port and draft survey in discharging port issued by Inspectorate.

FINAL QUALITY : As per load port quality certificate issued by Inspectorate.

Egyptian American
Steel Rolling Co.

CTP.2

15.06 06 19:55

**ARBITRATION** : All disputes arising in connection with the present contract shall be finally settled under the rules of Conciliation and Arbitration of the International Chamber of Commerce, by one or more, appointed in accordance with said rules. The adjustment of the arbitration court shall be final with no possibility of appeal.
This contract shall be governed by and in accordance with the laws of England. The seat of Arbitration will be London, England.

Buyer

Egyptian American
Steel Rolling Co.

Seller

CST Commodities Trading Co.
London, United Kingdom

18/09 06  MON 20:40 FAX

☒001

Date: 01/09/2006

## AMENDMENT

**CONTRACT NR** : GB001
**DATE** : 14/06/2006
**QUANTITY** : 20.000 MTONS (+/- 10% AT SELLER'S OPTION)
**UNIT PRICE** : USD/MT 303,00 CIF FO Alexandria / Egypt

**PLEASE AMEND THE FOLLOWING CLAUSES OF THE A/M CONTRACT AS FOLLOWS:**

**CLAUSE 'SHIPMENT'**

THE LATEST SHIPMENT IS TO BE 15TH OF OCTOBER 2006

THE REST OF THE CONTRACT WILL REMAIN UNCHANGED. THIS AMENDMENT IS AN INTEGRAL PART OF THE CONTRACT NR GB001 DTD 14/06/2006.

**SELLER**
-------------------------------------------
GST COMMODITIES TRADING CO

**BUYER**
-------------------------------------------
**EGYPTIAN AMERICAN STEEL ROLLING CO.**

~0851378.TXT
===========================================================================
```
Îò:        active marine <activemarine@superonline.com>
Êîìó:      "Rybnikov Roman" <charter@ruir.com>
îàïðàâîî:  14 èþëÿ 2006 ã., 11:51:57
Òàìà:      Mv Merve A Novo/Alex Clean Fixture Recap
Ôàéëû:     Ñîîáùåíèå.html
```
===========================================================================
Fm Active Marine
To  TrogmetTrans
Re  Mv Merve A - Novo/Alex Scrap  Shipment


Dear sirs, please find below clean fixture recap.

Please confirm all subs lifted and cargo ready to  load at Novorosisk.

Please urgently advs loadport and discharging port  agents.

Eta Novo 17.07.2006 morning time.


M/V MERVE A (EX M/S CORNER BROOK)

```
   TURKISH FLAG, BLT 76, (RBLT  2006),
   LOA/LBP/B/D/S.SPD 135,6/127,7/18,5/9,82/15 KNT,
   GRT/NRT  7587/2456, DWT 13.500, DWCC 13.200, HO/HA 3/3,
   GRAIN FITTED, CO2  FITTED, STEEL FLRD,
   GLESS, IMO 7420194, CLASS TURKISH  LOYD,
   CALL SING: TCOL9, HATCHOVERS PONTOON TYPE,
   GR/BL 19098/  18086 CBM, UNIT WEIGHT 10 TN
```

   HOLD  DIMENSIONS
   ------------------------------------------------------------
```
HOLD:  3 = 32,2 X 10,5 X 17,5/ 7423 CBM
HOLA: 2 = 26,6 X 10,5 X 17,5/ 6313  CBM
HOLD: 1 = 25,2 X 10,5 X 17,5/ 5362  CBM
```
   ------------------------------------------------------------
```
HATCH:  3 = 27,2 X 13,5 X 3
HATCH: 2 = 25,1 X 13,5 X 3
HATCH: 1 = 20,2  X 13,5 X  3
```
   ------------------------------------------------------------

