WATSON, FARLEY & WILLIAMS (NEW YORK) LLP
Counsel for Plaintiff
100 Park Avenue, 31st Floor
New York, NY 10017
Tel: (212) 922-2200
Fax: (212) 922-1512

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CENTRAMET TRADING S.A.,

Plaintiff,

- against -

EGYPTIAN AMERICAN STEEL ROLLING
COMPANY,

Defendant.

07 CIV 6379 (RMB)

**DECLARATION OF
PETR TEREBOV**

Petr Terebov, pursuant to 28 U.S.C. § 1746, hereby declares the following under penalty of perjury:

1.     At the time of the events covered by this Declaration, I was the general manager of Centramet Trading, S.A. ("Centramet"), part of the Moscow-based Mair Group. Centramet is the functional equivalent of the export department of the Mair Group.

2.     Centramet and GST Commodities Trading Co ("GST") negotiate the sale and transportation by water of cargoes, including scrap steel. I often negotiate agreements where I represent GST on the sale of goods and Centramet on the transportation of those goods.

3.     In June, 2006, GST concluded an agreement (the "Agreement") with the Egyptian American Steel Rolling Company ("EASR") for the sale and transportation by water of scrap steel. This is the first contract that GST has entered into with EASR. Throughout the negotiations I dealt with EASR and Beshay Steel interchangeably. Attached as Exhibit 1 is a true and correct copy of the Agreement.

19092033 v2

4.    The Agreement was for the sale and transportation of 20,000 metric tons of steel scrap at $303 per metric ton, plus any applicable demurrage.  The Agreement allowed partial cargoes to be delivered.

5.    The Agreement contains an arbitration clause stating:

All disputes in connection with the present contract shall be finally settled under the rules of Conciliation and Arbitration of the International Chamber of Commerce, by one or more, appointed in accordance with said rules. . . .This contract shall be governed by and in accordance with the laws of England.  The seat of Arbitration will be London, England.

Exhibit No. 1

6.    The Agreement further provides that: that:

Demurrage to be as per Charter Party covering the respective voyage and free dispatch respectively.  Demurrage rate to be indicated at time of vessel's nomination.

Exhibit No. 1

7.    In order to transport the cargo from Russia to Egypt, as required by the Agreement, a number of vessels were nominated to EASR.

8.    The first vessel nominated to EASR was M/V OCEAN BEAUTY.  The vessel was nominated by forwarding via email dated July 12, 2006, at 1303 hours the demurrage and discharge rate details of the proposed fixture.  This email was then returned to me via fax dated July 17, 2006 bearing the endorsement of Beshay Steel, the parent company of EASR.  The fax header appears to read "FROM: ALPHA+EGYPT".  Attached hereto as Exhibit 2 is a true and correct copy of the endorsed M/V OCEAN BEAUTY email and fax.

9.    The fixture for M/V OCEAN BEAUTY was not consummated and another vessel, M/V MERVE A (the "Vessel"), was nominated to EASR via email dated July 12, 2006, at 1510 hours.  This email contained the entire fixture for the Vessel, and indicated a demurrage rate of $7500 per day.  As with the previously nominated vessel, the fixture for the Vessel was endorsed by



2

Beshay Steel and returned to me via fax dated July 12, 2006. The endorsement indicated that the Vessel was acceptable, but that EASR would only agree to a demurrage rate of $7000 per day. The fax header appears to read "FROM: ALPHA+EGYPT". Attached hereto as Exhibit 3 is a true and correct copy of the endorsed Vessel email and fax.

10. I have received from Centramet's legal counsel an email dated July 13, 2006, purporting to forward a fixture for the Vessel noting a demurrage rate of $5000 per day, and bearing a purported endorsement by Beshay Steel agreeing to a demurrage rate of $1500 per day. I have never seen this email before and believe it is a fabrication, as the Vessel was at no time offered to us with a demurrage rate below $7000 per day and the purported email signatory, Denis Kitaev, did not have the authority to negotiate such rates. Attached hereto as Exhibit 4 is a copy of the previously unknown endorsed Vessel email and fax.

11. The Declarations of Eng. Kamal Beshay and Nader Issa contain a number of accusations of forgery. I absolutely deny that I forged any document as alleged by EASR or otherwise. To the best of my knowledge, no forgery or altered document of any kind was made by GST or Centramet. In particular I deny making any "cut and paste" of Beshay's handwritten comments from one message to another as alleged at paragraph 3 of the declaration of Nader Issa.

12. Shortly after receiving EASR's assent to the Vessel's charter terms, Centramet fixed the Vessel to carry the cargo covered by the Agreement with a demurrage rate of $7000 per day. Attached hereto as Exhibit 5 is a true and correct copy of the Vessel's fixture note, including the demurrage rate on page 2.

13. Payment of the contractual price was to be made by way of an irrevocable letter of credit in the amount of $6,060,000 issued by Arab African International Bank on behalf of EASR on June 25, 2006 and amended on July 9, 2006 (the "Letter of Credit").



3                              19092033 v2

14.    The Letter of Credit was drawable against documents including the following:

    a.    two original and two copies of the Commercial Invoice

    b.    three original bills of lading ("Bills of Lading") issued to the order of the Issuing Bank

    c.    draught survey report issued in loading port by inspectorate.

The Letter of Credit was for the cargo only and did not provide for demurrage. Attached hereto as Exhibit 6 is a true and correct copy of the Letter of Credit, with amendment.

15.    As is standard practice, the Bills of Lading covering the shipment contained a description of the goods. Attached hereto as Exhibit 7 are true and correct copies of the Bills of Lading.

16.    On August 3, 2006, Finansbank Holland NV, ("GST's Bank"), notified GST by letter that the letter of credit presentation documents had been refused due to several discrepancies, one of which was the Bills of Lading. Attached hereto as Exhibit 8 is a true and correct copy of the August 3, 2006, letter from GST's Bank.

17.    At this time, it was discovered that Additional Condition 7 of the Letter of Credit, stating "only commercial invoice and copy of the beneficiary's fax to show goods description, unit price, delivery term and value of goods" was being used by EASR to refuse payment under the Agreement and the Letter of Credit.

18.    The requirement that the Bills of Lading bear no description of the goods they covered is not a *bona fide* commercial requirement and effectively functioned as a trap, since the bank would not release payment under the Agreement and EASR refused to correct the situation without extracting significant price concessions.



4

19.    GST attempted to rectify the discrepancies but bills of lading, which function as a document of title, must include a description of the goods they cover.

20.    EASR has submitted the declaration of Kamal Beshay (the "Beshay Declaration"), which asserts that GST had agreed to release the cargo without production of the original Bills of Lading. The Beshay Declaration relies on a letter fax of August 2, 2007 from GST at Exhibit 14. Beshay's declaration on this point is misleading and incorrect. The Agreement itself contains no provision for cargo to be delivered without production of Bills of Lading, but item 7 of the documents to be produced in order to claim payment under the Letter of Credit states:

> "Copy of benef. [beneficial] fax sent to the Shipping Agency to permit (sic) release of goods against Shipping Letter of Guarantee issued by the issuing bank in case of delay of the original documents".

21.    However, the August 2, 2007 letter fax is addressed to the Vessel Owners' Agents, Active Marine and not to EASR. Beshay had no right to receive or use their copy of this document or to rely on it until the Letter of Credit was paid and the Letter of Credit documents including the copy letter to Active Marine and the Bills of Lading were on their way to EASR through the usual banking channels. I never agreed at any time to waive presentation of the Bills of Lading and payment under the Letter of Credit.

22.    It is clear from the context that the letter to Active Marine was intended to facilitate discharge if the Bills of Lading were delayed in transmission through banking channels. The letter did not, as Beshay asserts, give EASR a right to delivery of the cargo at a time when:

a.    EASR had not paid for the cargo;

b.    payment had not been made for the cargo under the Letter of Credit, and



5    19092033 v2

      c.  EASR had no immediate right to the Bills of Lading which were held to GST's order by GST's bank.

I am unable to comment on the nature of the untranslated Arabic-language document the Beshay Declaration appends at his exhibit 14. I do not remember seeing this document before and I have no idea what it says because I do not read or write Arabic.

**Arrival of cargo**

23.    The Vessel sailed from Novorossisk in Russia on July 29, 2006 at 1620 hours local time with a cargo of 9,274,897 metric tons, arriving off Alexandria, Egypt on August 6, 2006 at 0345 hours local time. The voyage was undertaken without incident.

24.    The Vessel began to discharge the cargo at 0430 hours on August 8, 2006 without presentation of the Bills of Lading. On August 8, 2006, GST received a telephone call and letter from Nader Issa alleging that the cargo on the vessel was of poor quality. Attached hereto as Exhibit 9 is a true and correct copy of the August 8, 2006, letter from Nader Issa.

25.    Nader Issa states in his declaration that:

> "We both saw that the cargo contained a large quantity of huge pieces of rock, slag, bales and concrete lumps in excess of a few tons each. Mr Petr admitted that there was a serious defect in the cargo."

I deny admitting this and I deny that there was a serious defect in the cargo. The Beshay declaration also alleges at paragraph 13 on page 4 that the cargo was deficient. However, neither declaration admits that it was later revealed that the claims of poor quality were false. According to EASR's own surveyors, only 4.35% of the cargo was off grade, impure, or slag, which, in my experience, are within the normally accepted commercial tolerance for a cargo described as steel scrap. Attached hereto as Exhibit 10 is a copy of the EASR-commissioned survey.

19092033 v2

26.     On August 14, 2006 GST sent a protest letter to Active Marine requesting them to stop any further discharge of the cargo because EASR was refusing to pay as required by the Agreement. Attached hereto as Exhibit 11 is a true and correct copy of the August 14, 2006, protest letter to Active Marine.

**Negotiations**

27.     The market price of steel scrap went down by $30 to $40 per metric ton at the beginning of August 2006. EASR demanded that the contract price be reduced to $270 per metric ton for the whole contract, but I refused to so modify the Agreement. Instead, I offered a discount of $2 to $4 per metric ton but this was not accepted.

28.     I later tried to negotiate with the ship owner to change the Bills of Lading to remove the description of the goods, but the ship owner refused. I understand that the reason for this refusal was that the Vessel owners' P&I club would not cover bills of lading without a description of the goods.

29.     Over the next few days I attempted to communicate with EASR and spoke to Nader Issa on several occasions but he had nothing further to report from Kamal Beshay, a principal of Beshay Steel, which I understand is the parent company of EASR.

30.     On or about August 28, 2006 Kamal Beshay agreed to a meeting. He said that EASR was having difficulties with sales and so he proposed that we cancel the balance of the contract (as M/V MERVE A's cargo was a partial shipment of the Agreement quantity and further shipments were contemplated) and decrease the contract price by $15 per metric ton. The terms of the agreement we reached with respect to the cargo was as follows:

7

a. EASR would make payment under the Letter of Credit in two tranches. The first payment would cover the agreed price, leaving outstanding $15 per metric ton and less $100,000.

b. EASR would make payment under the amended Letter of Credit and a second payment of $100,000 against presentation of the draught survey report from the discharge port; and

c. EASR would pay the outstanding $15 per ton in cash for the cargo once it had been discharged.

31.    The demurrage issue was discussed at the meeting and EASR did not object to paying it (demurrage had started, and was continuing, to accrue). As EASR also had a contractual obligation to pay demurrage under the Agreement, I did not believe it necessary to make any further formal agreement.

32.    At no time did I agree to waive the demurrage bill or otherwise include this sum in the payment for the cargo. In fact, at the time I negotiated an amended price for the cargo under the Agreement, the amount of the demurrage bill was not even known. It would have been a major commercial risk to allow EASR an unlimited amount of free time to unload MERVE A.

33.    It is obvious that EASR knew that it was incurring demurrage because EASR requested, in the purported message of August 22, 2006, that:

> *"After your bank sends this swift, the owner of MV Merve send a message to the maritime agent in alexandria MATINA SHIPPING AGENCY confirming that he gives him 9 days to resume discharging free from any demurrage for all the time lost till the day they resume discharging, starting from the day they re-start discharging."*

I do not understand this request clearly but it asks for nine days free of demurrage. It is implicit in this request that demurrage would run again after expiry of the requested free time. This is inconsistent with Beshay's argument that all matters arising under the Agreement (including future demurrage) were settled by the alleged message of August 16, 2006 at Beshay exhibit 16.



19092033 v2

34.    The original documentation was sent to Egypt and cargo discharge operations restarted on August 31, at 2100 hours local time. Payment was received under the Letter of Credit as per point 30(a) above. However, EASR failed to produce the discharge port survey, frustrating my attempts to recover the final $100,000 under the Letter of Credit as per point 24(b) above. EASR also failed to pay the $15 MT it had agreed.

35.    The discharge of the cargo was delayed several times as the Vessel was sent to anchor between August 9, 2006 and August 30, 2006 due to the events described above. Subsequent discharge was interrupted again between September 5, 2006 and September 8, 2006 and between September 11, 2006 and September 23, 2006. The Vessel's cargo discharge operation was finally completed one month later on September 30, 2006.