FOR:
   - SUB STEM/SHIPPERS/RECEIVERS APPROVAL TO BE LIFTED WITHIN TODAY
   - ACC "CENTRAMET TRADING S.A", SWITZERLAND
   - MIN 11.000 MTS UPTO FCC ST SCRAP  IN BULK CARGO HARMLESS/NON DANGEROUS/
   NON OILY/NOT MOTORBLOKS/NOT  TURNINGS/NOT
   RADIOACTIVE,DISMANTLED PARTS OF ENGINES , NOT TURNINGS,  MAX DIMS 1500
   MM, 10 PER CENT OVERSIZING SCRAP SF 58'
   - LP 1  GSPB NOVOROSSIYSK
   - DP 1  GSPB ALEXANDRIA
   - CHRTRS/SHIPPERS/RECIEVERS CONFIRM SAFE BERTH BENDS ON MAX DRAFT 9,80
METERS
   - LAYCAN 16-19 JULY 2006
   - TIME ACTUALLY USED  BEFORE COMMENCEMENT OF LAYTIME NTC
   - NOR CAN NOT BE ACCEPTED BEF  LAYCAN
   - LOAD RATE 1500 MT PWWDS
   - DISCH RATE 1000 MTS  PWWDS
   - SSHEX EIU FR 17/ MON 08 NTC EIU BE
   - FHEX EIU THU 17 /  SAT 08 NTC. EIU - FOR EGYPT
   - LAYTIME NON REVERSIBLE, START TO COUNT  8AM/2PM BE
   - LAYTIME TO COUNT UNTILL CARGO DOCS ON BOARD FOR  LP
   - LAYTIME TO COUNT UNTILL COMPLETION OF DISCHARGE FOR DP
   - FREIGHT USD 340.000.- LUMPSUM FIOST 1/1
   - SHIPPERS/PORT ARE ALLOWED TO  PRESS THE CARGO BY HEAVY PIECES OF IRON
   OF
MAX 4 TONS FROM  MAX 4 METERS HEIGHT AS FROM THE
SURFACE OF THE CARGO AND AFTER 30 PCT  CARGO IN HOLDS. LOADING OPERATION
                            Page 1

~0851378.TXT

ALWAYS UNDER MASTER'S SUPERVISION. NO ANY
OPERATION WHICH WILL DAMAGE THE VESSEL IS EVER ALLOWED. ANY DAMAGES
OCCURRED IN VESSEL IS TO BE REPAIRED BY STEVEDORES
UNDER CHARTERERS GUARANTEE, COST AND TIME.
- DEM  7000 USD PDPR /FREE DESPATCH BE
- DEMURRAGE IF ANY PABLE W/I 15 BDAYS  FM PRESENTATION MUTUAL AGREED
LAYTIME CALCULATION SUPPORTED BY ALL  RELEVANT DOCS:
T/S, NOR, SOF. FAX COPIES ARE ACCEPTABLE.
- IN  CASE OF DEAD FRT LAYTIME TO COUNT ON BASIS OF TNG FOR WHICH THE  FRT
PAID
- FREIGHT  PAYBLE 100 PCT ON BS/L QTTY LESS TTL  COM TO THE OWNRS
NOMINATED
BACCT AGAINST OWNERS FRT INVOICE  DULY SIGNED
AND STAMPED W/I 3 BDAYS AFTER S/R OF BS/L
BUT IAC  BBB
- ACTIVE MARINE'S COMM TO BE PAYBLE 100 PCT TO THE NOMINATED  BANK ACCT IN
THE SAME TIME WITH FREIGHT PAYMENT.
- BS/L TO BE  MARKED 'FRT PAYABLE AS PER C/P' AND 'CLEAN ON BOARD'
- FRT FULLY DEEMED  AND EARNED VAOCLONL
- CHRTRS AGENT BENDS SUB PFMA D/A.
- NOR  LL BE GIVEN W/W/W/W VIA CABLE/RADIO/VHF/TLX IN OFFICIAL  WORKING
HRS
ON WORKING DAY BENDS, NOTICES ETA LPORT TO BE  TENDERED TO AGENTS 3/2/1
DAYS PRIOR VSL'S ARRVL.
NOTICES ETA  DISCHPORT TO BE TENDERED TO AGENTS ON SAILING FM LOADPORT
FOLLOWED BY  3/2/1 DAYS NOTICES PRIOR
VSL'S ARRVL
- OWNRS TO PROVIDE CHRTS  INFO BY FAX/TLX ABT VSLS POSTNS EVERY WORK DAY
- ANY TAXES/DUES ON  CGO/FRT TO BE FOR CHRRS ACCT
- ANY TAXES/DUES ON VSL/CREW/FLAG TO BE  FOR OWNERS ACCT
- VSL IS FREE FM EXINS
- DRAFT SURVEY FOR CGO  TO BE FOR CHRRS ACCT AT LOAD + DISCH PORT. TIME
FR
DRAFT  SURVEY IF LESS THAN 2 HRS NTC, IF MORE
THAN 2HRS TO COUNT AS   LAYTIME
- QUANTITY OF LOAD/DISCH CGO MUST BE DETERMINED BY DRAFT  SURVEY, O/WISE
OWNRS NOT RESPONSIBLE FOR CLAIMS ARISING  THEREOF
AND ALL POSSIBLE SHORTAGES MUST BE SETTLED DIRECTLY BETWEEN  CHRTRS /
SHIPPERS / RECEIVERS WITHOUT INVOLVING OF VESSEL  /
MASTER / OWENRS / MANAGERS
- VESSEL SHOULD HAVE ON BOARD  HYDROSTATIC TABLES OR CURVES INCLUDING
DATA
ABOUT  DISPLACEMENT, TPC, LCF, MTC, BALLAST
TABLES WITH TRIM AND LIST(HILL)  CORRECTION, DETAILED GENERAL ARRANGEMENT
SHIP-S SCHEME WITH SPECIFYING  FRAME NUMBERS,
SHIP-S PARTICULAR DATA.
- ANY SECOND BERTH/ SHIFTING EXPENSES/TIME TO BE FOR  CHARTERERS ACCT.
- ONCE ON DEMMURAGE ALWAYS ON DEMMURAGE
- TIME FOR  PROCEEDING FM ANCHORAGE TO BERTH/SHIFTING/PILOTAGE NOT  TO
COUNT
AS LTIME
- DEBALLASTING TIME NOT TO COUNT AS  LTIME
- ARB/GA IF ANY TO BE HELD IN LONDON ACCORDING TO ENGLISH  LAW
- OWISE AS PER GCN 76 CP LOGICALLY AMMENDED AS PER MTERMS  AGREED
- COMM 1,25 PCT TROGMETTRANS(CHARTERERS BROKER) + 2,5 ACTIVE  MARINE (OWNERS
EXCLUSIVE BROKER)
 END
Best Regards