36.    At a meeting on or about September 11, 2006 with the Vessel's agents, Centramet agreed to and made an advance demurrage payment of $50,000. Attached hereto as Exhibit 12 is a true and correct copy of the $50,000 advance demurrage invoice.

37.    On October 6, 2006, Centramet was invoiced for the outstanding amount of $276,299.75. These invoices were forwarded directly to EASR. The invoice notes that the demurrage rate is $7000 per day. Attached hereto as Exhibit 13 is a true and correct copy of the $276,299.75 demurrage invoice showing the entire amount of demurrage incurred for the subject voyage.

38.    I understand that questions have been raised by EASR's Counsel as to the amount of demurrage claimed by Centramet. The Owner's invoice for demurrage at Exhibit 13 records that 48.42 days worth of demurrage accrued. This amount was paid in full by Centramet. The reference to 53 days of demurrage in Centramet's attachment application was a mistake.

9                              19092033 v2

39.     The Charterparty according to the fixture recap at Exhibit 5 is based on the Gencon 1976 Form. A copy of the Gencon 1976 form is attached at Exhibit 19. The Gencon 1976 form provides at Clause 6(c) that laytime for loading and discharging shall commence at 13:00 hours if notice of readiness ("NOR") is given before noon. I attach at Exhibit 20 a copy of the Master's General Statement of Fact at Alexandria which records that NOR was tendered at 03:45 on 7 August 2006. Accordingly, time started to count as of 13:00 hours on 7 August 2006 and continued until 05:00 hours on 30 September 2006 when, according to the Master's General Statement of Fact, discharge was completed. This amounts to 53.66 days in total.

40.     From this amount, one needs to deduct the permitted laytime. The Agreement provides that the discharge rate is "1000mton pwwd fshex eiu". This means that discharge was to be at a rate of 1000 metric tons per weather working day, Fridays, Saturdays and holidays excluded even if used. Based on a total loaded cargo of 9274.896 mt, 9.3 days should be allowed as permitted laytime in conformity with the "pwwd fshex eiu" term. Taking 9.3 days from 13:00 hours on 7 August 2006 on this basis, you reach 21:00 hours on 20 August 2006 (i.e. by excluding 2 Fridays and 2 Saturdays). From 21:00 hours on 20 August 2006 until 05:00 hours on 30 September 2006 amounts to approximately 40.4 days.

41.     I am currently checking the position as to why an additional 8 days demurrage was charged by the Owners in the Owners invoice and paid for by Centramet. It is possible that demurrage may have been incurred at the loadport. If this is the case, I accept that this amount will not be for EASR's account. The fact remains, however, that the majority of Centramet's claim relates to demurrage incurred at the discharge port which EASR is liable to pay in accordance with the Agreement.

10                     19092033 v2

42.     EASR's contention on page 15 of their Memorandum to Vacate that the Court must subtract a further 16 days on account of the "FSHEX EIU" term included in the Sales Contract is incorrect. This term only applies when calculating laytime (i.e. free time). It is well known, and widely accepted, that once on demurrage, always on demurrage. Accordingly, once the 9.3 days of laytime had expired, the vessel was continually on demurrage without exception until discharge was completed on 30 September 2006.

43.     In total, Centramet paid $326,299.75 in demurrage and $18,323 in port costs for the Vessel for the time spent in Alexandria. The port costs were paid to the agents in Alexandria at EASR's request. Attached hereto as Exhibit 14 is a true and correct copy of the $18,323 invoice for port costs related to the extra stay.

44.     In addition to the actual invoices, several emails were sent to EASR requesting payment. Unfortunately, I am unable to produce copies of the emails in question because my laptop computer was stolen from my house on December 16, 2006. Attached hereto as Exhibit 15 is a true and correct copy of the Geneva Police report filed in relation to this incident. I also attach an unofficial translation for ease of reference.

45.     I also sent a fax asking for payment on November 6, 2006. Attached hereto as Exhibit 16 is a true and correct copy of the November 6, 2006 fax.

46.     At the end of December, 2006, Kamal Beshay of EASR came to Geneva, Switzerland, and we had a meeting to attempt to reach a settlement. Mr. Beshay informed me that he wanted to continue doing business with me and would like to conclude a further contract. I told him that I would only do further business with him if EASR paid the demurrage owed in accordance with the Agreement. EASR refused to pay and the meeting ended without resolution.

11                    19092033 v2

47.    In an effort to collect the outstanding demurrage, the Vessel owner threatened arbitration in London under the charter party.

48.    The Vessel owner sought security for its demurrage claim against Centramet by way of a Rule B attachment proceeding filed in the Southern District of New York, bearing docket number 07cv732 and seeking $276,299.75 in outstanding demurrage, plus anticipated interest and costs. The attachment was granted and Centramet's funds were seized. Attached hereto as Exhibit 17 is a true and correct copy of the Rule B Complaint filed by the owner seeking to recover the demurrage at issue in this litigation.

49.    The claim alleged by the Vessel owner was settled by written agreement dated March 16, 2007, with Centramet paying all outstanding demurrage to the Vessel owners. Attached hereto as Exhibit 18 is a true copy of the March 17, 2007, settlement agreement with the Vessel's owners.

Petr Terebov

12                                          19092033 v2

EXHIBIT 1

15 06 06 19:55

CTP.1

                 022 2575861        TO:+20 2 6201593        P.001

CONTRACT NO : GB001

                                                   14/06/2006

GST Commodities Trading Co. hereinafter referred to as sellers, agree having sold and EGYPTIAN AMERICAN STEEL ROLLING CO, hereinafter referred to as Buyers, agree having bought material mentioned here below subject to following terms and conditions:

    **QUANTITY**        : 20'000 MT +/- 10% in seller's option. Partial shipment by gearless ships allowed.

    **QUALITY**          : Steel scrap

    **SIZE**               : 1500 mm x 600 mm x 600 mm. Maximum 2% of oversize is allowed. If the quantity of over size is over 2% - this tonnage (over 2% only) to be penalized by $10 pmt

    **THICKNESS**     : Minimum 4 mm. Maximum 5% of thickness less then 4 mm allowed. If this quantity of is over 5% - this tonnage (over 5% only) to be penalized by $10 pmt .

    **PRICE**            : US $ 303,- per mt. CIFR Alexandria/Egypt

    **SHIPMENT**      : Latest by 15th of August 2006

    **ORIGIN**          : Russia

    **DISCHARGE RATE** : Discharge rate will be as follows:
                       ~~1000 mton pwwd fihex ein.~~
                       NOR to be tendered during office hours.
                       Demurrage to be as per Charter Party covering the respective voyage and free dispatch respectively. Demurrage rate to be indicated at time of vessel's nomination.

    **PAYMENT**      : 100% of the invoice value for each shipment is payable by irrevocable, sight Letter of Credit issued by first class bank, against the following documents;
                       - 2 Original plus 2 copies of Commercial Invoice
                       - 3/3 Original bill of lading issued to the order of issuing bank
                       - Draft survey report issued in loading port by Inspectorate.
                   All claims, if any, to be solved outside of LC.

    **FINAL WEIGHT** : Final weight is to be considered as average between draft survey in loading port and draft survey in discharging port issued by Inspectorate.

    **FINAL QUALITY** : As per load port quality certificate issued by Inspectorate.

                                               Egyptian American
                                               Steel Rolling Co.

15 06 06 19:55

CTP.2

**ARBITRATION**    : All disputes arising in connection with the present contract shall be finally settled under the rules of Conciliation and Arbitration of the International Chamber of Commerce, by one or more, appointed in accordance with said rules. The adjustment of the arbitration court shall be final with no possibility of appeal.
This contract shall be governed by and in accordance with the laws of England. The seat of Arbitration will be London, England.

Buyer

Egyptian American
Steel Rolling Co.

Seller

CST Commodities Trading Co.
London. United Kingdom

Date: 01/09/2006

## AMENDMENT

**CONTRACT NR** : GB001
**DATE** : 14/06/2006
**QUANTITY** : 20.000 MTONS  (+/- 10% AT SELLER'S  OPTION)
**UNIT PRICE** : USD/MT 303,00 CIF FO Alexandria / Egypt

**PLEASE AMEND THE  FOLLOWING CLAUSES OF THE A/M  CONTRACT AS FOLLOWS:**

**CLAUSE 'SHIPMENT'**

THE LATEST SHIPMENT IS TO BE 15TH OF OCTOBER 2006

THE REST OF THE CONTRACT WILL REMAIN UNCHANGED. THIS AMENDMENT IS AN INTEGRAL PART OF THE CONTRACT NR GB001 DTD 14/06/2006.

**SELLER**
-----------------------------------------
GST COMMODITIES TRADING CO

**BUYER**
-----------------------------------------
EGYPTIAN AMERICAN STEEL ROLLING CO.

EXHIBIT 2

Subject: RE: FW: Beshay's vessel confirmation
From: "Petr Terebov" <terebov@bluewin.ch>
Date: Mon, 17 Jul 2006 10:24:17 +0200
To: "'alphaegypt'" <alphaegypt@link.net>

We are missing confirmation of last ship.

Regards,
Petr
-----Original Message-----
From: alphaegypt [mailto:alphaegypt@link.net]
Sent: Wednesday, July 12, 2006 1:03 PM
To: Petr Terebov; alphaegypt
Subject: Re: FW: Beshay's vessel confirmation

Dear Mr. Petr

After our communication with Beshay he accepted:
- 1000 MT per WWD FSHEX EIU
- Demurrage 1500.00 $

Please confirm by return
Best regards

Petr Terebov wrote:

We have contractual 1000 mt!!!
We can not agree with 900 mt.
Same is related to demurrage rate!!!!

Regards,
Petr

-----Original Message-----
From: alphaegypt [mailto:alphaegypt@link.net]
Sent: Wednesday, July 12, 2006 12:19 PM
To: Petr Terebov; alphaegypt
Subject: Beshay's vessel confirmation

Dear Petr

Please find attached Beshay's confirmation for M/V Ocean Beauty

*(handwritten, right side:)*

عناية السيد الأستاذ / جميل شاكر
٧ / ١٢

Dear Sirs,
We confirm the given conditions herewith.
17.07.06
BESHAY STEEL

of 1

EXHIBIT 3

Sent By: B6;                    C028B0FB02;                                     TU:+8996B01593                P.08:
                                BB2 B575001

>>> From: "Petr Terebov" <terebov@bluewin.ch>
>>> To: "alphaegypt" <alphaegypt@link.net>
>>> Date: Wed, 12 Jul 2006 15:10:02 +0200
>>> Subject: FW: MERVE A 16-20 JULY 2006
>>>
>>> Dear Nader,
>>>
>>> This is first nomination.
>>>
>>> Please ask Beshay to confirm
>>>
>>>
>>> M/V MERVE A (EX M/S CORNER BROOK)
>>>
>>> TURKISH FLAG, BLT 76, (RBLT 2006),
>>> LOA/LBP/B/D/S.SPD 135,6/127,7/18,5/9,82/15 KNT,
>>> GRT/NRT 7587/2456, DWT 13.500, DWCC 13.200, HO/HA 3/3,
>>> GRAIN FITTED, CO2 FITTED, STEEL FLRD,
>>> GLESS, IMO 7420194, CLASS TURKISH LOYD,
>>> CALL SING: TCOL9, HATCHOVERS PONTOON TYPE,
>>> GR/BL 19098/ 18086 CBM, UNIT WEIGHT 10 TN
>>>
>>> HOLD DIMENSIONS
>>> --------------------------------------------------
>>> HOLD: 3 = 32,2 X 10,5 X 17,5/ 7423 CBM
>>> HOLA: 2 = 26,6 X 10,5 X 17,5/ 6313 CBM
>>> HOLD: 1 = 25,2 X 10,5 X 17,5/ 5362 CBM
>>> --------------------------------------------------
>>> HATCH: 3 = 27,2 X 13,5 X 3
>>> HATCH: 2 = 25,1 X 13,5 X 3
>>> HATCH: 1 = 20,2 X 13,5 X 3
>>> --------------------------------------------------
>>> - LP 1 GSPB NOVOROSSIYSK
>>> - DP 1 GSPB ALEXANDRIA
>>> - LAYCAN 16-20 JULY 2006 (BEST ETA 16.07)
>>> - DISCH RATE 1000 MTS PWWDS
>>> - MIN QTTY - 10000 MTS
>>> - DEM 7500 USD PDPR /FREE DESPATCH

*Dear Sirs,*
*We can accept the above*
*vessel on the provision that*
*demurrage rate is*
*max 7000 $.*
*Agents at disch. port :*
*" Matina Shipping Agency "*

*Best Regards.*
*Beshay Steel*
*12.07.06*

EXHIBIT 4

AUG.02.2007 13:54
FREEHILLHOGAN
#1514 P.023 /040
Fw: M/v Merve A corrected d. rate
Case 2:07-cv-00379-RMB    Document 12-2    Filed 09/18/2007    Page 10 of 23

**Subject:** Fw: M/v Merve A corrected d. rate
**From:** "Denis Kitaev" <kitaev@bluewin.ch>
**Date:** Thu, 13 Jul 2006 14:38:45 +0200
**To:** <alphaegypt@link.net>

Dear Mr. Nader Issa!