Ercan Kibar


-------------------ACTIVE   MARINE--------------------

PH:+90-216-6589702/03/04/05             skype:  ercankibar
FX:+90-216-6589706                       e-mail:
activemarine@superonline.com
MB:+90-535-844 46  00
                        Page 2

~0851378.TXT

activemarine@activemarine.net

=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=

Sent By: bd;                              DATE TIME                              TU:+EE9SB01593          P.001

>>> From: "Petr Terebov" <terebov@bluewin.ch>
>>> To: "alphaegypt" <alphaegypt@link.net>
>>> Date: Wed, 12 Jul 2006 15:10:02 +0200
>>> Subject: FW: MERVE A 16-20 JULY 2006
>>>
>>> Dear Nader,
>>>
>>> This is first nomination.
>>>
>>> Please ask Beshay to confirm
>>>
>>>
>>> M/V MERVE A (EX M/S CORNER BROOK)
>>>
>>> TURKISH FLAG, BLT 76, (RBLT 2006),
>>> LOA/LBP/B/D/S.SPD 135,6/127,7/18,5/9,82/15 KNT,
>>> GRT/NRT 7587/2456, DWT 13.500, DWCC 13.200, HO/HA 3/3,
>>> GRAIN FITTED, CO2 FITTED, STEEL FLRD,
>>> GLESS, IMO 7420194, CLASS TURKISH LOYD,
>>> CALL SING: TCOL9, HATCHOVERS PONTOON TYPE,
>>> GR/BL 19098/ 18086 CBM, UNIT WEIGHT 10 TN
>>>
>>> HOLD DIMENSIONS
>>>
>>> HOLD: 3 = 32,2 X 10,5 X 17,5/ 7423 CBM
>>> HOLA: 2 = 26,6 X 10,5 X 17,5/ 6313 CBM
>>> HOLD: 1 = 25,2 X 10,5 X 17,5/ 5362 CBM
>>>
>>> HATCH: 3 = 27,2 X 13,5 X 3
>>> HATCH: 2 = 25,1 X 13,5 X 3
>>> HATCH: 1 = 20,2 X 13,5 X 3
>>>
>>> - LP 1 GSPB NOVOROSSIYSK
>>> - DP 1 GSPB ALEXANDRIA
>>> - LAYCAN 16-20 JULY 2006 (BEST ETA 16.07)
>>> - DISCH RATE 1000 MTS PWWDS
>>> - MIN QTTY - 10000 MTS
>>> - DEM 7500 USD PDPR /FREE DESPATCH

Dear Sirs,
We can accept the above
vessel on the provision that
demurrage rate is
max 7,000 $.
Agents at disch. port :
" Marina Shipping Agency"

Best Regards.
Beshay Steel
12.07.06

Page 2

CODE NAME: "CONGENBILL". EDITION 1994

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES

B/L No. 1

Reference No.

| | |
|---|---|
| Shipper<br>LLC "EXPOMET"<br>204 KOMAROVA STR., BATAYSK 346881, RUSSIA<br>Contract №756/73317265/15051 dd 04.04.2006г | |
| Consignee<br>TO THE ORDER OF ARAB AFRICAN INTERNATIONAL BANK | |
| Notify address<br>EGYPTIAN AMERICAN STEEL ROLLING CO.<br>6, FARID SEMEIKA STR., HELIOPOLIS<br>CAIRO, EGYPT | |

```
FIRST
ORIGINAL
```

| Vessel | Port of loading |
|---|---|
| MERVE A | NOVOROSSISK / RUSSIA |

Port of discharge

EL DEKHILA SEAPORT - EGYPT

Shipper's description of goods

STEEL SCRAP

Gross weight

IN BULK  318.230 MT

L/C NO. LC/HEL 610/06

(of which ......................... on deck at Shipper's risk; the Carrier not being responsible for loss or damage howsoever arising)