Unfortunately we lost vessel Ocean Beauty. But we have possibility
to fix b/m vessel as a sub of Ocean Beaty.
Kindly ask you to confirm this vessel:

M/V MERVE A (EX M/S CORNER BROOK)

TURKISH FLAG, BLT 76. (RBLT 2006).
LOA/LBP/B/D/S.SPD 135.6/127,7/18,5/9.82/15 KNT,
GRT/NRT 7587/2456, DWT 13.500, DWCC 13.200, HO/HA 3/3.
GRAIN FITTED. CO2 FITTED, STEEL FLRD.
GLESS. IMO 7420194. CLASS TURKISH LOYD,
CALL SING: TCOL9, HATCHOVERS PONTOON TYPE,
GR/BL 19098/ 18086 CBM. UNIT WEIGHT 10 TN

HOLD DIMENSIONS
--------------------------------------
HOLD: 3 = 32.2 X 10,5 X 17,5/ 7423 CBM
HOLA: 2 = 26,6 X 10.5 X 17,5/ 6313 CBM
HOLD: 1 = 25.2 X 10.5 X 17,5/ 5362 CBM
--------------------------------------
HATCH: 3 = 27.2 X 13.5 X 3
HATCH: 2 – 25.1 X 13.5 X 3
HATCH: 1 = 20.2 X 13,5 X 3
--------------------------------------

- LP 1 GSPB NOVOROSSIYSK
- DP 1 GSPB ALEXANDRIA OR ISKENDERUN OR MARMARA OR NEMRUT
- LAYCAN 16-20 JULY 2006 (BEST ETA 17.07)
- DISCH RATE 1000 MTS PWWDS
- MIN QTTY - 10000 MTS
- DEM 5000 USD PDPR /FREE DESPATCH

Regards,

Denis Kitaev
Centramet Trading S.A.

tel.   +41 22 791 76 78
fax.  +41 22 791 76 70
mob. +41 79 830 08 84

*(handwritten Arabic notes)*
غايةالسيده/ابننهبة جميل
الاكتفاء بعرض سعر
ساعد لنفع الموجى
ا ٠٠٠ كرا الحربة المحترم
٠ه سعر النقل بالذهاب ٠
angne

*(handwritten English notes)*
Dear Sirs,
We can accept the above VESSEL ON THE
FOLLOWING PROVISIONS :
- Discharging rate : 750 MT perwwd FSHEXEIU
- Demurrage : $ 1500
- Agents at disch. port :
  Matina Shipping Agency
  T. 00203-4839353
  F. 00203-4806018
  CAPT. SAMIR
Kindly confirm
Best REGARDS / BESHAY STEEL
13.07.06

1 of 1

13/07/2006 03:53 م

EXHIBIT 5

~0851378.TXT
=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=
Îò:        active marine <activemarine@superonline.com>
Êîîî:      "Rybnikov Roman" <charter@ruir.com>
Îàïèñàîî:  14 èþëÿ 2006 ã., 11:51:57
Òåìà:      Mv Merve A Novo/Alex Clean Fixture Recap
ÒàêëÛ:     Ñîîâùîîèà.html
-=--=--=---====--=----=----====---====----=----====----=----====---===--
Fm Active Marine
To TrogmetTrans
Re Mv Merve A - Novo/Alex Scrap  Shipment


Dear sirs, please find below clean fixture recap.

Please confirm all subs lifted and cargo ready to  load at Novorosisk.

Please urgently advs loadport and discharging port  agents.

Eta Novo 17.07.2006 morning time.


M/V MERVE A (EX M/S CORNER BROOK)

  TURKISH FLAG, BLT 76, (RBLT  2006),
  LOA/LBP/B/D/S.SPD 135,6/127,7/18,5/9,82/15 KNT,
  GRT/NRT  7587/2456, DWT 13.500, DWCC 13.200, HO/HA 3/3,
  GRAIN FITTED, CO2  FITTED, STEEL FLRD,
  GLESS, IMO 7420194, CLASS TURKISH  LOYD,
  CALL SING: TCOL9, HATCHOVERS PONTOON TYPE,
  GR/BL 19098/  18086 CBM, UNIT WEIGHT 10 TN


  HOLD  DIMENSIONS
  ---------------------------------------------------------
  HOLD:  3 = 32,2 X 10,5 X 17,5/ 7423 CBM
  HOLA: 2 = 26,6 X 10,5 X 17,5/ 6313  CBM
  HOLD: 1 = 25,2 X 10,5 X 17,5/ 5362  CBM
  ---------------------------------------------------------
  HATCH:  3 = 27,2 X 13,5 X 3
  HATCH: 2 = 25,1 X 13,5 X 3
  HATCH: 1 = 20,2  X 13,5 X  3
  ---------------------------------------------------------

  FOR:
  - SUB STEM/SHIPPERS/RECEIVERS APPROVAL TO BE LIFTED WITHIN TODAY
  - ACC "CENTRAMET TRADING S.A", SWITZERLAND
  - MIN 11.000 MTS UPTO FCC ST SCRAP  IN BULK CARGO HARMLESS/NON DANGEROUS/
  NON OILY/NOT MOTORBLOKS/NOT  TURNINGS/NOT
  RADIOACTIVE,DISMANTLED PARTS OF ENGINES , NOT TURNINGS,  MAX DIMS 1500
  MM, 10 PER CENT OVERSIZING SCRAP SF 58'
  - LP 1  GSPB NOVOROSSIYSK
  - DP 1 GSPB ALEXANDRIA
  - CHRTRS/SHIPPERS/RECIEVERS CONFIRM SAFE BERTH BENDS ON MAX DRAFT 9,80
  METERS
  - LAYCAN 16-19 JULY 2006
  - TIME ACTUALLY USED  BEFORE COMMENCEMENT OF LAYTIME NTC
  - NOR CAN NOT BE ACCEPTED BEF  LAYCAN
  - LOAD RATE 1500 MT PWWDS
  - DISCH RATE 1000 MTS  PWWDS
  - SSHEX EIU FR 17/ MON 08 NTC EIU BE
  - FHEX EIU THU 17 /  SAT 08 NTC EIU BE
  - LAYTIME NON REVERSIBLE, START TO COUNT  8AM/2PM BE
  - LAYTIME TO COUNT UNTILL CARGO DOCS ON BOARD FOR LP
  - LAYTIME TO COUNT UNTILL COMPLETION OF DISCHARGE FOR DP
  - FREIGHT USD 340.000.- LUMPSUM FIOST 1/1
  - SHIPPERS/PORT ARE ALLOWED TO  PRESS THE CARGO BY HEAVY PIECES OF IRON
  OF
MAX 4 TONS FROM  MAX 4 METERS HEIGHT AS FROM THE
SURFACE OF THE CARGO AND AFTER 30 PCT  CARGO IN HOLDS. LOADING OPERATION

~0851378.TXT

ALWAYS UNDER MASTER'S SUPERVISION. NO ANY
OPERATION WHICH WILL DAMAGE THE VESSEL IS EVER ALLOWED. ANY DAMAGES
OCCURRED IN VESSEL IS TO BE REPAIRED BY STEVEDORES
UNDER CHARTERERS GUARANTEE, COST AND TIME.
- DEM  7000 USD PDPR /FREE DESPATCH BE
- DEMURRAGE IF ANY PABLE W/I 15 BDAYS  FM PRESENTATION MUTUAL AGREED
LAYTIME CALCULATION SUPPORTED BY ALL  RELEVANT DOCS:
T/S, NOR, SOF. FAX COPIES ARE ACCEPTABLE.
- IN  CASE OF DEAD FRT LAYTIME TO COUNT ON BASIS OF TNG FOR WHICH THE  FRT
PAID
- FREIGHT  PAYBLE 100 PCT ON BS/L QTTY LESS TTL  COM TO THE OWNRS
NOMINATED
BACCT AGAINST OWNERS FRT INVOICE  DULY SIGNED
AND STAMPED W/I 3 BDAYS AFTER S/R OF BS/L
BUT IAC  BBB
- ACTIVE MARINE'S COMM TO BE PAYBLE 100 PCT TO THE NOMINATED  BANK ACCT IN
THE SAME TIME WITH FREIGHT PAYMENT.
- BS/L TO BE  MARKED 'FRT PAYABLE AS PER C/P' AND 'CLEAN ON BOARD'
- FRT FULLY DEEMED  AND EARNED VAOCLONL
- CHRTRS AGENT BENDS SUB PFMA D/A.
- NOR  LL BE GIVEN W/W/W/W VIA CABLE/RADIO/VHF/TLX IN OFFICIAL  WORKING
HRS
ON WORKING DAY BENDS, NOTICES ETA LPORT TO BE  TENDERED TO AGENTS 3/2/1
DAYS PRIOR VSL'S ARRVL.
NOTICES ETA  DISCHPORT TO BE TENDERED TO AGENTS ON SAILING FM LOADPORT
FOLLOWED BY  3/2/1 DAYS NOTICES PRIOR
VSL'S ARRVL
- OWNRS TO PROVIDE CHRTS  INFO BY FAX/TLX ABT VSLS POSTNS EVERY WORK DAY
- ANY TAXES/DUES ON  CGO/FRT TO BE FOR CHRRS ACCT
- ANY TAXES/DUES ON VSL/CREW/FLAG TO BE  FOR OWNERS ACCT
- VSL IS FREE FM EXINS
- DRAFT SURVEY FOR CGO  TO BE FOR CHRRS ACCT AT LOAD + DISCH PORT. TIME
FR
DRAFT  SURVEY IF LESS THAN 2 HRS NTC, IF MORE
THAN 2HRS TO COUNT AS  LAYTIME
- QUANTITY OF LOAD/DISCH CGO MUST BE DETERMINED BY DRAFT  SURVEY, O/WISE
OWNRS NOT RESPONSIBLE FOR CLAIMS ARISING  THEREOF
AND ALL POSSIBLE SHORTAGES MUST BE SETTLED DIRECTLY BETWEEN  CHRTRS /
SHIPPERS / RECEIVERS WITHOUT INVOLVING OF VESSEL  /
MASTER / OWENRS / MANAGERS
- VESSEL SHOULD HAVE ON BOARD  HYDROSTATIC TABLES OR CURVES INCLUDING
DATA
ABOUT  DISPLACEMENT, TPC, LCF, MTC, BALLAST
TABLES WITH TRIM AND LIST(HILL)  CORRECTION, DETAILED GENERAL ARRANGEMENT
SHIP-S SCHEME WITH SPECIFYING  FRAME NUMBERS,
SHIP-S PARTICULAR DATA.
- ANY SECOND BERTH/ SHIFTING EXPENSES/TIME TO BE FOR  CHARTERERS ACCT.
- ONCE ON DEMMURAGE ALWAYS ON DEMMURAGE
- TIME FOR  PROCEEDING FM ANCHORAGE TO BERTH/SHIFTING/PILOTAGE NOT  TO
COUNT
AS LTIME
- DEBALLASTING TIME NOT TO COUNT AS  LTIME
- ARB/GA IF ANY TO BE HELD IN LONDON ACCORDING TO ENGLISH  LAW
- OWISE AS PER GCN 76 CP LOGICALLY AMMENDED AS PER MTERMS  AGREED
- COMM 1,25 PCT TROGMETTRANS(CHARTERERS BROKER) + 2,5 ACTIVE  MARINE (OWNERS
EXCLUSIVE BROKER)
END
Best Regards

Ercan Kibar


------------------ACTIVE   MARINE------------------

PH:+90-216-6589702/03/04/05              skype:  ercankibar
FX:+90-216-6589706                              e-mail:
activemarine@superonline.com
MB:+90-535-844 46  00
                              Page 2

~0851378.TXT

activemarine@activemarine.net

=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=-=

EXHIBIT 6

25/06/06-17:06:39              AmsPrinterIn-2144-000001                        ②     1