**CLEAN ON BOARD**

| | |
|---|---|
| Freight payable as per<br>CHARTER-PARTY<br>. . . .<br><br>FREIGHT ADVANCE.<br>Received on account of freight:<br><br>Time used for loading ................ days ................ hours. | SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above.<br>Weight, measure, quality, quantity, condition, contents and value unknown.<br>IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.<br><br>FOR CONDITION OF CARRIAGE SEE OVERLEAF |

| FREIGHT PAYABLE AS PER CHARTER PARTY | Place and date of issue |
|---|---|
| | NOVOROSSISK      29.07.2006 |
| Number of original Bs/L | Signature |
| 3 (THREE) | MASTER OF THE M/V " MERVE A "<br><br>MR. SEMIH UYGUNKAN |

Page 2

CODE NAME: "CONGENBILL". EDITION 1994

**BILL OF LADING**
**TO BE USED WITH CHARTER-PARTIES**

B/L No. 2

Reference No.

Shipper
JSC "TK" «MAIRCENTER» ON BEHALF OF "CENTRAMET TRADING S.A."
Contract № 756/52420817/15013 dd 26.12.2005

Consignee
TO THE ORDER OF ARAB AFRICAN INTERNATIONAL BANK

Notify address
EGYPTIAN AMERICAN STEEL ROLLING CO.
6, FARID SEMEIKA STR., HELIOPOLIS
CAIRO, EGYPT

**FIRST ORIGINAL**

| Vessel | Port of loading |
|---|---|
| MERVE A | NOVOROSSISK / RUSSIA |

Port of discharge

EL DEKHILA SEAPORT - EGYPT

Shipper's description of goods

STEEL SCRAP

Gross weight

IN BULK  680.520 MT

L/C NO. LC/HEL 610/06

(of which                on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

**CLEAN ON BOARD**

Freight payable as per
CHARTER-PARTY
....

FREIGHT ADVANCE.
Received on account of freight:

Time used for loading ................ days ................ hours.

SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above.
Weight, measure, quality, quantity, condition, contents and value unknown.
IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.

FOR CONDITION OF CARRIAGE SEE OVERLEAF

| FREIGHT PAYABLE AS PER CHARTER PARTY | Place and date of issue |
|---|---|
| | NOVOROSSISK          29.07.2006 |
| Number of original Bs/L | Signature |
| 3 (THREE) | MASTER OF THE M/V "MERVE A" |

MR. SEMIH UYGUNKAN

Page 2

CODE NAME: "CONGENBILL". EDITION 1994

| | | B/L No. 3 |
|---|---|---|

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES

Reference No.

Shipper
JSC "TK" «MAIRCENTER» ON BEHALF OF "CENTRAMET TRADING S.A."
Contract № 756/52420817/15012 dd 26.12.2005

Consignee
TO THE ORDER OF ARAB AFRICAN INTERNATIONAL BANK

Notify address
EGYPTIAN AMERICAN STEEL ROLLING CO.
6, FARID SEMEIKA STR., HELIOPOLIS
CAIRO, EGYPT

**FIRST ORIGINAL**

| Vessel | Port of loading |
|---|---|
| MERVE A | NOVOROSSISK / RUSSIA |

Port of discharge
EL DEKHILA SEAPORT - EGYPT

| Shipper's description of goods | Gross weight |
|---|---|
| STEEL SCRAP | IN BULK 8 276.147 MT |

L/C NO. LC/HEL 610/06

**CLEAN ON BOARD**

(of which ............... on deck at Shipper's risk; the Carrier not being responsible for loss or damage howsoever arising)

Freight payable as per
CHARTER-PARTY

FREIGHT ADVANCE.
Received on account of freight:

Time used for loading .................. days .................. hours.

SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above.
Weight, measure, quality, quantity, condition, contents and value unknown.
IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.

FOR CONDITION OF CARRIAGE SEE OVERLEAF

| FREIGHT PAYABLE AS PER CHARTER PARTY | Place and date of issue |
|---|---|
| | NOVOROSSISK       29.07.2006 |
| Number of original Bs/L | Signature |
| 3 (THREE) | MASTER OF THE M/V " MERVE A " |

MR. SEMIH UYGUNKAN



**ASLI DENIZ TAŞIMACILIĞI VE NAKLIYE TICARET LTD. ŞTİ.**

Tarih: .............................