----------------------- Instance Type and Transmission --------------
Original received from SWIFT
Priority            : Normal
Message Output Reference  : 1705 060625FBHLNL2AAXXX5706563327
Correspondent Input Reference    : 1805 060625ARAIEGCXADOC0282365328
----------------------- Message Header ----------------------
Swift OUTPUT  : FIN 700 Issue of a Documentary Credit
Sender      : ARAIEGCXDOC
          ARAB AFRICAN INTERNATIONAL BANK
          CAIRO EG
Receiver    : FBHLNL2AXXX
          FINANSBANK (HOLLAND) N.V.
          AMSTERDAM NL
MUR : TRADE FINANCE SH
----------------------- Message Text ----------------------
 27: Sequence of Total
     1/1
40A: Form of Documentary Credit
     IRREVOCABLE
 20: Documentary Credit Number
     LC/HEL 610/06
31C: Date of Issue
     060625
31D: Date and Place of Expiry
     060905 AT YOUR COUNTERS
 50: Applicant
     EGYPTIAN AMERICAN STEEL ROLLING CO.
     6,FARID SEMEIKA STR.,HELIOPOLIS
     CAIRO, EGYPT.
 59: Beneficiary - Name & Address
     /0019019777
     GST COMMODITIES TRADING CO.
     LANGHAM HOUSE NO.401
     302 REGENT STREET LONDON W1B  3HH
     U.K
32B: Currency Code, Amount
     Currency      : USD (US DOLLAR)
     Amount        :              #6060000,#
39A: Percentage Credit Amt Tolerance
     05/05
41A: Available With...By... - BIC
     FBHLNL2AXXX
     FINANSBANK (HOLLAND) N.V.
     AMSTERDAM  NL
     BY PAYMENT
43P: Partial Shipments
     ALLOWED
43T: Transhipment
     PROHIBITED
44A: On Board/Disp/Taking Charge at/f
     ANY RUSSIAN SEAPORT
44B: For Transportation to...
     ALEXANDRIA OR EL DEKHILA SEAPORT - EGYPT
44C: Latest Date of Shipment
     060815
45A: Descriptn of Goods &/or Services
     QUANTITY:20,000.00 NET METRIC TONS(+5/-5PCT) OF  STEEL SCRAP
     QUALITY : STEEL SCRAP
     SIZE: 1500 MM X 600 MM. MAXIMUM 2PCT. OF OVERSIZE IS ALLOWED
           IF THE QUANTITY OVER SIZE IS OVER 2PCT. THIS TONNAGE
           (OVER 2PCT. ONLY) TO BE PENALIZED BY USD10.00 PMT.
     THICKNESS: MINIMUM 4MM. MAXIMUM 5PCT. OF THICKNESS LESS
           THAN 4MM ALLOWED
           IF THIS QUANTITY OF IS OVER 5PCT. TONNAGE (OVER 5PCT.
           ONLY)TO BE PENALIZED BY USD10 PMT.
     UNIT PRICE: USD303.00/MT
     CIF FO,ALEXANDRIA OR EL DEKHILA SEAPORT
46A: Documents Required
     1- MANUALLY SIGNED COMMERCIAL INVOICE,IN 3 ORIGINALS + 3 COPIES
        SHOWING 100PCT.OF CIF ALEXANDRIA VALUE,SHOWING CONTARCT



NO. DESCRIPTION OF GOODS, UNIT PRICE TOTAL AMOUNT, NET
WEIGHTS OF GOODS SHIPPED.

2- 3/3 ORIGINALS PLUS 3 N.N COPIES OF CLEAN ON BOARD MARINE BILL
OF LADING ISSUED TO THE ORDER OF ARAB AFRICAN
INTERNATIONAL BANK,MARKED NOTIFY BUYERS AND FREIGHT PAYABLE
AS PER CHARTER PARTY

3- INSURANCE CERIFICATE ISSUED BY FIRST CLASS INSURANCE COMPANY
TO THE ORDER OF ARAB AFRICAN INTERNATIONAL BANK,SHOWING CLAIMS
PAYABLE IN CAIRO IRRESPECTIVE OF PERCENTAGE FOR THE FULL CIF
INVOICE VALUE PLUS 10PCT.COVERING ALL RISKS (A) FROM WAREHOUSE
TO APPLICANT'S WAREHOUSE,VALID FOR 60 DAYS AFTER DISCHARGING
GOODS AT THE PORT OF DESTINATION AS PER INSTITUTE MARINE CARGO
CLAUSES (ALL RISKS) (A) INCLUDING WAR, S.R., C.C RISKS. AND
TRANSHIPMENT RISKS IF ANY.

4- CERTIFICATE OF ORIGIN ISSUED BY SELLER AND CERTIFIED BY ANY
CHAMBER OF COMMERCE.

5- CERTIFICATE ISSUED BY SHIPPING AGENT STATING THAT THE AGE OF
CARRYING VESSEL DOES NOT EXCEED 30 YEARS OLD, .OTHERWISE THE
OVERAGE PREMIUM WILL BE THE RESPONSIBILITY OF THE BENEFICIARY.

6- COPY OF BENEF. FAX SENT TO THE APPLICANT DIRECTLY STATING
FULL DETAILS OF SHIPMENT WITHIN FIVE WORKING DAYS AFTER
B/L DATE

7- COPY OF BENEF. FAX SENT TO THE SHIPPING AGENCY TO PRMIT
RELEASE OF GOODS AGAINST SHIPPING LETTER OF GUARANTEE ISSUED
BY THE ISSUING BANK IN CASE OF DELAY OF THE ORIGINAL
DOCUMENTS.

8- BENEF. DECLERATION ACCOMPANIED BY A COURIER RECEIPT COPY
EVEDINCING THAT THEY HAVE SENT COPIES OF ALL REQUIRED
DOCUMENTS DIRECTLY TO THE APPLICANT WITHIN FIVE WORKING
DAYS AFTER B/L DATE.

9- DRAFT SURVEY CERTIFICATE ISSUED BY INSPECTORATE INTERNATIONAL
FOR SURVEY PERFORMED AT LOADING PORTS SHOWING ACTUAL WEIGHT OF
SHIPMENT

10-QUALITY INSPECTION CERIFICATE ISSUED BY INSPECTORATE
INTERNATIONAL FOR SURVEY PERFORMED AT LOADING PORTS

11-CERTIFICATE OF RADIOACTIVITY ISSUED BY INSPECTORATE INTERNAT-
IONAL,CONFIRMING THAT THE STEEL SCRAP SHIPPED HAS A RADIO
ACTIVE LEVEL WITHIN THE PERMISSIBLE ACCEPTABLE INTERNATIONAL
LEVELS.

12-CERTIFICATE OF EXPLOSION SAFETY ISSUED BY INSPECTORATE INTER-
NATIONAL,CONFIRMING THAT THE STEEL SCRAP SHIPPED HAS BEEN
SURVEYED AT LOADING PORTS.

13-BENEFICIARY'S UNDERAKING CONFIRMING THAT THEY WILL SEND
COPY OF THE CHARTER PARTY FOR THE CARRING VESSEL DIRECTLY TO
THE APPLICANT WHICH SHOULD CLEARLY INDICATE THE FOLLOWING:-
A- DISCHARGING OPERATIONS ARE TO BE DONE BY APPLICANT EGYPTIAN
AMRICAN STEEL ROLLING CO. USING THE CRANES OF THE CARRIER
VESSEL UNDER CONDITIONS OF FREE OUT AND IT SHOULD NOT
MENTION BY ANY MEANS C.O.P. (CUSOMS OF PORT).

B- SHIPPING AGNECY IS TO BE ONE OF THE FOLLOWING:-
-MATINA SHIPPING AGENCY    -MCBBATY SHIPPING AGENCY.
-NANMAR SHIPPING AGENCY

C- THE DISCHARGING RATE IS 1000MT PER WEATHER WORKING DAY OF
24 CONSECUTIVE HOURS, FRIDAY AND HOLIDAYS EXCLUDED EVEN IF
USED, (FSHEXEIU),DEMURRAGES AS PER CHARTER PARTY,
DESPATCH HALF DEMURRAGE, AND WILL BE SETTLED DIRECTLY WITH
EASRCO,WITHIN FOUR WORKING DAYS FROM THE DAY OF RECEIVING
THE WRITTEN FAXED CLAIM OF THE APPLICANT FOR THE DESPATCH
IF ANY.

47A: Additional Conditions
1- AFTER NEGOTIATION THE DOCUMENTS ARE TO BE FORWARDED DIRECTLY
TO US IN TWO SETS BY COURIER SERVICES TO OUR BANK ADDRESS:
44 ABDEL KHALEK SARWAT STR.CAIRO EGYPT, UNDER REFERENCE TO
THE NO. OF THIS CREDIT WHICH SHOULD BE QUOTED IN ALL
CORRESPONDENCES AND ON ALL DOCUMENTS.

2- ONE SET OF PHOTOCOPIES OF ALL RELEVANT DOCUMENTS MUST BE
ATTACHED FOR OUR FILES (FREE OF CHARGE)

3- PAYMENT UNDER RESERVE OR AGAINST INDEMNITY NOT ACCEPTABLE.

4- DOCUMENTS DATED PRIOR TO DATE OF ISSUANCE OF L/C NOT
ACCEPTABLE.



```
        5- CHARTER PARTY B/L ACCEPTABLE.
        6- B/L INDICATING THE FOLLOWING CLAUSES IS ACCEPTABLE :
           WET BEFORE SHIPMENT,ATMOSPHERICALLY RUSTY,
        7- ONLY COMMERCIAL INVOICE AND COPY OF BENEF.FAX TO SHOW GOODS
           DESCRIPTION,UNIT PRICE,DELIVERY TERM AND VALUE OF GOODS
        8- DIFFERENT TYPING CHARACTER, SPELLING MISTAKES AND TYPING
           ERRORS WHICH DO NOT AFFECT THE MEANING ARE ACCEPTABLE.
        9- ALL DOCUMENTS TO BE ISSUED IN ENGLISH LANGUAGE.
       10-DISCRIPANCY FEES FOR USD100.00 WILL BE DEDUCTED FROM PROCEEDS
          IN CASE DOCS.ARE PRESENTED WITH DISCRPANCIES OR FOR APPROVAL
          BASIS.
       11-ALL DISCREPANT DOCUMENTS PRESENTED UNDER THIS DOCUMENTARY
          CREDIT WILL BE REFUSED AND HELD AT THE DISPOSAL OF THE
          REMITTING BANK,HOWEVER WE WILL REFER THE DISCREPANCIES TO
          THE APPLICANT AND UPON ACCEPTANCE OF SAME WE WILL DELIVER
          DOCUMENTS WITHOUT SEEKING FOR YOUR APPROVAL.
       12-THIS L/C IS SUBJECT TO THE UNIFORM CUSTOMS AND PRACTICE
          FOR DOCUMENTARY CREDITS (1993 REVISION), INTERNATIONAL
          CHAMBER OF COMMERCE PUBLICATION NO.500.
       13-ARTICLE 18-C OF UCP - ICC PUBLICATION NO.500 IS NOT APPLICABLE
          UNDER THIS L/C.
   71B: Charges
        ALL COMMISSION AND CHARGES OUTSIDE
        EGYPT ARE FOR BENEFICIARY A/C
    49: Confirmation Instructions
        MAY ADD
    78: Instr to Payg/Acptg/Negotg Bank
        UPON RECEIPT OF YOUR AUTHENTICATED SWIFT MSG. EVEDINCING THAT
        YOU HAVE TAKEN UP AND DESPATCHED TO US CREDIT CONFORM DOCS.
        WE HEREBY UNDERTAKE TO REMIT YOU VALUE OF SAME LESS USD100.00
        BEING OUR REIMBURSMENT BANK CHGS.VALUE FIVE BANKING DAYS AFTER
        OUR RECEIPT OF YOUR SAID SWIFT MSG.
------------------------- Message Trailer ------------------------
{MAC:79210572}
{CHK:4D9B1A28833A}
```



```
-------------------- Instance Type and Transmission --------------
Original received from SWIFT
Priority        : Normal
Message Output Reference : 1345 060710FBHLNL2AAXXX5706568531
Correspondent Input Reference     : 1445 060710ARAIEGCXADOC0316369003
-------------------------- Message Header ------------------------
Swift OUTPUT   : FIN 707 Amendment to a Doc Credit
Sender         : ARAIEGCXDOC
          ARAB AFRICAN INTERNATIONAL BANK
          CAIRO EG
Receiver       : FBHLNL2AXXX
          FINANSBANK (HOLLAND) N.V.
          AMSTERDAM NL
MUR : TRADE FINANCE SH
-------------------------- Message Text --------------------------
  20: Sender's Reference
      LC/HEL 610/06 .
  21: Receiver's Reference
      UNKNOWN
 31C: Date of Issue
      060625
  30: Date of Amendment
      060709
 26E: Number of Amendment
      01
  59: Benefic'y (before amndmt)-Nm&Add
      /0019019777
      GST COMMODITIES TRADING CO.
      U.K.
 44A: On Board/Disp/Taking Charge at/f
      ANY RUSSIAN PORT
  79: Narrative
      +UNDER FIELD 46A PLS. AMEND THE FOLLOWING:-
      1-ITEM NO.(3) TO READ 'MARINE INSURANCE
        POLICY / CERTIFICATE COVERING 110 PCT.OF THE
        INVOICE VALUE C-TERM'
      2-ITEM NO. 4 SHOULD READ 'CERTIFICATE OF ORIGIN
        ISSUED BY CHAMBER OF COMMERCE'
      3-ITEMS NOS. 09,10,11, AND 12 DELETE THE WORD
        'INTERNATIONAL'
      4-DELETE ITEMS NOS. 05 AND 13 COMPLETELY.

      OUR COMM. AND CHGS. SUBJECT TO THIS AMENDMENT ARE
      FOR BENEF. A/C ACCORDINGLY IT WILL ONLY BECOME
      OPERATIVE WHEN YOU CREDIT OUR USD A/C HELD WITH
      (IRVTUS3NXXX) FOR USD 65,00 BEING THIS AMENDMENT
      COMM. AND CHGS UNDER ADVICE TO US
      REGARDS.
-------------------------- Message Trailer -----------------------
{MAC:9B7D0CA2}
{CHK:900D0EE1B564}
```