06.10.2006
FM  :  ASLI SHIPPING
TO  :  CENTRAMET TRADING S.A SWITZERLAND
REF :  MV MERVE A
       NOVOROSSISK / ALEXANDRIA  STEEL SCRAP

# DEMMURAGE INVOICE
# MV MERVE A

| | | |
|---|---|---|
| DEMMURAGE (46.42 DAYS X USD 7000) | USD | 325,940.00 |
| LESS  ADVANCE PAYMENT | USD | 50,000.00 |
| LESS COMMISSION %3.75 | USD | 12,710.35 |
| SUM | USD | 276,229.75 |

PLEASE REMIT THE AMOUNT OF USD 276,229.75 - FOLL ACCT.-

KOÇBANK
BRANCH           : FENERYOLU
BRANCH CODE      : 649
ACCT NO          : 404-67843 (USD)
IBAN NO          : TR 490006 0000000030 40467843
SWIFT CODE       : KABATRIS
BENIFICIARY      : NAUTILUS DENIZCILIK SAN ve TIC. LTD.ŞTİ.

ASLI DENIZ TAŞIMACILIĞI
VE NAKLIYE TIC. LTD. ŞTİ.
...................................



**ACTIVE MARINE ISTANBUL**
AKTİF DENİZCİLİK TİC. LTD. ŞTİ.

02.10.2006
FM  : ACTIVE MARINE
TO  : CENTRAMET TRADING S.A SWITZERLAND
REF : MV MERVE A
      NOVOROSSISK / ALEXANDRIA  STEEL SCRAP

## D/A  I N V O I C E
## MV MERVE A

DISBURSMENT ACCOUNT FOR EXTRA STAY AT EL DEKHLIA PORT

BELONG TO MATINA SHIPPING...............................USD  18,323.00.-

SUM.................................................................USD  18,323.00.-

PLEASE REMIT THE AMOUNT OF USD 18,323.00 - FOLL ACCT:-

MISR INTERNATIONAL BANK (MIBANK)
MOHANDESSINE BRANCH
ADDRESS: 54, EL BATAL AHMED ABDEL AZIZ, EL MOHANDESSINE
TELEX  : 20840 - 21841 MIBCA
FAX    : 02/3489796
TEL    : 02/3494424 - 02/3497091
ACCOUNT NO.: 6046949
SWIFT CODE : MIIBEGCXXXX
FAVOUR OF  : MATINA LINE
             CAPT.SAMIR HOUSNY FARID EL WARDANY

Erenköy Şemsettin Günaltay Caddesi Yıldız Apt. No: 206/11 Kadıköy / İstanbul
Tel: +90(216) 360 27 90 / 360 34 45  Fax: +90 (216) 386 17 73
Tlx:0607-29755 actv tr  e-mail:activemarine@superonline.com

Swift Message Detail

Стр. 1 из 1

# Credit ◆ EuropeBank

**Message Header**

Swift Input:

FIN 103 Customer Transfer

FBHLNL2AAXXX

Sender:

CREDIT EUROPE BANK N.V.

Receiver:

PNBPUS3NNYC

WACHOVIA BANK NA, NY

**Message Text**

| | |
|---|---|
| 20 | TRANSACTION REFERENCE NUMBER |
| | 1100FT0708000411 |
| 23B | BANK OPERATION CODE |
| | CRED |
| 32A | VALUE DATE, CURRENCY CODE, AMOUNT |
| | Date (yy/mm/dd): 07/03/21 |
| | Currency: USD |
| | Amount: 295000,0 |
| 50K | ORDERING CUST |
| | CENTRAMET TRADING S.A. |
| | 220,ROUTE DE FERNEY |
| | GRAND SACONNEX,SWITZERLAND |
| 52A | ORDERING BANK |
| | FBHLNL2A |
| 57D | PEOPLE'S BANK |
| | 850 MAIN STREET, BRIDGEPORT |
| | CONNECITCUT 06604 |
| 221172186 | ABA:221172186 |
| 59 | BENEFICIARY CUSTOMER |
| | /0757006297 |
| | TISDALE AND LENNON LLC |
| 70 | DETAILS OF PAYMENT |
| | DEM MERVE A |
| .71A | DETAILS OF CHARGES |
| | OUR |

DATED 28 April 2007


(1) GST COMMODITIES TRADING CO.