EXHIBIT 7

Page 2

CODE NAME: "CONGENBILL". EDITION 1994

| | |
|---|---|
| Shipper<br>LLC "EXPOMET"<br>204 KOMAROVA STR., BATAYSK 346881, RUSSIA<br>Contract №756/73317265/15051 dd 04.04.2006г | **BILL OF LADING**<br>TO BE USED WITH CHARTER-PARTIES<br><br>B/L No. 1<br><br>Reference No. |

Consignee
**TO THE ORDER OF ARAB AFRICAN INTERNATIONAL BANK**

Notify address
**EGYPTIAN AMERICAN STEEL ROLLING CO.**
**6, FARID SEMEIKA STR., HELIOPOLIS**
**CAIRO, EGYPT**

**FIRST ORIGINAL**

| Vessel | Port of loading |
|---|---|
| **MERVE A** | **NOVOROSSISK / RUSSIA** |

Port of discharge

**EL DEKHILA SEAPORT - EGYPT**

| Shipper's description of goods | Gross weight |
|---|---|
| STEEL SCRAP | **IN BULK  318.230 MT** |

L/C NO. LC/HEL 610/06

**CLEAN ON BOARD**

(of which ............ on deck at Shipper's risk; the Carrier not being responsible for loss or damage howsoever arising)

| | |
|---|---|
| Freight payable as per<br>CHARTER-PARTY<br>....<br><br>FREIGHT ADVANCE.<br>Received on account of freight:<br><br>...............................................<br><br>Time used for loading ............... days ............... hours. | SHIPPED at the Port of Loading in apparent good order and condition on board the Vessel for carriage to the Port of Discharge or so near thereto as she may safely get the goods specified above.<br>Weight, measure, quality, quantity, condition, contents and value unknown.<br>IN WITNESS where of the Master or Agent of the said Vessel has signed the number of Bills of Lading indicated below all of this tenor and date, any one of which being accomplished the others shall be void.<br><br>FOR CONDITION OF CARRIAGE SEE OVERLEAF |

| | Place and date of issue |
|---|---|
| FREIGHT PAYABLE AS PER<br>CHARTER PARTY | NOVOROSSISK        29.07.2006 |
| Number of original Bs/L | Signature |
| **3 (THREE)** | **MASTER OF THE**<br>**M/V " MERVE A "**<br><br><br><br>**MR. SEMIH UYGUNKAN** |

Page 2

CODE NAME: "CONGENBILL". EDITION 1994

| | B/L No. 2 |
|---|---|
| Shipper<br>JSC    "TK"   «MAIRCENTER»   ON BEHALF   OF<br>"CENTRAMET TRADING S.A."<br>Contract № 756/52420817/15013 dd  26.12.2005 | **BILL OF LADING**<br>**TO BE USED WITH CHARTER-PARTIES**<br>Reference No. |

Consignee
**TO    THE    ORDER    OF    ARAB    AFRICAN**
**INTERNATIONAL BANK**

> ## FIRST
> ## ORIGINAL

Notify address
**EGYPTIAN AMERICAN STEEL ROLLING CO.**
**6, FARID SEMEIKA STR., HELIOPOLIS**
**CAIRO, EGYPT**

| Vessel | Port of loading |
|---|---|
| **MERVE A** | **NOVOROSSISK / RUSSIA** |

Port of discharge

**EL DEKHILA SEAPORT - EGYPT**

| Shipper's description of goods | Gross weight |
|---|---|
| **STEEL SCRAP** | **IN BULK  680.520 MT** |

L/C NO. LC/HEL 610/06

(of which ................. on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

**CLEAN ON BOARD**

| | |
|---|---|
| Freight payable as per<br>CHARTER-PARTY<br>....<br><br>FREIGHT ADVANCE.<br>Received on account of freight:<br><br>.........................................................................<br><br>Time used for loading ................... days ................... hours. | SHIPPED  at  the  Port  of  Loading  in  apparent  good  order  and<br>condition on board the Vessel for carriage to the Port of Discharge or so near thereto<br>as she may safely get the goods specified above.<br>Weight, measure, quality, quantity, condition, contents and value unknown.<br>IN WITNESS where of the Master or Agent of the said Vessel has signed the<br>number of Bills of Lading indicated below all of this tenor and date, any one of<br>which being accomplished  the others shall be void.<br><br>FOR CONDITION OF CARRIAGE SEE OVERLEAF |

| | Place and date of issue |
|---|---|
| FREIGHT PAYABLE AS PER<br>CHARTER PARTY | NOVOROSSISK        29.07.2006 |
| Number of original Bs/L | Signature |
| 3 (THREE) | **MASTER OF THE**<br>**M/V " MERVE A "**<br><br><br><br>**MR. SEMIH UYGUNKAN** |

Page 2

CODE NAME: "CONGENBILL". EDITION 1994

| | |
|---|---|
| Shipper<br>JSC  "TK"  «MAIRCENTER»  ON BEHALF  OF<br>"CENTRAMET TRADING S.A."<br>Contract № 756/52420817/15012 dd  26.12.2005 | BILL OF LADING<br>TO BE USED WITH CHARTER-PARTIES<br>              Reference No. |

B/L No. 3

Consignee
TO    THE    ORDER    OF    ARAB    AFRICAN
INTERNATIONAL BANK

**FIRST ORIGINAL**

Notify address
EGYPTIAN AMERICAN STEEL ROLLING CO.
6, FARID SEMEIKA STR., HELIOPOLIS
CAIRO, EGYPT

| Vessel | Port of loading |
|---|---|
| MERVE A | NOVOROSSISK / RUSSIA |

Port of discharge

EL DEKHILA SEAPORT - EGYPT

| Shipper's description of goods | Gross weight |
|---|---|
| STEEL SCRAP | IN BULK  8 276.147 MT |

L/C NO. LC/HEL 610/06

(of which ................ on deck at Shipper's risk; the Carrier not
being responsible for loss or damage howsoever arising)

**CLEAN ON BOARD**

Freight payable as per
CHARTER-PARTY
......

FREIGHT ADVANCE.
Received on account of freight:

................................................................

Time used for loading ................ days ................ hours.

SHIPPED    at    the    Port    of    Loading    in    apparent    good    order    and
condition on board the Vessel for carriage to the Port of Discharge or so near thereto
as she may safely get the goods specified above.
Weight, measure, quality, quantity, condition, contents and value unknown.
IN WITNESS where of the Master or Agent of the said Vessel has signed the
number of Bills of Lading indicated below all of this tenor and date, any one of
which being accomplished the others shall be void.

FOR CONDITION OF CARRIAGE SEE OVERLEAF

| FREIGHT PAYABLE AS PER<br>CHARTER PARTY | Place and date of issue<br>NOVOROSSISK          29.07.2006 |
|---|---|
| Number of original Bs/L<br><br>3 (THREE) | Signature<br><br>MASTER OF THE<br>M/V " MERVE A "<br><br>MR. SEMIH UYGUNKAN |

EXHIBIT 8

# ✳ FINANSBANK (HOLLAND) N.V.

P.O. Box 12036, 1100 AA  AMSTERDAM
Telephone +31.20.3576300  Fax +31.20.3576301 Telex 15484 fbnkh nl
Trade Register, Amsterdam No. 33256675



**FAX**                                                    **URGENT**

| | | |
|---|---|---|
| To Fax No. | : | TEREBOV@BLUEWIN.CH |
| Company | : | GST COMM. TRADING |
| Attn. | : | Ref. Inv. 010806/G-B |
| From | : | Trade Finance Dept/Jaap Kwakman |
| Date | : | 3 August, 2006 |
| Ref. | : | LESU06178C0007 |
| Pages | : | (including this page):1 |
| Subject | : | Approval documents |

> *Message received incomplete?:*
> *Phone (+31).(0)20.35 76 403 or  Fax (+31).(0)20.35 76 408*

Dear Sirs,

We herewith inform you that we refuse your  documents amounting to
USD 2,810,294.70  presented on August 3rd, 2006  and we noticed  the following discrepancies:

❖ Invoice only shows: quality: steel scrap ( does not show it as goodsdescription).
❖ Invoiced 9,274,900 mt, whereasw total of grossweight is only 9,274,897 mt.
❖ All documents show goodsdescription (not in accordance with add.cond no. 7).
❖ Ins. Cert. indicates 9,274,900 mt instead of 9,274,897 mt.
❖ Ins. Cert.  does not indicate: claims payable in Cairo irrespective of percentage.
❖ Ins.Cert. does not cover all risks mentioned in the l/c.
❖ Ins. Cert/ does not indicate: valid for 60 days..........
❖ Ins. Cert. Dated 01.08.2006 (B/L dd 29.07.2006).

Consequently, we request you to authorize us to present the documents under your risk and
responsibility on approval basis to the advising bank.

Upon receipt by us of this duly signed fax message, we shall consider this as your consent thereto.

Meanwhile we are holding the documents at your risk and responsibility at your disposal.


Regards

Finansbank (Holland) N.V.                        Agreed
Corporate Trade Finance Department               Date
Amsterdam                                        Signature


> To improve the quality of our services, in February 2005, we have established a Trade Finance Quality
> Assurance process. For all your comments, suggestions and complaints, please kindly spare a few
> minutes to send your feedback to tfquality@finansbank.nl or fax number +31.20.35.76 343.
> Thank you for your cooperation

This facsimile transmission is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and that may not be made public by law or agreement. If the recipient of this message is not the intended recipient or entity, you are hereby notified that any further dissemination, distribution or copying of this information is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at our expense at the above address via mail or destroy it. Thank you.

EXHIBIT 9

# EGYPTIAN AMERICAN STEEL ROLLING CO.

6, Farid Semeika St.,                              Tel: (202) 6201595
Heliopolis, Cairo
EGYPT                                             Fax: (202) 6201592 / 6201593

To    : GST Commodities Trading Co.
Fax   : 00 41 22 791 76 72
Cc    : Alpha Egypt
Fax   : 2575081

Date  : Tuesday, August 08, 2006          Total number of pages: 1

Attn. : Mr. Peter Terebov

Attn. : Mr. Nader Eissa

Subject:
   **Non compliance of goods shipped in first shipment under Contract no.
   GB001 (20,000MT) on MV MERVE (9,274 MT)
   Letter of credit number HEL610/06.**

Dear Sir,
With reference to the above mentioned subject, the said goods arrived at Alexandria port
on 6 August 2006, and were inspected by SGS (on board) who confirmed that the goods
were not compliant as they were found to contain the following:

- Non compliant dimensions of steel scrap
- Slag
- Impurities.
- Compressed bales.
- Rubber

The above stated Contract as well as the letter of credit terms does not allow such
deviations. As a result we ask you strongly to immediately come to Egypt in order to
inspect the goods, and find a solution.

We hereby inform you that we will not accept any further shipments under this
Contract/ letter of credit until the said problem is resolved, and our representatives
are permitted to attend loading and draft surveys of the remaining quantity.

We ask you kindly to address this matter with urgency and reply by return confirming
your arrival date.

Best Regards

Eng. Kamal Beshay

EXHIBIT 10

Amria Free Zone: (203) 4481742 – 4486978
Cairo Head Office: P.O. Box 159 Orman, Giza
Harrania      : (202) 3842811
Alexandria    : P.O. Box 785
E-mail        : sgs_egypt@sgs.com

Our Ref. NO.  : Mineral, Stl218_06
Date          : 18th October, 2006
Issuance      : Alexandria




**Certificate NO.: F190201/stl0000491**

Page: 1 of 1

## INSPECTION CERTIFICATE

According instruction received from Messrs. " EGYPTIAN AMERICAN STEEL ROLLING CO." to perform
visual inspection for the Consignment designated as per copy of B/L No. 1, 2 & 3 Dated 29.07.2006:

### STEEL SCRAP

Our inspector attending at Alexandria port from 07th August 2006 to 29th september 2006 to
perform visual inspection of steel scrap on board of M/V "MERVE A"

For the following item:
- Impurities and Foreign Materials    ■ Non Ferrous Metals    ■ Oversize

### WE NOW REPORT:

➤ **FOR HEAVY MELTING STEEL SCRAP:**

By checking the visibly accessible part of the cargo on M/V " MERVE A " it was determined
that the cargo consisted of steel scrap with:
**Size up to 1500X500X500 mm max as per ISRI standard including:**
Angles, pipes and channels, rails, parts of steel constructions and steel sheets, springs, cut
cylinders, wheels and wheel's drums, parts of different engines, motors, different bodies, radiators,
cut parts of automobile equipment, chains, ropes, wires and rebars etc.