- and -

(2) CENTRAMET TRADING SA


DEED OF ASSIGNMENT


Watson Farley & Williams
15 Appold Street
LONDON EC2A 2HB

Ref.: BAGQ1/SMAC1/20972.50001

**THIS ASSIGNMENT** is made the 28 day of April 2007

**B E T W E E N :-**

(1)    GST COMMODITIES TRADING CO, whose registered office is at Langham House

Suite 401, 302 Regent Street, London W1B 3HH (the "Assignor"), and

(2)    CENTRAMET TRADING SA, whose registered office is at 220, route de Ferney,

Grand-Saconnex, P.O.Box # 201, 1218 Geneva, Switzerland (the "Assignee")

**W H E R E A S :-**

(1)    The Assignee entered into a charterparty with Nautilis Denizcilik San.ve TIC,LTD.STI (the

"Owner") dated 14 July 2006 for the hire of the vessel m.v. "Merve A" (the

"Charterparty").

(2)    The Assignor entered into a contract for the sale of steel scrap on CIF terms (the "Sale

Contract") dated 14 June 2006 to Egyptian American Steel Rolling Company (the

"Buyer"). The cargo sold under the Sale Contract was carried on the "Merve A" pursuant

to the Charterparty. An express clause of the Sale Contract stated that the Buyer was liable

for demurrage as per the Charterparty.

(3)    The Assignor now wishes to assign to the Assignee the benefit of the Assignor's claim for

demurrage under the Sale Contract (the "Demurrage Claim")

**NOW THIS DEED WITNESSETH** as follows:-

1      For one dollar and other good consideration, receipt of which is hereby acknowledged, the

Assignor hereby assigns absolutely to the Assignee all its rights of action against the Buyer

as well as any choses in action relating to or in any way connected with the Demurrage

Claim.

2      This assignment shall be governed by and construed in accordance with the Laws of

England.

3      Nothing in this assignment shall detract from any accrued rights of the Assignee to claim

demurrage directly from the Buyer arising from the Sale Contract.

2

4

IN WITNESS whereof the parties hereto have entered into this Assignment as a deed the day and
year first above written.

SIGNED AND DELIVERED as a Deed                )
for and on behalf of GST Commodities Trading Co     )
in the presence of:

SIGNED AND DELIVERED as a Deed                )
for and on behalf of Centramet Trading SA      )
Limited in the presence of,                             )

Sergey Sein...

3



**International Chamber of Commerce**
*The world business organization*

International Court of Arbitration • Cour internationale d'arbitrage

## TRANSMISSION BY TELECOPIER
## TRANSMISSION PAR TELECOPIE

| | | | |
|---|---|---|---|
| **To/A:** | Olga Baglay<br>Charles Smallwood<br>Samantha Tite<br>WATSON, FARLEY & WILLIAMS LLP | **Fax:** | +44 207 814 8210 |

| | | | |
|---|---|---|---|
| **From/De:** | Elisabeth Passedat | **Fax:**<br>**Phone:** | +33 1 49 53 29 33<br>+33 1 49 53 28 78 |

Secretariat of the ICC International Court of Arbitration
Secrétariat de la Cour internationale d'arbitrage de la CCI

| | | | |
|---|---|---|---|
| **Date:** | 31 August 2007 | **Ref.:** | 15145 |

Number of pages (including cover sheet) :          3
Nombre de pages (y compris celle-ci) :

*(If any pages are missing or illegible, please call the number indicated above).*
*(En cas de pages manquantes ou illisibles, veuillez appeler le numéro indiqué ci-dessus).*

*The information contained in this fax is confidential information only for the use of the individual or entity named above. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination or copying of this communication is prohibited. If you have received this message in error please delete it and notify the sender immediately. Please contact the Secretariat by telephone at +33(0)1 49 53 28 78, fax at +33(0)1 49 53 29 33 and email epf@iccwbo.org. You should not retain the message or disclose its contents to anyone. Thank you.*

*Les informations contenues dans cette télécopie sont confidentielles et sont destinées à l'usage exclusif du(des) destinataire(s). La personne qui reçoit cette télécopie et qui n'est pas le destinataire, l'un de ses employés, ou un mandataire habilité à remettre ce message au destinataire est avisé qu'il est interdit d'en divulguer ou d'en reproduire le contenu. Si vous avez reçu ce message par erreur, veuillez le détruire et en informer l'expéditeur. Veuillez contacter le Secrétariat par téléphone au +33(0)1 49 53 28 78, fax au +33(0)1 49 53 29 33 et email epf@iccwbo.org. Vous ne devez ni conserver le message, ni en révéler le contenu. Merci.*

**ICC International Court of Arbitration • Cour internationale d'arbitrage de la CCI**
38 Cours Albert 1er, 75008 Paris, France
Telephone +33 1 49 53 28 28   Faxes +33 1 49 53 29 29 / +33 1 49 53 29 33
Website www.iccarbitration.org   E-mail arb@iccwbo.org