- **Our Final Result are as Follows:-**

| | | | |
|---|---|---|---|
| 1. | HMS 1 | - approximately | 73.35 Pct. |
| 2. | HMS 2 | - approximately | 23.78 Pct. |
| 3. | Off grade | - approximately | 0.66 Pct. |
| 4. | Impurities | - approximately | 2.22 Pct. |
| 5. | Slag | - approximately | 1.47 Pct. |
| 6. | Over size | - approximately | 0.44 Pct. |

➤ **During discharge of steel scrap from the vessel to trucks we found all trucks clean
and empty from any impurities and foreign materials.**

The certificate reflects the results of inspection at time and place of inspection only.
"This certificate is issued by the Company under its General Conditions for Inspection and Testing Services, printed overleaf. The issuance of this Certificate does not exonerate
buyers or sellers from exercising all their rights and discharging all their liabilities under the Contract of Sale. Stipulations to the contrary are not binding on the Company. The
Company's responsibility under this Certificate is limited to proven negligence and will in no case be more than ten times the amount of the fees or commission. Except by special
arrangement, samples, if drawn, will not be retained by the Company for more than three months."
"The information stated in this certificate is derived from the results of inspection or testing procedures carried out in accordance with the instructions of our Client, and/or our
assessment of such results on the basis of any technical standards, trade custom or practice, or other circumstances which should in our professional opinion be taken into account".
- Our Services Are Carried Out According To SGS General Conditions Of Service

----------------------------------------End of Certificate----------------------------------------



EXHIBIT 11

# CENTRAMET TRADING SA

TO:  Active Marine
FAX: +90-216-6589706

14.08.06

Attn. To whom it may consern

We refer to bills of lading no. 1-3 inclusive, each dated 29 July 2006 covering the carriage of steel scrap on your vessel "MERVE A" from Novorossiisk to El Dekhila, Egypt. The vessel has arrived and we are informed that about 700 mt of cargo has already been discharged. As you know, we have not given you any LOI to discharge in lieu of presentation of the original bills of lading.

The originals of the three bills of lading are held by our bank. Notwithstanding this you appear to have discharged a quantity of the cargo and delivered it to the order of Egyptian American Steel Rolling Co. or a party unknown to us whom they may have advised to you. Since this discharge is unauthorised by us it constitutes mis-delivery of the goods, for which we hold you fully liable.

Kindly confirm that you will desist from any further discharge save only against our written authority, and that you will pay us within 24 hours for the value of the goods discharged, which amounts to US$ 230'346.66

We await to hear from you urgently.

Centramet Trading SA

220, route de Ferney, Grand-Saconnex, P.O. box #201, 1218, Geneva, Switzerland
Tel.: +41 (0)22 791 7676, Fax: +41 (0)22 791 7672

EXHIBIT 12



**ASLI DENİZ TAŞIMACILIĞI VE NAKLİYE TİCARET LTD. STİ.**

Tarih :......../....../200......

14.09.2006
FM  :  ASLI SHIPPING
TO  :  CENTRAMET TRADING S.A SWITZERLAND
REF  :  MV MERVE A
          NOVOROSSISK / ALEXANDRIA  STEEL SCRAP

# DEMMURAGE  INVOICE
# MV MERVE A

ADVANCE PAYMENT (PARTIAL DEMMURAGE )...........USD  50,000.00.-

SUM.........................................................................USD  50,000.00-

PLEASE REMIT THE AMOUNT OF USD  50,000.00 - FOLL ACCT.-

KOCBANK
BRANCH              : FENERYOLU
BRANCH CODE    : 649
ACCT NO            : 404 67643 (USD)
IBAN NO            : TR 4900093 000000000 40467643
SWIFT CODE      : KABATRIS
BENIFICIARY      : NAUTILUS DENIZCILIK SAN. ve TIC. LTD. STI.

ASLI DENİZ TAŞIMACILIĞI
VE NAKLİYE TİC. A.ŞD. STİ.
Maslak Mah. Faisal Bağlar Cad.
No : 39  Bina:0 : TUZLA - IST.
Ulaşımpa V.D. 0900018A744

EXHIBIT 13



**ASLI**
ASLI DENİZ TAŞIMACILIĞI VE NAKLİYE TİCARET LTD. ŞTİ.

Tarih:........ /........ /200.....

06.10.2006
FM   :  ASLI SHIPPING
TO   :  CENTRAMET TRADING S.A SWITZERLAND
REF  :  MV MERVE A
         NOVOROSSISK / ALEXANDRIA  STEEL SCRAP

# DEMMURAGE  I N V O I C E
# MV MERVE A

DEMMURAGE (48.42 DAYS X USD 7000).......................USD   338,940.00-

LESS  ADVANCE PAYMENT ..........................................USD    50,000.00.-

LESS COMMISSION %3,75.............................................USD   12,710.25-

**SUM**.............................................................................USD   276,229.75-

PLEASE REMIT THE AMOUNT OF **USD  276,229.75 -** FOLL ACCT:-

KOCBANK
BRANCH            : FENERYOLU
BRANCH CODE   : 649
ACCT NO          : 404 67643 (USD)
IBAN NO           : TR 4900093 000000000 40467643
SWIFT CODE      : KABATRIS
BENIFICIARY     : NAUTILUS DENIZCILIK SAN.ve TIC. LTD.STI.

ASLI DENİZ TAŞIMACILIĞI
VE NAKLİYE TİC. LTD. ŞTİ.
Mescid/Mah. Fettah başaran Cad.
No : 39 Orhanlı - TUZLA - İST.
Ulaştırma V.D. 0900164744

EXHIBIT 14



## ACTIVE MARINE ISTANBUL
### AKTİF DENİZCİLİK TİC. LTD. ŞTİ.

02.10.2006
FM  : ACTIVE MARINE
TO  : CENTRAMET TRADING S.A SWITZERLAND
REF : MV MERVE A
       NOVOROSSISK / ALEXANDRIA  STEEL SCRAP

# D/A  I N V O I C E
## MV MERVE A

DISBURSMENT ACCOUNT FOR EXTRA STAY AT EL DEKHLIA PORT

BELONG TO MATINA SHIPPING....................................USD  18,323.00.-

**SUM**.....................................................................USD  18,323.00-

PLEASE REMIT THE AMOUNT OF **USD  18,323.00** - FOLL ACCT:-

```
MISR INTERNATIONAL BANK (MIBANK)
MOHANDESSINE BRANCH
ADDRESS: 54, EL BATAL AHMED ABDEL AZIZ, EL MOHANDESSINE
TELEX : 20840 — 21841 MIBCA
FAX    : 02/3489796
TEL    : 02/3494424 — 02/3497091
ACCOUNT NO.: 6046949
SWIFT CODE : MIIBEGCXXXX
FAVOUR OF  : MATINA LINE
             CAPT.SAMIR HOUSNY FARID EL WARDANY
```

Erenköy Şemsettin Günaltay Caddesi Yıldız Apt. No: 206/11 Kadıköy / İstanbul
Tel: +90 (216) 360 27 90 / 360 34 45  Fax: +90 (216) 386 17 73
Tlx:0607-29755 acte tr  e-mail:activemarine@superonline.com

EXHIBIT 15



REPUBLIQUE ET CANTON DE GENEVE
Département des institutions

**CORPS DE POLICE**
PJ
service financier

| | |
|---|---|
| N° *Affaire* | 2006 12 1732 |
| N° *TPAO* | |
| *Inscrit par* | Roduit A0334 |
| *Poste / brigade* | |
| *Enquêteur* | Pagliarulo J9707 |
| *Poste / brigade* | brigade des cambriolages |

# ATTESTATION POUR L'ASSURANCE

*Etabli par*                     Pernet A9804

**En date du 24.01.2007, nos services ont enregistré une plainte contre inconnu déposée par :**

| | |
|---|---|
| *Nom, prénom(s), nom de naissance:* | **Terebov, Petr** |
| *Date de naissance, sexe, qualif.:* | 05.03.1975, masculin |
| *Origine (canton, pays):* | Russie |
| *Profession:* | DIRECTEUR |
| *Assurance:* | Zurich |

## Localisation événement

| | |
|---|---|
| *Type d'événement:* | cambriolage |
| *Date et heure de l'événement:* | du 16.12.2006 16:00:00 au 16.12.2006 18:30:00 |
| *Lieu public/Chez (C/o):* | Appt TEREBOV Olga |
| *Adresse 1:* | chemin du Bocage 1, étage rez, 1213 Onex |
| *Commune, canton, pays :* | Onex, Genève, Suisse |

## Dispositions légales

| | | |
|---|---|---|
| CPS | (code pénal suisse) | vol par effraction |
| CPS | (code pénal suisse) | violation de domicile |
| CPS | (code pénal suisse) | dommages à la propriété (al. 1) |

---

Le / les auteurs n'ont pas été identifiés à ce jour.

Genève, le 26.02.2007

(formule uniquement valable avec le visa de la police)



---

| n/Réf : **Z 347893 / Z 2 // GE 2006 12 1732** |
|---|
| *(à rappeler lors de toute communication)* |
| Inspecteur : *Pagliarulo J9707* |

RÉPUBLIQUE ET CANTON DE GENÈVE

Département des institutions



**CORPS DE POLICE**

POLICE JUDICIAIRE

Brigade des cambriolages

Tél : 022/427.85.51

P L A I N T E   C O N T R E   I N C O N N U
Adressée à M. Le Chef de la Police

Mme **TEREBOV** Olga

**chemin du Bocage 1**
**1213 Onex**

**Je soussigné(e)**

Nom  *TeReBov*                         Nom de naissance

Prénom  *PetR*                         Date de naissance  *05.03.1925*

Origine *(prière d'utiliser les abréviations d'immatriculation des voitures, p. ex. Suisse = CH, France = F)*

Pays : *RU*            *(pour les Suisses)* Canton :            Commune :

Pour les personnes étrangères, veuillez indiquer le type de permis de séjour *(Permis A. B, C, Frontalier, CD, etc.)*
*Permis B*

**dépose plainte contre inconnu, pour :**

☒ Vol par effraction        ☐ Tentative de vol par effraction        ☐ Vol par introduction furtive

Date(s) de la commission du délit :

entre le *(date)* *16.12.06* à *(heure)* *18h*    et le *(date)* *16.12.06* à *(heure)* *19h*

Type de lieu :

☒ Appartement    ☐ Villa    ☐ Bureaux    ☐ Commerce    ☐ Café/Restaurant    ☐Atelier
☐ Pharmacie    ☐ Cabinet médical    ☐ Autre *(préciser le type)* ...............................................

En cas de locaux commerciaux, cabinets médicaux, ateliers ou autres, prière d'indiquer la **raison sociale**

..................................................................................................................................................

**Adresses**
**Adresse où a été commis le délit :**
Rue et N° : *1, chemin du Bocage*                                    Etage : *0*

Numéro postal : *1213*        Ville : *Onex*

**Adresse où doit être adressé le courrier :**
Rue et N° / Case postale : *1, chemin du Bocage*

Numéro postal : *1213*        Ville : *Onex*

Téléphones *(ne pas oublier l'indicatif si hors de Genève)*

Privé : *022-7934050*                Professionnel ou mobile : *079-6933189*

Nom de l'assurance : *Zurich*

**VOIR SUITE AU VERSO**

**Mode opératoire / introduction** (expliquer comment le cambrioleur a pénétré dans les lieux)
(prière de préciser les effractions intérieures (meubles, tiroirs, appareils divers, etc.)

La fenetre de la chambre a couche etait ferme, basculee et legerement entrouverte par le haut. Ils ont du pousser fort en haut, forcant et cassant le mecanisme de la fenetre pour pouvoir plus et entrer. Ils ont ensuit ouvert et vide en partie les armoires et renverse les tiroirs

**Objets volés**
(préciser le lieu où ils se trouvaient, marques, modèles, N° de série, code IMEI (pour les téléphones mobiles), descriptifs des bijoux, etc.) **En cas de manque de place, joindre une liste complémentaire à la plainte.**

Cf liste annexee

**Dégâts**

Mecanisme de la fenetre de la chambre a couche casse.

Signature

Genève, le  16.01.2007

---

PRIERE NE PAS REMPLIR CETTE RUBRIQUE

Mode opératoire :

- ☐ porte palière
- ☐ porte principale
- ☐ porte secondaire
  - donnant sur :...............
- ☐ porte-fenêtre de ..............

- ☐ porte vitrée
- ☐ fenêtre de :...............
- ☐ vasistas de :...............
- ☐ escalade de :...............

- ☐ Arr. cyl. (O emp. O laissé O remis)
- ☐ Pesées avec outil plat indéterminé
- ☐ Pesées    (O tvs ...............O pdb)
- ☐ Epaulée          ☐ Coup de pied
- ☐ Bris de vitre    | O jet de pierre
- ☐ Bris de vitrine  | O coupe-verre
                     | O indéterminé

- ☐ clé / fausse clé
- ☐ volet  ☐ store
  jusqu'au :...............