31/08 2007 15:57 FAX  33 1 49 53 29 33     ICC ARBITRATION                     002/003



**International Chamber of Commerce**

*The world business organization*

## International Court of Arbitration • Cour internationale d'arbitrage

Olga Baglay
Charles Smallwood
Samantha Tite
WATSON, FARLEY & WILLIAMS LLP
15 Appold Street
London EC2A 2HB
United Kingdom

*By fax +44 20 7814 8210*
*and mail*

Case N°: 15145/VRO                          31 August 2007
JNK/EP

Dear Madams, Dear Sir,

We wish to acknowledge receipt of four copies of your Request for Arbitration dated
30 August 2007 and its exhibits submitted by you in the dispute between:

**CENTRAMET TRADING SA**                    (Switzerland)

- and -

**EGYPTIAN AMERICAN STEEL ROLLING COMPANY**   (Egypt)

This Request for Arbitration was received by us on 30 August 2007 and has been assigned the
following reference: **15145/VRO**.

The Counsel in the Secretariat of the ICC International Court of Arbitration who is in charge of the
file is:
Ms. Victoria Orlowski                (direct dial number: +33 1 49 53 28 32)

The Assistant Counsel are:
Ms. Michele O'Brien                  (direct dial number: +33 1 49 53 29 53)
Mr. Matthias Kuscher                 (direct dial number: +33 1 49 53 28 61)

The Secretaries are:
Ms. Carmel Jantzen                   (direct dial number: +33 1 49 53 29 82)
Ms. Melinda Liyanage-Paaris          (direct dial number: +33 1 49 53 28 56)

Ms. Orlowski will write to you soon concerning the notification of the Request for Arbitration and
other relevant information.
                                                                        .../...

**ICC International Court of Arbitration · Cour internationale d'arbitrage de la CCI**
38, Cours Albert 1er, 75008 Paris, France
Telephone +33 1 49 53 28 28   Faxes +33 1 49 53 29 29 / +33 1 49 53 29 33
Website www.iccarbitration.org   E-mail arb@iccwbo.org

31/08 2007 15:57 FAX  33 1 49 53 29 33      ICC ARBITRATION                    ☑ 003/003

15145/VRO                                                                 Page 2
_____

Thank you for your payment of the non-refundable advance on administrative expenses of
US$ 2 500.

Sincerely yours,

Jennifer Kirby
Deputy Secretary General
ICC International Court of Arbitration

Encl.:    (By mail only)
          - ICC Rules of Arbitration
          - International Court of Arbitration Brochure



**International Chamber of Commerce**
*The world business organization*

International Court of Arbitration • Cour internationale d'arbitrage

4 September 2007/cj:mo'b

15 145/VRO

CENTRAMET TRADING SA (Switzerland) vs/ EGYPTIAN AMERICAN STEEL ROLLING COMPANY (Egypt)

Counsel in charge of the file: Ms. Victoria Orlowski (dir. tel: 33 1 49 53 28 32 - dir. fax: 33 1 49 53 57 80)
Assistant Counsel responsible for the file: Ms. Michele E. O'Brien (dir. tel: 33 1 49 53 29 53)
Email: ica5@iccwbo.org

EGYPTIAN AMERICAN STEEL ROLLING COMPANY
6 Farid Simeka Street
Heliopolis, Cairo
Egypt                                                                                  *By DHL*

Dear Sirs,

The Secretariat of the ICC International Court of Arbitration (the "Secretariat") hereby notifies you that it has received a Request for Arbitration (the "Request") from:

CENTRAMET TRADING SA
220 Route de Ferney
Grand-Saconnex
PO Box 201
1218 Geneva
Switzerland

represented by:

Ms. Olga Baglay
Mr. Charles Smallwood
Ms. Samantha Tite
WATSON, FARLEY & WILLIAMS LLP
Ref: SMAC1/BAGO1/TITE1/209
15 Appold Street
London EC2A 2HB
United Kingdom

in which you have been named as Respondent.

This Request has been filed under reference **15 145/VRO**. Please state the complete reference in all future correspondence.

We enclose a copy of the Request along with its exhibits, which were received on 31 August 2007.

.../...

ICC International Court of Arbitration • Cour internationale d'arbitrage de la CCI
38, Cours Albert 1er, 75008 Paris, France
Telephone +33 1 49 53 28 28   Faxes +33 1 49 53 29 29 / +33 1 49 53 29 33
Website www.iccarbitration.org   E-mail arb@iccwbo.org

Pursuant to Article 5(1) of the ICC Rules of Arbitration (the "Rules", you are required to submit your Answer to the Request (the "Answer") within <u>30 days</u> from the day following the date of receipt of this letter. Please send the Secretariat <u>3</u> copies of your Answer in the event that you wish this matter to be submitted to a Sole Arbitrator or <u>5</u> copies if you request a three-member Arbitral Tribunal.