Plainte reçue le :...............    Signature de l'inspecteur : ...............

ANNEXE

n/Ref: Z 347893 / Z 2 //GE 2006 12 1732

| | La description | Le modele | Le prix, chf |
|---|---|---|---|
| L'electronique | Laptop | Compaq EVO N1020V | 3,068.00 |
| | Laptop | HP NC6120 | 2,470.00 |
| | Laptop & Handheld | HP NX8220 & IPAQ HW6515 | 4,220.00 |
| | Phone mobile | Nokia E61 | 599.00 |
| | Memory card | San disk mini SD 1GB | 44.90 |
| | iPod 60GB | | 760.00 |
| | HUB | USB 4 Port | 39.00 |
| | Phone mobile | Nokia 8800 | 1,298.00 |
| | DVD player | | 250.00 |
| | Headset | Motorola MOKOBT810 | 142.40 |
| | Headset | Motorola MOKOBT850 | 158.40 |
| | Phone mobile | Nokia 6230 | 598.00 |
| | Printer HP Photosmart | | 490.00 |
| | Printer HP Photosmart 3310 | | 598.00 |
| Les montres | Van Der Bauwede | Magnum, Dual time | 8,900.00 |
| | Longines Master collection, Moonphases | L2.673.4.78.5 | 2,520.00 |
| | Victorinox | Maverick II, chrono | 420.00 |
| | Tissot | PRS516 Quartz Chronograph | 310.00 |
| | Omega Speedmaster | | 2,500.00 |
| | G-shock | GL7200A-7V | 200.00 |
| | Adidas | ADP1012 | 100.00 |
| | Maurice Lacrouix | | 450.00 |
| | Tissot | | 295.00 |
| La parfumerie | Aqua Gio, Armani | | 107.00 |
| | Hugo Boss | | 115.00 |
| | Chanel chance | | 100.00 |
| | Ralph Lauren, Romance | | 100.00 |
| Les bijoux | La chaine d'or | | 1,000.00 |
| | Les boutons de manchette, 4 piece | | 3,000.00 |
| | Les boucles d'oreille | | 500.00 |
| | Le bracelet | | 500.00 |
| | Le collier de perles | | 800.00 |
| Different | Le sac pour l'ordinateur Tumi | | 845.00 |
| TOTAL | | | 37,497.70 |

Geneve
16.01.2007

Terebov Petr

**Unofficial Translation**

POLICE DEPARTMENT GENEVA

Issue No: 2006 12 1732
Recorded by: Roduit A0334
Interviewer: Pagliarulo J9707
Post.Department: Theft Department

STATEMENT FOR INSURANCE PURPOSES

Established by                    Pernet A9804

**On the date of 24.01.2007, our services registered a complaint against an unknown which was made by :**

| | |
|---|---|
| Name, forename: | **Terebov, Petr** |
| Date of birth, sex: | 05.03.1975, Male |
| Origin: | Russia |
| Profession: | DIRECTOR |
| Assurance Company: | Zurich |

**Location of Events**

| | |
|---|---|
| Type of event: | Break in |
| Date and hour of event: | From 16.12.2006 16:00 to 16.12.2006 18:30.00 |
| Place/Home: | Apartment of TEREBOV Olga |
| Address: | Chemin du Bocage 1, Ground Floor, 1213 Onex |
| Area/ City/Country: | Onex, Geneva, Switzerland |

**Legal Depositions**

CPS (Swiss Penal Code) Theft by breaking and entering
CPS (Swiss Penal Code) Domestic break in
CPS (Swiss Penal Code) Damage to property

The perpetrators were not identified on this day.

Geneva, 26.02.2007

(Form only valid with the visa of the police)

**Unofficial Translation**

No/Ref: **Z 347893 / Z2 // GE 2006 12 1732**
Inspector:  Pagliarulo J9707

COMPLAINT AGAINST UNKNOWN

Addressed to the Chief of Police

Stamp of Police Body

**Mme TEREBOV Olga**

**Chemin du Bocage 1**
**1213 Onex**

**I, the undersigned**

Name:  Terebov                          Birth Name :

First Name: Petr                        Birth Date: 05.03.1975

Origin
Country: Russia

For foreigners, please indicate the type of visitation permission
Permit B

**make a complaint against an unknown, for :**
Theft by breaking and entering

Date of the commission of the crime:
Between 16.12.06 at 1800 hrs and 16.12.06 at 1900 hrs

Type of place :
Apartment

**Address where the crime was committed :**
Road & No:  1, Chemin du Bocage, Floor : Ground

Postal Code : 1213
Town : Onex

**Address to which correspondence should be sent :**
As above

Telephone:
Private: 022-7934050                    Professional or Mobile: 079-6933189

Name of Insurance Company : Zurich

26139503 v1

**Mode of Operation/Method of entry** (explain how the robber entered the premises) (give details of the objects stolen (furniture, drawers, miscellaneous equipment etc).

The window of the bedroom was shut and slightly ajar at the top. They must have pushed hard from above, forcing and breaking the window mechanism in order to be able to enter.  They then opened and emptied in part the wardrobes and upturned the drawers.

**Stolen Objects**

See attached list

**Damages**

Mechanism of the bedroom window has been broken

Geneva 16.01.2007

**Unofficial Translation**

ANNEXE

n/Ref: Z 347893 / Z 2 //GE 2006 12 1732

| | Description | Model | Price (Swiss Francs) |
|---|---|---|---|
| Electrical Goods | Laptop | Compaq EVO N1020V | 3,068.00 |
| | Laptop | HP NC6120 | 2,470.00 |
| | Laptop & Handheld | HP NX8220 & IPAQ HW6515 | 4,220.00 |
| | Phone mobile | Nokia E61 | 599.00 |
| | Memory card | San disk mini SD 1GB | 44.90 |
| | iPod 60GB | | 760.00 |
| | HUB | USB 4 Port | 39.00 |
| | Phone mobile | Nokia 8800 | 1,298.00 |
| | DVD player | | 250.00 |
| | Headset | Motorola MOKOBT810 | 142.40 |
| | Headset | Motorola MOKOBT850 | 158.40 |
| | Phone mobile | Nokia 6230 | 598.00 |
| | Printer HP Photosmart | | 490.00 |
| | Printer HP Photosmart 3310 | | 598.00 |
| Watches | Van Der Bauwede | Magnum, Dual time | 8,900.00 |
| | Longines Master collection, Moonphases | L2.673.4.78 5 | 2,520.00 |
| | Victorinox | Maverick II, chrono | 420.00 |
| | Tissot | PRS516 Quartz Chronograph | 310.00 |
| | Omega Speedmaster | | 2,500.00 |
| | G-shock | GL7200A-7V | 200.00 |
| | Adidas | ADP1012 | 100.00 |
| | Maurice Lacrouix | | 450.00 |
| | Tissot | | 295.00 |
| Perfume | Aqua Gio, Armani | | 107.00 |
| | Hugo Boss | | 115.00 |
| | Chanel chance | | 100.00 |
| | Ralph Lauren, Romance | | 100.00 |
| Jewellery | Gold chain | | 1,000.00 |
| | Cufflinks, 4 pieces | | 3,000.00 |
| | Earrings | | 500.00 |
| | Bracelet | | 500.00 |
| | Pearl necklace | | 800.00 |
| Miscellaneous | Tumi computer holdall | | 845.00 |
| TOTAL | | | 37,497.70 |

Geneve
16.01.2007
Terebov Petr

EXHIBIT 16

# GST COMMODITIES TRADING CO.

Langham House, #401, 302 Regent Street, London W1B 3HH, United Kingdom

**To:**  Egyptian American Steel Rolling Co.
**Att:**  Mr. Kamal Beshay                                    _via fax_
**Fax:**  00202 620 1592
**Date:**  06.11.2006
**Re:**  m/v Merve A / balance payment

Dear Mr. Beshay,

Despite our several fax messages we have no news from you about balance for above mentioned shipment.
We regret to admit that it is not strengthening our relation.
We count on your professional attitude and kindly ask you to finalize payment of remaining amount as soon as possible.

GST Commodities Trading Co.

GST Commodities Trading Co.
London, United Kingdom

EXHIBIT 17

JUDGE HOLWELL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CV 732

-------------------------------------------------------------X

NAUTILIS DENIZCILIK SAN. VE TIC. LTD. STI.,

                              Plaintiff,

           - against -

CENTRAMET TRADING SA,

                            Defendant.

-------------------------------------------------------------X

07 CV _____
ECF CASE

RECEIVED
JAN 3 1 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, NAUTILIS DENIZCILIK SAN. VE TIC. LTD. STI. (hereafter referred to as "Plaintiff"), by and through its attorneys, Tisdale & Lennon, LLC, as and for its Verified Complaint against the Defendant, CENTRAMET TRADING SA (hereinafter "Defendant"), alleges, upon information and belief, as follows:

      1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

      2.      At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under foreign law and was at all material times the Owner of the "MERVE A" (hereinafter the "Vessel").

      3.      Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law and was at all material times the Charterer of the Vessel.

      4.      Pursuant to a charter party dated July 14, 2006, Plaintiff chartered the Vessel to Defendant.

5.    Disputes arose between the parties regarding Defendant's failure to pay demurrage and expenses due and owing under the charter party contract.

6.    As a result of Defendant's breach of the charter party contract, Plaintiff has sustained damages in the total principal amount of $276,229.75, exclusive of interest, arbitration costs and attorneys fees.

7.    Pursuant to the charter party, all disputes arising thereunder are to be submitted to arbitration in London with English Law to apply.

8.    Despite due demand Defendant has failed to pay the amounts due and owing under the charter party

9.    As a result, Plaintiff has or will commence arbitration against Defendant on its claim(s).

10.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party in arbitration pursuant to English Law.  As best as can now be estimated, Plaintiff expects to recover the following amounts:

| | | |
|---|---|---|
| A. | Principal claim: | $276,229.75 |
| B. | Estimated interest on claim:<br>3 years at 6%, compounded quarterly | $54,089.45 |
| C. | Estimated attorneys' fees and arbitration expenses: | $70,000.00 |
| **Total** | | **$400,319.20** |

11.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court,

held in the hands of garnishees including, but not limited to, ABN Amro, American Express

Bank, Bank of America, Bank of New York, BNP Paribas, Credit Suisse First Boston, Calyon,

Citibank, Deutsche Bank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered

Bank, UBS AG and/or Wachovia Bank N.A., which are believed to be due and owing to the

Defendant.

12.    The Plaintiff seeks an order from this court directing the Clerk of Court to

issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States

Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant held by

the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendant, and

to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear

and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendant cannot be found within this District pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue

an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also

pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels,

credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any

other funds held by any garnishee, including, but not limited to, ABN Amro, American Express

Bank, Bank of America, Bank of New York, BNP Paribas, Credit Suisse First Boston, Calyon,

Citibank, Deutsche Bank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered

3

Bank, UBS AG and/or Wachovia Bank N.A., which are due and owing to the Defendant, in the

amount of **$400,319.20** calculated to date to secure the Plaintiff's claims, and that all persons

claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty

Rule B answer the matters alleged in the Complaint;

C.     That this Court recognize and confirm any arbitration award or judgment rendered

on the claims had herein as a Judgment of this Court;

D.     That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof;

E.     That this Court award Plaintiff the attorneys' fees and costs incurred in this

action; and

F.     That the Plaintiff has such other, further and different relief as the Court

may deem just and proper.

Dated: New York, New York
     January 31, 2007

           The Plaintiff,
           NAUTILIS DENIZCILIK SAN. VE TIC. LTD.
           STI,

           By: _____
           Nancy R. Peterson (NP 2871)
           Patrick F. Lennon (PL 2162)
           TISDALE & LENNON, LLC
           11 West 42nd Street, Suite 900
           New York, NY 10036
           (212) 354-0025 – phone
           (212) 869-0067 – fax
           npeterson@tisdale-lennon.com
           plennon@tisdale-lennon.com

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                    )    ss.:    Town of Southport
County of Fairfield  )

1.    My name is Nancy R. Peterson.

2.    I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.    I am an attorney in the firm of Tisdale & Lennon, LLC, attorneys for the Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.    The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.    The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      Southport, Connecticut
             January 31, 2007

                        Nancy R. Peterson

5

EXHIBIT 18

**Settlement Agreement**

**MERVE A (the "Vessel") Demurrage at Alexandria August and September 2006**

This agreement is made this 16th day of March 2007 between Nautilus Denizcilik San. Ve Ticaret Limited STI of Mescid Mah, Fettah Basaran Cad., No 39 Orhani - Tuzla, Istanbul, Turkey (hereinafter called the "**Owners**") and Centramet Trading S.A. of 220 Route de Ferney, Grand-Saconnex, PO Box 201, 1218, Geneva, Switzerland (hereinafter called the "**Charterers**").