In accordance with Article 5(2) of the Rules, Respondent may apply to the Secretariat for an extension of the time for the filing of its Answer, provided the application for such an extension contains Respondent's comments concerning the number of arbitrators and their choice and, where appropriate, the nomination of an arbitrator. In any event, the ICC International Court of Arbitration (the "Court") has the power, pursuant to Article 6(2) of the Rules, to allow the case to proceed in the absence of an Answer on your part.

## Constitution of the Arbitral Tribunal

The arbitration clause to which reference has been made does not specify the number of arbitrators. Claimant has requested that this matter be submitted to a Sole Arbitrator and suggests that Mr. Colin Sheppard act as Sole Arbitrator. If the parties disagree on the number of arbitrators, the Court will determine the number in accordance with Article 8(2) of the Rules.

In the event that the parties agree that this matter shall be submitted to a Sole Arbitrator, please inform the Secretariat as soon as possible, as the parties may jointly nominate a person to act as Sole Arbitrator. If, in such circumstances, the parties fail to nominate jointly a Sole Arbitrator within <u>30 days</u> from the date when the Request has been notified to Respondent, the Sole Arbitrator shall be appointed by the Court. Should the parties require additional time to agree upon a Sole Arbitrator, they may apply to the Secretariat for an extension of the 30-day time period, pursuant to Article 8(3) of the Rules.

Please note that Article 7(1) of the Rules provides that every arbitrator must be and remain independent of the parties involved in the arbitration. The Secretariat will invite the prospective arbitrator to complete a Declaration of Acceptance and Statement of Independence, copies of which will be forwarded to the parties.

## Financial Consequences of a Three-member Arbitral Tribunal

In light of the current amount in dispute, the Secretariat wishes to draw your attention to the financial consequences of having a three-member Arbitral Tribunal, as opposed to a Sole Arbitrator. In short, and as detailed below, having three arbitrators instead of one generally triples the fees to compensate the arbitrators for their work.

If this case were submitted to a Sole Arbitrator, the average fee foreseen to compensate the Sole Arbitrator for his work would be estimated at US$ 16 698. By contrast, if this case were submitted to a three-member Arbitral Tribunal, the average fees foreseen to compensate the three arbitrators for their work would be estimated at a total of US$ 50 094, *i.e.*, three times as much as for a Sole Arbitrator. (The above figures were generated using the Cost Calculator on the Court's website (www.iccarbitration.org). For more information on arbitrators' estimated fees, you are invited to visit the Cost Calculator. You may also wish to consult the Scales of Administrative Expenses and of Arbitrators' Fees in Appendix III of the Rules.)

In addition, the reimbursable expenses (*e.g.*, travel and hotel expenses) incurred by a Sole Arbitrator are generally lower than the reimbursable expenses incurred by a three-member Arbitral Tribunal.

.../...

15 145/VRO                                                                    **Page 3**
-------------------------------------------------------------------------------------

In light of the above, the Secretariat invites the parties to inform us as soon as possible should they agree to submit this matter to a Sole Arbitrator.

### Written communications

The parties are hereby invited to send a copy of all of their written communications directly to the other party for its information.

### Representation by counsel

If you foresee being represented by counsel, please inform the Secretariat of the name and address of such counsel.

### Secretariat of the ICC International Court of Arbitration

For any information about this file, please do not hesitate to contact:

Ms. Victoria Orlowski, Counsel                    (direct dial number: +33 1 49 53 28 32)

Ms. Michele E. O'Brien, Assistant Counsel         (direct dial number: +33 1 49 53 29 53)

Mr. Matthias Kuscher, Assistant Counsel           (direct dial number: +33 1 49 53 28 61)

Ms. Carmel Jantzen, Secretary                     (direct dial number: +33 1 49 53 29 82)

Ms. Melinda Liyanage-Paaris, Secretary            (direct dial number: +33 1 49 53 28 56)

Finally, while maintaining strict neutrality, the Secretariat is at the disposal of the parties with regard to any information they may require concerning the application of the Rules.

Yours faithfully,

Victoria Orlowski
Counsel
Secretariat
ICC International Court of Arbitration

Encl.:  Request for Arbitration with Exhibits
        1998 version of the ICC Rules of Arbitration (see also www.iccarbitration.org)
        International Court of Arbitration Brochure
        Copy of the Secretariat's letter of today to Claimant

c.c.:   Ms. Olga Baglay
        Mr. Charles Smallwood
        Ms. Samantha Tite
        *(by mail and fax without enclosures)*