1    By a fixture recap dated 14 July 2006 the Charterers chartered the "MERVE A" (the "**Vessel**") on the terms of the said fixture recap and the GenCon 1976 Form of Voyage Charter (hereinafter together called the "**Charterparty**") for a voyage from Novorossiysk to Alexandria in Egypt.

2    The Owners have claims for demurrage at Alexandria in respect of delays in discharge of the cargo carried pursuant to the Charterparty totalling US$400,319 (the "**Claim**") made up as follows:

| | | |
|---|---|---:|
| (i) | Principal claim: | $276,229.75 |
| (ii) | Estimated interest on claim:<br>(3 years at 6% compound interest) | $ 54,089.45 |
| (iii) | Estimated attorneys' fees and arbitration expenses: | $ 70,000.00 |
| | Total | $ 400,319.20 |

3    In support of the Claim the Owners have commenced proceedings against the Charterers before the United States District Court for the Southern District of New York in an action bearing Docket Number 07 Civ. 732 (RJH) (the "New York Action"). In the New York Action, Owners have obtained an order of attachment against Charterer's assets in New York, and have attached certain assets of the Charterers (the "Attachment"). The Owners have further threatened to pursue the Claim in arbitration in London pursuant to the Charterparty.

4    The Charterers agree to pay to the Owners within three banking days from signing of this agreement the sum of US$295,000.00 in discharge of any and all claims which the Owners have or may have against the Charterers under the Charterparty. The

36094649 v1

payment referred to in this Clause shall be made to the account of the Owners attorneys in the New York action, Messers Tisdale & Lennon, People's Bank, 850 Main Street, Bridgeport, Connecitcut 06604, ABA No. 221172186 – Telegraphic Name: People's Bank, for final credit to: Tisdale & Lennon, LLC, Account No: 075 7006297. Such payment shall be held in escrow by Tisdale & Lennon until the New York Action has been dismissed with prejudice in accordance with Clause 5, and a copy of the Notice of Dismissal has been served on the garnishee banks restraining Charterers funds pursuant to the Ex-Parte Order of Attachment.

5    Immediately on payment by the Charterers to Tisdale & Lennon in accordance with Clause 4 above, and Tisdale & Lennon's reciept thereof, the Owners' attorneys, Tisdale & Lennon, shall e-mail a Notice of Dismissal to the Judgments and Orders Clerk at the Southern District of New York and request that the garnishee banks release the funds to the Charterers order.    After the Notice of Dismissal has beenendorsed by the Judge, and Owners attorneys are so advised, the Owners attorneys shall further serve a copy of said endorsed Notice of Dismissal on any garnishee banks still restraining Charterers funds pursuant to the Ex-Parte Order of Maritime Attachment. Upon completion of all steps called for by this Clause 5 the funds held by Tisdale & Lennon in accordance with Clause 4 shall be released from escrow.

6    In consideration of the payment by the Charterers pursuant to Clause 4 above, the Owners hereby release and discharge the Charterers from any and all claims of whatsoever nature which they may have under the Charterparty including without limitation the Claim, legal fees, expenses and any and all other claims whatsoever in connection with the Charterparty.    The Charterers also hereby release and discharge the Owners from any and all claims of whatsoever nature which they may have under the Charterparty including without limitation the Claim, legal fees, expenses and any and all other claims whatsoever in connection with the Charterparty.

7    The funds on deposit in the Tisdale & Lennon Account, which will not accumulate interest, less any bank fees (hereinafter the "Escrow Funds") shall be subject to disposition only by a partner of Tisdale & Lennon, LLC, as attorney for Owners;

8    IT IS UNDERSTOOD that neither Tisdale & Lennon, LLC nor any partner thereof, as escrow agents are to be liable for any act or omission of People's Bank and that the escrow agents are liable as escrow agents only for their own wilful misconduct or gross negligence in the handling of the Escrow Funds.

9    The Owners agree to provide all reasonable cooperation and supporting documentation requested by Charterers to assist Charterers in pursuing their own

2

26994649 v1

demurrage claim against the receivers of the cargo delivered under the Charterparty in Egypt.

10   Each of the Parties represents and warrants that it has the power to enter into and perform its respective obligations under this Agreement, and that this Agreement has been duly authorised and executed and is valid and binding upon it and that any and all approvals and/or consents that may be required in order to enter into this Agreement have been obtained.

11   The Owners represent and warrant that they are and were at all material times in full operational control of the Vessel as Lessees or Bareboat Charterers and party to the Charterparty. The Owners represent and warrant that they are the only person or entity which has any entitlement to or interest in the Claim, and/or any other claims that are being settled by way of this Agreement, and that they have not sold, assigned, encumbered or in any way transferred in whole or in part these claims or any interest therein to any other person. Should any other party take action against the Charterers in respect of the Claim, the Owners undertake to indemnify the Charterers in respect of all the consequences whatsoever of such third party action and to pay all legal and other fees and expenses incurred by the Charterers in connection therewith.

12   Each Party shall bear (and shall not seek to recover from another Party) its own costs and expenses incurred by it in connection with the negotiation and execution of this Agreement and the New York Action.

13   This Agreement records the entire agreement of the Parties relating to the subject matter of this Agreement.

14   Any   dispute   or   difference   arising   out   of   or   in   connection with this Agreement shall be governed by English law and shall be referred to arbitration in London in accordance with the Charterparty.

Dated ...........19.03.2007...................

Signed .................................................   NAUTILUS DENIZCILIK
                                                        SAN. ve TIC. LTD. ŞTI.
                                                        Mescid Mah. Fettahbaşaran Cad.
For and on behalf of                                    No:39 Orhanlı-Tuzla/İSTANBUL
                                                        Tuzla V.D.: 630 031 4984

Nautilus Denizcilik San. Ve Ticaeret Limited

3                                         26094640 v1

Signed ...............................

For and on behalf of

CENTRAMET TRADING SA
220, route de Ferney - P.O. Box 201
1218 Grand Saconnex - Geneva
Switzerland

**Centramet Trading S.A.**

4                                    26094649 v1

**EXHIBIT 19**

GENCON FORM 1976                                                    A5.3

# GENCON 1976 CHARTERPARTY*

| 1. Shipbroker | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE<br>UNIFORM GENERAL CHARTER (AS REVISED 1922 and 1976)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no approved form is in force)<br>CODE NAME: "GENCON"  Part I |
|---|---|
| | 2. Place and date |
| 3. Owners/Place of business (Cl. 1) | 4. Charterers/Place of business (Cl. 1) |
| 5. Vessel's name (Cl. 1) | 6. GRT/NRT (Cl. 1) |
| 7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1) | 8. Present position (Cl. 1) |
| 9. Expected ready to load (abt.) (Cl. 1) | |
| 10. Loading port or place (Cl. 1) | 11. Discharging port or place (Cl. 1) |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1) | |
| 13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1) | 14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4) |
| 15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless) | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6) |
| | a) Laytime for loading |
| 17. Shippers (state name and address) (Cl. 6) | b) Laytime for discharging |
| | c) Total laytime for loading and discharging |
| 18. Demurrage rate (loading and discharging) (Cl. 7) | 19. Cancelling date (Cl. 10) |
| 20. Brokerage commission and to whom payable (Cl. 14) | |
| 21. Additional clauses covering special provisions, if agreed. | |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| | |

Printed and sold by Fr. G. Knudtzon Ltd., 55, Toldbodgade, Copenhagen, by authority of The Baltic and International Maritime Conference (BIMCO), Copenhagen.

*Left margin:* Adopted by The Documentary Committee of the General Council of British Shipping, London and The Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo

*Left margin:* Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen

* No longer approved by BIMCO since the introduction of Gencon 1994.

1169

A5.3

APPENDIX 5: FORMS

PART II

"Gencon" Charter (As Revised 1922 and 1976)

Including "F.I.O." Alternative, etc.

1. It is agreed between the party mentioned in Box 3 as Owners of the steamer or motor-vessel named in Box 5 of the gross/net Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in a position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:

The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at Charterers' risk) as stated in Box 12 (Charterers to provide all made and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

2. Owners' Responsibility Clause
Owners are to be responsible for loss or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (unless stowage performed by shippers/Charterers or their stevedores or servants) or by personal want of due diligence on the part of the Owners or their Manager to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.

And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

3. Deviation Clause
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. Payment of Freight
The freight to be paid in the manner prescribed in Box 14 in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.

Cash for vessel's ordinary disbursements at port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. to cover insurance and other expenses.

5. Loading/Discharging Costs

*(a) Gross Terms
The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board. If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses. Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense. The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.

*(b) F.i.o. and free stowed/trimmed
The cargo shall be brought into the holds, loaded, stowed and/or trimmed and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.
The Owners shall provide winches, motive power and winchmen from the Crew if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15).

*Indicate alternative (a) or (b), as agreed, in Box 15.

6. Laytime

*(a) Separate laytime for loading and discharging
The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.
The cargo shall be discharged within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

*(b) Total laytime for loading and discharging
The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.

(c) Commencement of laytime (loading and discharging)
Laytime for loading and discharging shall commence at 1 p.m. if notice of readiness is given before noon, and at 6 a.m. next working day if notice given during office hours after noon. Notice at loading port to be given to the Shippers named in Box 17.
Time actually used before commencement of laytime shall count.
Time lost in waiting for berth to count as loading or discharging time, as the case may be.

*Indicate alternative (a) or (b) as agreed, in Box 16.

7. Demurrage
Ten running days on demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, payable day by day, to be paid if allowed Merchants altogether at ports of loading and discharging.

8. Lien Clause
Owners shall have a lien on the cargo for freight, dead-freight, demurrage and damages for detention. Charterers shall remain responsible for dead-freight and demurrage (including damages for detention), incurred at port of loading. Charterers shall also remain responsible for freight and demurrage (including damages for detention) incurred at port of discharge, but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.

9. Bills of Lading
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

10. Cancelling Clause
Should the vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading. Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

11. General Average
General average to be settled according to York-Antwerp Rules, 1974. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).

12. Indemnity
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

13. Agency
In every case the Owners shall appoint his own Broker or Agent both at the port of loading and the port of discharge.

14. Brokerage
A brokerage commission at the rate stated in Box 20 on the freight earned is due to the party mentioned in Box 20.
In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

15. GENERAL STRIKE CLAUSE
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

16. War Risks ("Voywar 1950")
(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.
(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bill(s) of Lading for any voyage or for any part of it on which or any port at which it appears that the Vessel, her cargo, crew or other persons on board the Vessel will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry cargo for Owners' benefit and accordingly to proceed and load or discharge such other cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port, or the...

1170

A5.3

GENCON FORM 1976

PART II

"Gencon" Charter (As Revised 1922 and 1976)

including "F.I.O." Alternative, etc.

**EXHIBIT 20**



*MV MERVE A*                                                          *ALEXANDRIA PORT*

## MASTER GENERAL STATEMENT OF FACT

*DISCHARGING 9274 MT SCRAP*

VSL ARVD OUT ROAD ........................................................... 06/08/06  03:45

NOR  TENDERD......................................................................... 07/08/06  03:45

VSL BRD ................................................................................. 07/08/06  23:00

MASTER  RCVD OB/L ............................................................. 31/08/06  20:00

*( TOTAL 23 DAYS DELAY ' WAITING RECEIVER TO BRING O B/L )*

VSL START DISCH ................................................................. 31/08/06  21:00

VSL. COMP DISCH ................................................................ 30/09/06  05:00

*( TOTAL 30 DAYS TO DISCHARGE 9274 MT SCRAP DUE TO VERY LOW RATE OF DISCHARGIG*
*CAUSED BY RECEIVERS STIVEDORING CO )*

*( SUB TOTAL 53 DAYS VESSEL DELAY IN ALEX PORT )*

SO WE DECLARE  THIS REMARKS
1-WE KEEP ALL OWNER RIGHTS RESERVED OF DEMORAGE  INC.. WHEREAS
VSL IS <u>NOT</u> RESPONSIBLE FOR THIS 53 DAYS. DELAY .

2-VSL IS NOT RESPONSIBLE FOR EXTRA EXPENSES CAUSED BY THIS DELAY
INCLUDING ALLSHIFTING EXPENSES FROM THE BERTH TO INNER ANCHORAGE
AND FROM INNER ANCHORAGE TO BERTH AGAIN – WHEREAS THIS IS
HAPPEND 3 TIMES  BY PORT AUTHORITY INSTRUCTION  WHICH IS NOT
ACCEPTED THIS DELAYT DUE TO LOW RATE OF DISCHARGE .

3-VSL IS NOT RESPONSIBLE FOR ANY DELAY CAUSED BY RECEIVER
ALL CARGO DISCHARGED AS LOADED – VSL IS NOT RESPONSIBLE FOR THE
CARGO QAULITY IF  RECIEVER ACCEPTED OR NOT  AND VSL IS NOT INVOLVED
IN THE DEAL IN BETWEEN SHIPPRS AND RECEIVERS FOR THE CARGO .

BEST REGARDS
MASTER



30/09/06 – 0330 HRS